QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
Charles K. Verhoeven
Melissa J. Baily
50 California Street, 22nd Floor
San Francisco, California 94111
(415) 875-6600 (phone)
(415) 875-6700 (fax)

Jon Steiger
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
(213) 443-3000 (phone)
(213) 443-3100 (fax)

BYRNES & KELLER LLP
Bradley S. Keller
Jofrey M. McWilliams
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
(206) 622-2000 (phone)
(206) 622-2522 (fax)

Attorneys for Defendant
Flagstar Bancorp

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| Eon-Net, L.P.,<br><br>    Plaintiff,<br><br>  v.<br><br>Flagstar Bancorp,<br><br>    Defendant. | CASE NO. C05-2129 MJP<br><br>**DEFENDANT FLAGSTAR BANCORP'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56**<br><br>**NOTE ON MOTION CALENDAR: MAY 26, 2006**<br><br>**ORAL ARGUMENT REQUESTED** |

## TABLE OF CONTENTS

| | Page |
|---|---|
| PRELIMINARY STATEMENT | 1 |
| STATEMENT OF UNDISPUTED FACTS | 1 |
|     Flagstar's Business | 1 |
|     Eon-Net's Complaint Alleging Infringement of the '697 Patent | 2 |
|     Flagstar Uses Kofax Technology To Process Information Received Through its Website | 3 |
|     Kofax's License Encompassing Kofax Customers and the '697 Patent | 4 |
| ARGUMENT | 6 |
| I.  STANDARD FOR GRANTING SUMMARY JUDGMENT | 6 |
| II.  SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE THE UNDISPUTED MATERIAL FACTS PRECLUDE FINDING FLAGSTAR LIABLE FOR PATENT INFRINGEMENT | 6 |
| CONCLUSION | 8 |

**TABLE OF AUTHORITIES**

Page

Cases

Carborundum Co. v. Molten Metal Equip. Innovations,
  72 F.3d 872 (Fed. Cir. 1995) ..................................................................................... 7

Semegen v. Weidner,
  780 F.2d 727 (9th Cir. 1985) ...................................................................................... 6

Spindelfabrik Suessen-Schurr Stahlecker & Grill GmbH v. Schubert & Salzer
  Maschinenfabrik Aktiengesellschaft,
  829 F.2d 1075 (Fed. Cir. 1987) ................................................................................. 7

Zweig v. Hearst Corp.,
  521 F.2d 1129 (9th Cir. 1975) .................................................................................... 6

Other

2 MILGRIM ON LICENSING § 15.34 (2004) ............................................................................ 7

BLACK'S LAW DICTIONARY 939 (8th ed. 2004) .................................................................... 7

**PRELIMINARY STATEMENT**

Eon-Net and its counsel have exhibited inexplicable conduct in their pursuit of patent infringement claims against Flagstar. Initially, Flagstar determined that Eon-Net and its counsel had asserted baseless claims against Flagstar without conducting any pre-filing investigation. Such conduct is a clear violation of Rule 11, and Flagstar promptly served a motion requesting Rule 11 sanctions. Then, although Flagstar repeatedly provided Eon-Net with information demonstrating that any and all purportedly infringing activities conducted by Flagstar are covered by a valid and enforceable license agreement, Eon-Net and its counsel have refused to withdraw the Complaint, have attempted to conceal the scope of the relevant license from Flagstar, and have repeatedly tried to thwart Flagstar's attempts to obtain a copy of the license. Nonetheless, Flagstar has finally obtained the relevant license from a third party, and that license provides an incontrovertible basis for summary judgment.

**STATEMENT OF UNDISPUTED FACTS**

Flagstar's Business.

Flagstar Bancorp, Inc. is a large publicly held savings bank. (Declaration of Melissa J. Baily ("Baily Decl.") ¶ 2 & Ex. 1 (published description of Flagstar.) Its primary subsidiary, Flagstar Bank ("Flagstar"), currently operates banking centers in Michigan, Indiana, and Georgia and home lending centers across the country. (Id.) Flagstar is one of the nation's largest originators of residential mortgage loans. (Id.)

Flagstar maintains a website, http://www.flagstar.com/, to compliment the information and services available at Flagstar's banking and home lending centers. The primary function of the Flagstar website is to serve as the focal point for Flagstar's "e-mortgage" business. (Affidavit of Jason B. Dufner ("Dufner Aff.") ¶ 3.) The website provides users the opportunity to apply on-line for new home loans and home equity loans. (Id.) Potential borrowers can submit the required loan applications and related information when prompted and receive information regarding loan approval and established loan accounts via Flagstar's website. (Id.)

<u>Eon-Net's Complaint Alleging Infringement of the '697 Patent.</u>

On February 4, 2005, Eon-Net filed its Complaint for Patent Infringement (the "Complaint") against Flagstar.[1] The Complaint alleges that Flagstar is infringing U.S. Patent Number 6,683,697 (the "'697 Patent") entitled "Information Processing Methodology." (Complaint ¶¶ 7, 10.) The '697 Patent was initially assigned to Millennium, L.P. (Baily Decl. ¶ 3 & Ex. 2 ('697 Patent).) Eon-Net alleges, however, that "Eon-Net is the owner of all right, title and interest in and to the '697 Patent by way of assignment from Millennium." (Complaint ¶ 8.)

The '697 Patent purports to describe an invention that "is directed to a system for efficiently processing information originating from hard-copy documents . . . that minimizes the need to manually process hard-copy documents." (Baily Decl. ¶ 3 & Ex. 2 ('697 Patent) at col. 1 lns. 15-17.) The purported "objects of the invention" include:

- "provid[ing] an application program interface which will allow the extraction, selection, formatting, routing, and storage of information from a hard copy document in a comprehensive manner such that the hard copy document itself need not be retained";
- "provid[ing] a system which reduces the amount of manual labor required to process information originating from a hard copy document"; and
- "reduc[ing] the time required to process information originating from a hard copy document so that a higher volume of transactions involving hard copy documents can be processed." (<u>Id.</u> at col. 2 lns. 34-47.)

As asserted in the '697 Patent, the alleged invention purportedly works by first providing an interface for inputting "a diversity of hard copy documents" and then "storing information from the hardcopy documents in a memory." (Baily Decl. ¶ 3 & Ex. 2 ('697 Patent) at col. 2 lns. 48-51.) Next, "portions of the stored document information are selected in accordance with content instructions which define portions of the stored document information required by a particular application." (<u>Id.</u> at col. 2 lns. 52-55.) The information is then "formatted into the transmission

---

[1] Eon-Net has moved for leave to amend its Complaint. Eon-Net's proposed amendments – namely, the striking of Count Two alleging willful infringement and the addition of an allegation to reflect the issuance of a Certificate of Correction to the '697 Patent – do not relate in any way to the grounds on which Flagstar seeks summary judgment. The arguments compelling summary judgment for Flagstar contained herein equally apply to Eon-Net's proposed amended complaint.

format used by the particular application program." (Id. at col. 2 lns. 56-57.) Finally, the "selected information is transmitted to the particular application program." (Id.)

Eon-Net alleges that Flagstar is infringing the '697 Patent by:

> "collecting information over the Internet pursuant to a claim of the '697 patent, and deploying for Defendant's own use an application distributed over the Internet in which information is collected and extracted from a customer of Defendant and processed on Defendant's server as defined by the claims of the '697 patent." (Complaint ¶ 10.)

<u>Flagstar Uses Kofax Technology To Process Information Received Through its Website.</u>

Eon-Net has never identified any purported accused "applications" or devices. (See Defendant Flagstar Bancorp's Motion for Sanctions Pursuant to Federal Rule of Civil Procedure 11 at 3-6.) As a result, Flagstar undertook an internal investigation to identify any potential products, software, and/or technologies that could be implicated by Eon-Net's infringement claim. (Id. at 3) What Flagstar found was that any and all technologies conceivably relevant to Eon-Net's claim regarding the '697 Patent were licensed from Kofax Image Products, Inc. ("Kofax"). (Id.)

In particular, Flagstar licenses Kofax's "Ascent Capture" and "Ascent Payables" software products. (Dufner Aff. ¶¶ 4, 7 & Ex. 1 (Software License Agreement between Flagstar and Kofax).) Kofax touts its Ascent software as a tool that "accelerates business processes by collecting paper documents, forms and e-documents, transforming them into accurate, retrievable information, and delivering it all into [a company's] business applications and databases." (Baily Decl. ¶ 4 & Ex. 3 (published description of Kofax's Ascent software).) Flagstar uses Kofax's Ascent software to process any and all documents received through its website. (Dufner Aff. ¶¶ 4, 7.)

In addition to utilizing the basic Ascent software, Flagstar also licenses a suite of "modules" for Ascent Capture, called "Indicius." (Dufner Aff. ¶ 4 & Ex. 1 (Software License Agreement between Flagstar and Kofax).) Indicius "provides advanced document classification, separation and extraction capabilities, enabling the automated processing of all types of business documents on the Ascent Capture platform." (Baily Decl. ¶ 5 & Ex. 4 (published description of Kofax's Indicius product).) Indicius facilitates "straight through processing" by:

- "automatically extract[ing] hand-written and printed data from scanned document images, removing the need for costly and time-consuming manual keying";

- using extracted data to initiate transactions automatically and expedite business processes, "resulting in reduced processing time, lower operational costs and increased productivity";

- classifying documents by content and "routing documents to the correct target business process or workflow queue without the need for pre-sorting, reducing document handling costs";

- capturing rich index data from documents, "dramatically reducing the need for costly manual keying and enabling powerful searching for the captured information and documents";

- "process[ing] both fixed and free-form documents including application forms, claims, correspondence, reports and virtually any other document types"; and

- "us[ing] automatic document classification and separation to verify the presence of all the necessary documents in a loan folder and then us[ing] powerful free form technology to extract any required data." (Id.)

Flagstar utilizes Kofax's Ascent and Indicius software to collect and process the documents received through its website. (Dufner Aff. ¶¶ 4, 7.) Indeed, Kofax technology "collects," "extracts," and "processes" all documents provided to Flagstar by users of its website – regardless whether those documents originated as hard-copy documents or electronic files. (Id.)

<u>Kofax's License Encompassing Kofax Customers and the '697 Patent.</u>

Because Flagstar uses Kofax technology to process the documents received through its website, Flagstar contacted Kofax regarding the infringement claims alleged by Eon-Net. (Baily Decl. ¶ 6.) Kofax's counsel, Paul Gale of Stradling Yocca Carlson & Rauth, informed Flagstar that Kofax had entered into a relevant Settlement and License Agreement (the "License"). (Id.)

Specifically, Kofax had executed the License with Millennium, L.P., the entity that later assigned the '697 Patent to Eon-Net. (Baily Decl. ¶ 7 & Ex. 5 (Settlement and License Agreement).) The License granted Kofax and Kofax's customers a non-exclusive irrevocable license to any patent rights ever acquired or assigned by Millennium or any related entities. (Id.) Specifically, the License provides that:

- "Millennium hereby grants to Kofax a non-exclusive, irrevocable license under the Licensed Patents to make, have made, use, offer for sale, sell, lease, import, distribute and/or otherwise transfer Licensed Products commercialized by Kofax to Kofax Customers;" and

-4-

- "Millennium covenants not to sue Kofax or Kofax Customers for conduct relating to making, having made, using, or offering for sale, selling, leasing, importing, distributing and/or otherwise transferring Licensed Products." (Id.)

The License defines (1) Millennium to include assigns and related corporate entities; (2) Kofax Customers to include any past, present or future purchaser or end-user of a Licensed Product; (3) Licensed Products to include any current or future products developed by or for Kofax; and (4) Licensed Patents to include any patent rights ever acquired by Millennium. (Id.)

Based on the License, no liability for patent infringement can arise from Flagstar's use of Kofax products. Accordingly, on February 7, 2006, Kofax's counsel informed Eon-Net's counsel that Flagstar is a customer of Kofax, that Flagstar uses Kofax products and technology in connection with its website, and that the License executed between Kofax and Millennium encompasses Flagstar's activities in connection with its website. (Baily Decl. ¶ 8 & Ex. 6 (letter from Kofax counsel to Eon-Net counsel).) On this basis, Kofax's counsel requested that the Complaint be withdrawn. (Id.)

Not only did Eon-Net refuse to withdraw its Complaint, Eon-Net actively and inexplicably tried to thwart any and all attempts by Flagstar to secure a copy of the applicable License. For example, when Flagstar served a subpoena on Kofax requiring production of the License, Eon-Net's counsel instructed Kofax not to comply with the subpoena, alleging that Eon-Net intended to move for a protective order to prevent the disclosure of the License. (Baily Decl. ¶ 9 & Ex. 7 (email from Eon-Net counsel to Kofax counsel.) Eon-Net's counsel also threatened to sue Kofax for revealing to Flagstar that (1) an applicable license exists, and (2) the scope of the license protects Flagstar from liability for infringement of the '697 Patent. (Id. ¶ 10 & Ex. 8 (letter from Eon-Net counsel to Kofax counsel).)

Finally, when Eon-Net failed to move for a protective order with respect to the subpoena served on Kofax – presumably because there would be no basis for such a motion – Kofax produced a copy of the License. (Baily Decl. ¶ 11 & Ex. 9 (email from Kofax counsel to Flagstar counsel).) The scope of the License and the indisputable facts regarding Flagstar's use of Kofax technology compel that summary judgment be granted in favor of Flagstar.

# ARGUMENT

## I. STANDARD FOR GRANTING SUMMARY JUDGMENT.

The purpose of summary judgment is to avoid unnecessary proceedings when there is no dispute as to the facts before the court. Zweig v. Hearst Corp., 521 F.2d 1129 (9th Cir. 1975). The moving party is entitled to summary judgment as a matter of law where, viewing the evidence and the inferences arising therefrom in favor of the nonmovant, there are no genuine issues of material fact in dispute. Fed. R. Civ. P. 56(c); Semegen v. Weidner, 780 F.2d 727 (9th Cir. 1985).

## II. SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE THE UNDISPUTED MATERIAL FACTS PRECLUDE FINDING FLAGSTAR LIABLE FOR PATENT INFRINGEMENT.

Flagstar is not liable for infringing the '697 Patent as a matter of law. Two material facts, which cannot be – and have not been – disputed, are dispositive.

First, Flagstar uses Kofax technology – specifically Ascent software and associated modules – to collect, manage, and process all electronic and hard-copy documents collected through Flagstar's website. (Dufner Aff. ¶¶ 4, 7.) Flagstar and Kofax have entered into a valid license agreement with respect to the relevant technology. (Id. ¶ 4 & Ex. 1 (Software License Agreement between Flagstar and Kofax).) Flagstar regularly purchases "Upgrade Assurance" from Kofax to ensure that Flagstar automatically receives "releases, revisions, fixes and improvements to the Kofax supplied computer software." (Id. ¶ 5 & Ex. 2 (Flagstar Bank Upgrade Agreement).) Flagstar also regularly contracts with Pyramid Solutions, which provides technical support services related to Kofax products. (Id. ¶ 6 & Exs. 3-7 (Pyramid Solutions Platinum Application Support Agreements).)

Second, Flagstar's use of Kofax technology in connection with its website is encompassed by the Settlement and License Agreement executed by Kofax and Millennium. (Baily Decl. ¶ 7 & Ex. 5 (Settlement and License Agreement).) The License provides that "Millennium covenants not to sue Kofax or Kofax Customers for conduct relating to making, having made, using, or offering for sale, selling, leasing, importing, distributing and/or otherwise transferring Licensed Products." (Id.) The further relevant provisions and definitions of the License are as follows:

- "Millennium" is defined by the License to include Millennium's assigns. Because Millennium assigned the '697 Patent to Eon-Net, "Millennium" includes Eon-Net for purposes of the License. (Id.)

- "Licensed Products" is defined by the License to include any "current or future products developed by or for Kofax." Because the Ascent Capture technology licensed by Flagstar is a product developed by Kofax, "Licensed Products" includes that technology. (Id.)

- "Kofax Customers" is defined by the License to include "any past, present or future purchaser or end-user of a Licensed Product." Because Flagstar is a past and present purchaser and end-user of Ascent Capture technology, "Kofax Customers" include Flagstar. (Id.)

In sum, then, Flagstar's use of Kofax technology is encompassed by the License that Eon-Net attempted to conceal from Flagstar.

On the basis of these undisputed facts, Flagstar simply cannot be held liable for infringement of the '697 Patent as a matter of law. Spindelfabrik Suessen-Schurr Stahlecker & Grill GmbH v. Schubert & Salzer Maschinenfabrik Aktiengesellschaft, 829 F.2d 1075, 1081 (Fed. Cir. 1987) (noting that a patent license is in essence a promise by the licensor not to sue, and that the purpose of a license agreement is to define the parties and patents covered by that promise); Carborundum Co. v. Molten Metal Equip. Innovations, 72 F.3d 872, 878 (Fed. Cir. 1995) (stating that an express license is a defense to patent infringement); see also 2 MILGRIM ON LICENSING § 15.34 (2004) ("From the licensee's perspective, a nonexclusive license assures the licensee that it can operate without threat of an infringement suit by the owner of a patent."); BLACK'S LAW DICTIONARY 939 (8th ed. 2004) (defining a nonexclusive license as "a license of intellectual property rights that gives the licensee a right to use, make, or sell the licensed item on a shared basis with the licensor and possibly other licensees"). Eon-Net cannot avoid this conclusion, even assuming – solely for purposes of this motion – that:

- the '697 Patent as corrected is valid and enforceable,

- the unidentified accused devices include any products or technologies used by Flagstar to manage and process documents received through its website, and

- those products or technologies fall within the scope of the claims of the '697 Patent.

Accordingly, summary judgment should be granted.

## CONCLUSION

For the foregoing reasons, Flagstar respectfully requests that this Court grant its motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.

DATED: May 4, 2006

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By: /s/Melissa J. Baily
Melissa J. Baily

Charles K. Verhoeven
50 California Street, 22nd Floor
San Francisco, California 94111
(415) 875-6600

Jon Steiger
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
(213) 443-3000

Bradley S. Keller
Jofrey M. McWilliam
Byrnes & Keller LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
(206) 622-2000