QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
Charles K. Verhoeven
Melissa J. Baily
50 California Street, 22nd Floor
San Francisco, California 94111
(415) 875-6600 (phone)
(415) 875-6700 (fax)

Jon Steiger
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
(213) 443-3000 (phone)
(213) 443-3100 (fax)

BYRNES & KELLER LLP
Bradley S. Keller
Jofrey M. McWilliams
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
(206) 622-2000 (phone)
(206) 622-2522 (fax)

Attorneys for Defendant
Flagstar Bancorp

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| Eon-Net, L.P.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>Flagstar Bancorp,<br><br>　　　　Defendant. | CASE NO. C05-2129 MJP<br><br>**DEFENDANT FLAGSTAR BANCORP'S MOTION FOR SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11**<br><br>**NOTE ON MOTION CALENDAR:<br>MAY 26, 2006**<br><br>**ORAL ARGUMENT REQUESTED** |

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ........................................................................................................ 1

    Eon-Net's Complaint for Patent Infringement.................................................................. 1

    Eon-Net's Offer To Settle .................................................................................................. 2

    Flagstar Is One of Many Targets in Eon-Net's "Litigation Strategy" ............................... 2

    Flagstar's Investigation of Eon-Net's Infringement Claim and Flagstar's Discovery of the Kofax Settlement Agreement................................................................................ 3

    Eon-Net Is Informed of the Kofax Settlement and License Agreement ........................... 4

    Eon-Net's Notice of Non-Compliance with Rule 11 ........................................................ 5

ARGUMENT .............................................................................................................................. 6

I.    RULE 11 SANCTIONS SHOULD BE GRANTED TO DETER BASELESS FILINGS ...................................................................................................................... 6

II.    RULE 11 SANCTIONS ARE APPROPRIATE BECAUSE EON-NET'S CLAIM OF PATENT INFRINGEMENT IS FRIVOLOUS ........................................ 7

    A.    Eon-Net's Claim of Patent Infringement Was Made Without a Reasonable and Competent Inquiry ............................................................................................ 7

        1.    Mr. Zimmerman did not make a reasonable and competent inquiry because he failed to identify any purported accused device prior to filing the Complaint ................................................................................. 8

        2.    Mr. Zimmerman did not make a reasonable and competent inquiry because he failed to apply the asserted patent claims to each purported accused device ........................................................................... 9

        3.    The Federal Circuit has held that Rule 11 sanctions should be granted in cases analogous to this one ............................................................ 10

    B.    Eon-Net's Claim of Patent Infringement Is Baseless ............................................. 11

III.    RULE 11 SANCTIONS SHOULD BE AWARDED IN THE FORM OF DISMISSAL OF THIS ACTION WITH PREJUDICE AND MONETARY SANCTIONS ................... 11

CONCLUSION ........................................................................................................................ 12

# TABLE OF AUTHORITIES

**Page**

Carborundum Co. v. Molten Metal Equip. Innovations, Inc.,
  72 F.3d 872 (Fed. Cir. 1995) .................................................................................. 11

Conn v. Borjorquez,
  967 F.2d 1418 (9th Cir. 1992) ................................................................................ 6-7

Cooter & Gell v. Hartmarx Corp.,
  496 U.S. 384 (1990) ............................................................................................ 6, 11

Judin v. United States,
  110 F.3d 780 (Fed. Cir. 1997) ............................................................ 7, 8, 9, 10, 11, 12

S. Bravo Sys., Inc. v. Containment Techs. Corp.,
  96 F.3d 1372 (Fed. Cir. 1996) ............................................................... 6, 7, 8, 9, 10

Townsend v. Holman Consulting Corp.,
  929 F.2d 1358 (9th Cir. 1990) .................................................................................. 7

View Eng'g, Inc. v. Robotic Vision Sys., Inc.,
  208 F.3d 981 (Fed. Cir. 2000) ........................................................................ 7, 8, 10

## PRELIMINARY STATEMENT

Eon-Net, a patent holding company, and its counsel are in the business of filing baseless infringement complaints. Their money-making scheme operates as follows. They keep on file a form complaint alleging infringement of Eon-Net's '697 patent, which purportedly relates to a "paperless" system for extracting and processing information from documents. They assume that any person or entity with "web-based business operations" could be infringing the patent. Every month or so, they select three or four targets against which to file the form complaint. Immediately after filing, they distribute form settlement letters, offering a license to the '697 patent for a minimal amount. Although the infringement claims are baseless and the illicit scheme transparent, defendants choose to settle rather than expend a much greater sum defending the suit.

Rule 11 exists precisely to discourage this sort of conduct. Eon-Net and its counsel conduct no investigations prior to filing their form infringement complaints. Indeed, if they had bothered to conduct the most minimal investigation in this case, they would have found that any purported accused devices are already covered by a valid license agreement, barring any possibility of success on the merits. Eon-Net and its counsel should not be permitted to use the legal system to extort settlement fees based on mere guesses as to who could be infringing a particular patent. Rule 11 sanctions should be imposed.

## STATEMENT OF FACTS

<u>Eon-Net's Complaint for Patent Infringement.</u>

On February 4, 2005, Eon-Net filed a Complaint for Patent Infringement (the "Complaint") against Flagstar Bancorp ("Flagstar"). In the Complaint, Eon-Net alleges that Flagstar is willfully infringing U.S. Patent Number 6,683,697 (the "'697 Patent") entitled "Information Processing Methodology." (Complaint ¶¶ 7, 10, 13.) The '697 Patent purports to describe an invention that:

> "provide[s] an application program interface which allows a user to select specific portions of information extracted from a diversity of hard copy documents and allows the user to direct portions of this information to several different users in accordance with the needs of the particular user." (Declaration of Melissa J. Baily ("Baily Decl.") ¶ 2 & Ex. A (U.S. Patent Number 6,683,697) at col. 2 lns. 19-24.)

Specifically, Eon-Net alleges that Flagstar is willfully infringing the '697 Patent by:

-1-

"collecting information over the Internet pursuant to a claim of the '697 patent, and deploying for Defendant's own use an application distributed over the Internet in which information is collected and extracted from a customer of Defendant and processed on Defendant's server as defined by the claims of the '697 patent." (Complaint ¶ 10.)

No allegations in the Complaint are made on information and belief. The electronic signature of Jean-Marc Zimmerman of Zimmerman, Levi & Korsinsky, attorneys for Eon-Net, appears on the last page of the Complaint. (Id. at p. 4.)

Eon-Net's Offer To Settle.

Less than one month following the filing of the Complaint, Eon-Net made Flagstar a settlement offer. (Baily Decl. ¶ 3 & Ex. B (letter from Eon-Net counsel to Flagstar counsel).) In a letter dated March 2, 2005, Mr. Zimmerman:

"offer[ed] Flagstar the opportunity to avoid the expense of litigation and quickly settle this matter according to the following reasonable schedule under which the settlement amount is based on Flagstar's annual web-based sales as follows:

| Settlement Amount | Your Annual Web-Based Sales |
|---|---|
| $25,000.00 | < $3,000,000.00 |
| $50,000.00 | $3M to $20M |
| $75,000.00 | $20M - $100M" |

(Id.)

With his letter proposing settlement, Mr. Zimmerman enclosed a document entitled "Claim Chart for Claim 1 of 6,683,697 Patent." (Id.) Although the "claim chart" sets forth the text of claim 1 of the '697 Patent and restates the allegation of patent infringement as made in the Complaint, the "claim chart" does not identify any accused devices, specify any particular elements or limitations of the claim, or describe where each element of the claim is found within an accused device. (Id.)

Flagstar Is One of Many Targets in Eon-Net's "Litigation Strategy."

Flagstar is not the only entity who has received the Complaint, settlement offer, and "claim chart" described above. Eon-Net – a patent holding company – is in the business of bringing patent infringement actions with the hope that defendants will "quickly settle" in order "to avoid the expense of litigation." (Baily Decl. ¶ 3 & Ex. B (letter from Eon-Net counsel to Flagstar counsel).) To date, Eon-Net has filed more than 15 substantively identical complaints against

different defendants alleging – in identical terms – infringement of the '697 Patent. (Id. ¶ 4 & Exs. C-Q (identical complaints against different defendants).) Eon-Net's practice is to immediately follow the filing of each complaint with a form settlement offer identical to the one received by Flagstar. (Id. ¶¶ 3, 5 & Exs. B, R-T (form settlement offers sent to different defendants).) In addition, each settlement offer attaches a form "claim chart" identical to the one received by Flagstar. (Id.)

Eon-Net's attempts to settle numerous cases immediately and for nominal amounts is clearly indicative of Eon-Net's business plan and strategy – namely, to quickly profit by betting that individual defendants will choose settlement over the more expensive option of defending a meritless lawsuit. Flagstar is not willing to acquiesce in this tactic.

<u>Flagstar's Investigation of Eon-Net's Infringement Claim and Flagstar's Discovery of the Kofax Settlement Agreement.</u>

Upon being served with the Complaint, Flagstar undertook a preliminary investigation regarding Eon-Net's infringement claim. (Declaration of Jason B. Dufner ("Dufner Decl.") ¶ 2.) Because Eon-Net did not identify any purported accused devices in its Complaint or "claim chart," Flagstar sought to identify the products, software, and/or technologies used in connection with its website so that those technologies could then be examined for any evidence of the alleged infringement asserted by Eon-Net. (Id.) What Flagstar found was that the technologies supporting Flagstar's website had been developed by and purchased from Kofax Image Products, Inc. ("Kofax"). (Id. ¶ 3.)

Flagstar contacted Kofax regarding the patent infringement claim brought by Eon-Net. (Baily Decl. ¶ 6.) Kofax's counsel, Paul Gale of Stradling Yocca Carlson & Rauth, informed Flagstar that Kofax had entered into a Settlement and License Agreement with Millennium, LP – the entity that later assigned the '697 Patent to the related Eon-Net entity. (Id. ¶ 7.) That agreement granted Kofax and Kofax customers a non-exclusive irrevocable license to any patent rights ever acquired by Millennium or any related entities or assigns. (Id.) Specifically, the Settlement and License Agreement provided that:

1
2
3
4
5

- "Millennium hereby grants to Kofax a non-exclusive, irrevocable license under the Licensed Patents to make, have made, use, offer for sale, sell, lease, import, distribute and/or otherwise transfer Licensed Products commercialized by Kofax to Kofax Customers;" and

- "Millennium covenants not to sue Kofax or Kofax Customers for conduct relating to making, having made, using, or offering for sale, selling leasing, importing, distributing and/or otherwise transferring Licensed Products."

6   (Id. ¶ 7 & Ex. U (Settlement and License Agreement).)  The Settlement and License Agreement
7   defined Millennium to include related corporate entities and assigns; Kofax Customers to include
8   any past, present or future purchaser or end-user of a Licensed Product; Licensed Patents to
9   include any patent rights ever acquired by Millennium; and Licensed Products to include any
10  current or future products developed by or for Kofax.  (Id.)
11  Eon-Net Is Informed of the Kofax Settlement and License Agreement.
12         Based on the Settlement and License Agreement, no liability for patent infringement can
13  arise from Flagstar's use of Kofax products.  Accordingly, on February 3, 2006, Kofax's counsel
14  informed Mr. Zimmerman that Flagstar is a customer of Kofax, that Flagstar uses Kofax products
15  and technology in connection with its website, and that the Settlement and License Agreement
16  executed between Kofax and Flagstar encompasses Flagstar's activities in connection with its
17  website.  (Baily Decl. ¶ 8 & Ex. V (letter from Kofax counsel to Eon-Net counsel).)  On this basis,
18  Kofax's counsel requested that the Complaint be withdrawn.  (Id.)
19         Eon-Net did not withdraw the Complaint.  Instead, Mr. Zimmerman made numerous
20  inquiries of Kofax's counsel.  (Id. ¶ 9 & Exs. W-Y (emails from Eon-Net counsel to Kofax
21  counsel).)  These inquiries first sought to identify the specific products and technologies that
22  Flagstar employs in connection with its website.  For example:

23
24

- On February 7, 2006, Mr. Zimmerman sent an email to Mr. Gale requesting that Kofax "Please advise what Kofax product Flagstar is using and for what purpose such product is being used."  (Id. ¶ 9 & Ex. W.)

25
26

- On February 10, 2006, Mr. Zimmerman inquired "other than Flagstar's e-mortgage business, is Kofax software used for any other on-line banking services provided by Flagstar?"  (Id. ¶ 9 & Ex. X.)

27
28

After being informed of the Kofax products in use at Flagstar – such as Kofax's "Ascent Capture" product and other software packages – Mr. Zimmerman pursued a second line of inquiry to determine how the identified products operate. For example:

- On February 10, 2006, Mr. Zimmerman asked "what parts of the process of receiving information entered into HTML forms by users at Flagstar's website, extracting such information and transferring it to an application is performed by Kofax software?" (Id.)

- And on March 15, 2006, Mr. Zimmerman inquired "what in fact is being used to process the HTTP requests received from customer browsers and invoke the various application programs that are used to service the request?" (Id. ¶ 9 & Ex. Y.)

These inquiries by Eon-Net's counsel made obvious to Flagstar that neither Eon-Net nor Eon-Net's counsel had (1) identified a single purported "accused device" or (2) compared the claims of the '697 Patent to any alleged "accused device" prior to filing the Complaint.

Eon-Net's Notice of Non-Compliance with Rule 11.

Thus, on March 21, 2006, counsel for Flagstar notified Mr. Zimmerman of his non-compliance with Rule 11 and requested that Eon-Net's Complaint be withdrawn. (Baily Decl. ¶ 10 & Ex. Z (letter from Flagstar counsel to Eon-Net counsel).) Mr. Zimmerman was informed that his failure to identify any purported accused device – and his failure to compare the elements of each asserted patent claim to any alleged accused device – prior to filing the Complaint was a clear violation of Rule 11. (Id.) Indeed, Mr. Zimmerman was informed that the violation was made more egregious by the fact that Eon-Net's allegations of infringement were not made on information and belief. (Id.)

Flagstar's counsel further explained that, had he conducted a reasonable pre-filing inquiry, Mr. Zimmerman would have found that any potentially infringing products used by Flagstar fall within the scope of the license agreement executed by Kofax and Millennium. (Id.) Mr. Zimmerman was also advised that, having now been made aware of the license agreement, Eon-Net was on notice that there could be no conceivable basis for its allegations of patent infringement. (Id.)

07903/1861777

FLAGSTAR'S MOTION FOR SANCTIONS
CASE NO. C05-2129MJP

In Flagstar's March 21 letter to Mr. Zimmerman, Flagstar also pointed to additional evidence that Rule 11 had been violated. For example, a reasonable investigation would have found that the patent at issue was indisputably invalid as of the date of the Complaint, because it had been issued with the incorrect set of claims. (Id.) Moreover, Eon-Net's routine of filing identical complaints, sending identical "claim charts" to each defendant, and attempting to settle each case immediately for a minimal amount suggests that Mr. Zimmerman does not perform investigations into the individual facts underlying each allegation of patent infringement prior to filing each complaint. (Id.)

On March 22, 2006, Mr. Zimmerman stated his refusal to withdraw the Complaint. (Id. ¶ 11 & Ex. AA (letter from Eon-Net counsel to Flagstar counsel).) Accordingly, Flagstar prepared this motion to be served on Eon-Net 21 days prior to filing.

## **ARGUMENT**

### I. RULE 11 SANCTIONS SHOULD BE GRANTED TO DETER BASELESS FILINGS.

The Supreme Court has held that the "central purpose of Rule 11[1] is to deter baseless filings" by imposing a duty on attorneys to certify that they have "conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact and legally tenable." Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393 (1990). Accordingly, the Ninth Circuit imposes Rule 11 sanctions "for making arguments or filing claims that are frivolous, legally unreasonable, without factual foundation, or asserted for an improper purpose." S. Bravo Sys., Inc. v. Containment Techs. Corp., 96 F.3d 1372, 1375 (Fed. Cir. 1996) (citing Conn v.

---

[1] Federal Rule of Civil Procedure 11(b) provides in relevant part that an attorney signing a complaint is "certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," that:
(1) "it is not being presented for any improper purpose . . .;"
(2) "the claims . . . therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;" and
(3) "the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery."
Rule 11(c) provides that sanctions may be imposed for violations of Rule 11(b).

1  Borjorquez, 967 F.2d 1418, 1420 (9th Cir. 1992); Townsend v. Holman Consulting Corp., 929
2  F.2d 1358, 1362 (9th Cir. 1990)). A frivolous claim "is one that is both baseless and made
3  without a reasonable and competent inquiry." S. Bravo, 96 F.3d at 1375; Townsend, 929 F.2d at
4  1362.
5      Rule 11 is an especially important remedy in the context of patent infringement cases.
6  View Eng'g, Inc. v. Robotic Vision Sys., Inc., 208 F.3d 981, 986 (Fed. Cir. 2000) (applying Ninth
7  Circuit law) (finding that "[p]erforming a pre-filing assessment of the basis of each infringement
8  claim is extremely important" because "[a] patent suit can be an expensive proposition" and
9  "[d]efending against baseless claims of infringement subjects the alleged infringer to undue
10 costs – precisely the scenario Rule 11 contemplates"). Thus, prior to filing a complaint for patent
11 infringement, Rule 11 requires an attorney (1) "to apply claims of each and every patent that is
12 being brought into the lawsuit to an accused device," and (2) "to satisfy himself that a proper
13 construction of the claims . . . permits argument that each element of the claims appears in the
14 accused devices." Id.; Judin v. United States, 110 F.3d 780, 783 (Fed. Cir. 1997); S. Bravo, 96
15 F.3d at 1375. Failure to conduct such an analysis "should ordinarily result in the district court
16 expressing its broad discretion in favor of Rule 11 sanctions." View Eng'g, 208 F.3d at 986.

17 **II.  RULE 11 SANCTIONS ARE APPROPRIATE BECAUSE EON-NET'S CLAIM OF PATENT INFRINGEMENT IS FRIVOLOUS.**
18
19     A.  *Eon-Net's Claim of Patent Infringement Was Made Without a Reasonable and Competent Inquiry.*

20     It is clear that Eon-Net's claim that Flagstar willfully infringed the '697 Patent was "made
21 without a reasonable and competent inquiry." S. Bravo, 96 F.3d at 1375; Townsend, 929 F.2d at
22 1362. The evidence is conclusive that neither Eon-Net nor Mr. Zimmerman identified any alleged
23 accused device prior to filing the Complaint. Accordingly, Mr. Zimmerman could not have
24 satisfied his obligations to apply the asserted patent claims to the accused device and to conclude
25 that each element of each asserted claim appears in the accused device. View Eng'g, 208 F.3d at
26 986; Judin, 110 F.3d at 783; S. Bravo, 96 F.3d at 1375. Mr. Zimmerman's compilation of one
27 conclusory "claim chart" in which the name of any business with a website can be – and has
28 been – inserted falls far short of satisfying Rule 11.

-7-

1          1.     <u>Mr. Zimmerman did not make a reasonable and competent inquiry because he failed to identify any purported accused device prior to filing the Complaint.</u>

As an initial matter, Eon-Net has never disclosed the identity of any alleged accused device at issue in this litigation. Eon-Net has merely asserted that "Flagstar's web-based business operations are infringing the '697 Patent." (Baily Decl. ¶ 3 & Ex. B (letter from Eon-Net counsel to Flagstar counsel).) Eon-Net has not stated the identity of any device or technology that is used in connection with "Flagstar's web-based business operations." Eon-Net has not conveyed the identity of any device or technology used by Flagstar to allegedly "parse a file to extract and transfer information in a format customizable to interoperate with an application program that is associated with Flagstar's website." (<u>Id.</u>) Nor has Eon-Net stated the identity of the alleged "application distributed over the Internet in which information is collected and extracted from a customer of Defendant and processed on Defendant's server." (Complaint ¶ 10.)

This is not a case, however, in which a plaintiff merely decided to withhold information until filing Preliminary Infringement Contentions or responding to discovery requests. Here, Eon-Net and its counsel <u>never</u> identified any purported "accused device" prior to filing this lawsuit. Indeed, had Mr. Zimmerman identified such an accused device, he would not have had to ask repeatedly to have candidates for potential accused devices identified for him. (Baily Decl. ¶ 9 & Exs. W-Y (emails from Eon-Net counsel to Kofax counsel).) Moreover, had Mr. Zimmerman identified <u>any</u> technology used in connection with Flagstar's "web-based business operations," Mr. Zimmerman would have discovered that such technology was distributed by Kofax and thus covered by the Settlement and License Agreement executed between Kofax and Eon-Net's corporate affiliate. (<u>Id.</u> ¶ 7 & Ex. U (Settlement and License Agreement).)

Because Eon-Net and Eon-Net's counsel failed to identify any purported accused device prior to filing the Complaint, it is clear that Eon-Net's claims for patent infringement were filed without a reasonable and competent inquiry. <u>View Eng'g</u>, 208 F.3d at 986; <u>Judin</u>, 110 F.3d at 783; <u>S. Bravo</u>, 96 F.3d at 1375. Accordingly, the filing of Eon-Net's baseless claims (<u>see</u> <u>infra</u> Section II.B) violated Rule 11.

2. <u>Mr. Zimmerman did not make a reasonable and competent inquiry because he failed to apply the asserted patent claims to each purported accused device.</u>

Obviously, having failed to identify any purported accused devices prior to filing suit, Mr. Zimmerman could not have fulfilled his pre-filing obligation to compare the asserted claims of the '697 Patent to any purported accused devices. <u>See, e.g.</u>, <u>S. Bravo</u>, 96 F.3d at 1375-76 (finding that "the district court abused its discretion by denying the Rule 11 motion" where there was "no evidence that either of [plaintiff's] attorneys ever compared the accused devices with the patent claims"). It is true that Mr. Zimmerman attempted to conduct such an analysis <u>after</u> he filed the Complaint and <u>after</u> he was provided with the identity of the Kofax products used by Flagstar. Indeed, Mr. Zimmerman made inquiries such as:

- "What parts of the process of receiving information entered into HTML forms by users at Flagstar's website, extracting such information and transferring it to an application is performed by Kofax software?" (Baily Decl. ¶ 9 & Ex. X (email from Eon-Net counsel to Flagstar counsel).)

- "What in fact is being used to process the HTTP requests received from customer browsers and invoke the various application programs that are used to service the request?" (<u>Id.</u> ¶ 9 & Ex. Y (email from Eon-Net counsel to Flagstar counsel).)

Rule 11, however, "requires that such inquiries be undertaken *before* the suit is filed, not after." <u>Judin</u>, 110 F.3d at 790 (emphasis in original). Accordingly, the filing of Eon-Net's baseless claims (see <u>infra</u> Section II.B) violated Rule 11.

Mr. Zimmerman's questionably-titled "claim chart"[2] does not compel a different conclusion. The chart does not break out any claim of the '697 Patent into its component elements or limitations. (Baily Decl. ¶ 3 & Ex. B (letter from Eon-Net counsel to Flagstar counsel).) The chart does not identify any alleged accused devices. (<u>Id.</u>) And, of course, the chart does not compare the elements of any patent claim to any accused devices. (<u>Id.</u>) Merely creating a

---

[2] Indeed, the perfunctory nature of the "claim chart" is exposed by the fact that the identical "claim chart" is distributed to each defendant sued by Eon-Net. (Baily Decl. ¶¶ 3, 5 & Exs. B, R-T (identical claim charts distributed to different defendants).) From large banks serving customers through both its branches and its website to small businesses selling stuffed animals over the internet, each defendant receives the same "claim chart" from Mr. Zimmerman. (<u>Id.</u>) Considering that such varied businesses could not possibly conduct web-based operations using identical products and technologies, it is difficult to believe that the claim chart was based on even a

document that is called a "claim chart" does not relieve Eon-Net's counsel of his obligation to undertake an actual analysis to find the elements of the asserted patent claims in any purported accused devices. View Eng'g, 208 F.3d at 986; Judin, 110 F.3d at 783; S. Bravo, 96 F.3d at 1375.

### 3. The Federal Circuit has held that Rule 11 sanctions should be granted in cases analogous to this one.

In Judin v. United States, 110 F.3d 780 (Fed. Cir. 1997), the Federal Circuit held that it was an abuse of the trial court's discretion to deny a motion for Rule 11 sanctions in a case similar to this one. In Judin, the plaintiff alleged that the Unites States Postal Service infringed a patent claiming:

> "Method of forming an image having at least one micropoint comprising passing radiation from an optical fiber source through an optically uncorrected converging aspherical lens and producing a diffraction limited image, said lens being placed about 3 mm or more from the fiber source and the lens having a diameter in the range of 1 to about 3 mm in its major axis." Id. at 781.

Prior to filing the complaint, the plaintiff "observed bar code scanners in use at a post office," "attended a scanning industry exhibition, and was familiar with trade publications, technical specifications, and commercial literature, some of which suggested that government agencies were purchasing bar code scanners." Id. Plaintiff did not ask the Postal Service for a sample of the scanner or otherwise try to obtain one, did not inquire about the device's operation, and did not reverse-engineer the accused device. Id. at 781, 782, 784. Plaintiff merely "observed an accused device from a distance while it was in use" and determined that the device contained some of the elements of the asserted claim. Id. at 784.

On this record, the Federal Circuit in Judin found that plaintiff's pre-filing investigation:

> "may have been sufficient to put plaintiff on inquiry about whether the Government was using a device that infringed his patent. But Rule 11 requires more. It requires that the inquiry be undertaken *before* the suit is filed, not after." Id.

The Court held that, under such circumstances, "there is no doubt that [plaintiff] failed to meet the minimum standards imposed by Rule 11." Id.

Here, Eon-Net did not even identify a purported accused device prior to filing suit. Neither Eon-Net nor its counsel asked Flagstar to identify the products used in connection with its website cursory investigation of the facts related to any particular defendant.

-10-

prior to filing the Complaint. Nor did Eon-Net observe or inquire about the operation of those products. Mr. Zimmerman merely viewed the "Flagstar Bancorp website" and concluded that there must be some back-end technology "collecting information over the Internet pursuant to a claim of the '697 Patent" and "processing information on Defendant's server as defined by the claims of the '697 Patent." (Complaint ¶ 10.) Such a "pre-filing investigation" – if it can be called that – pales in comparison to the pre-filing investigation in Judin, which was found to be a clear violation of Rule 11.

### B. Eon-Net's Claim of Patent Infringement Is Baseless.

As described in detail in Flagstar Bancorp's Motion for Summary Judgment, Eon-Net's patent infringement claim against Flagstar is baseless. The only alleged infringing activities conceivably conducted by Flagstar involve the use of products purchased from Kofax. (Dufner Decl. ¶ 3.) Flagstar's purchase and use of those products are explicitly encompassed by the Settlement and License Agreement executed by Kofax and Eon-Net's corporate predecessor Millennium. (Baily Decl. ¶ 7 & Ex. U (Settlement and License Agreement).) Accordingly, as a matter of law, no liability for infringement can arise from Flagstar's purchase and use of Kofax products. E.g., Carborundum Co. v. Molten Metal Equip. Innovations, Inc., 72 F.3d 872, 878 (Fed. Cir. 1995) (finding that a patent license agreement is "a promise by the licensor not to sue the licensee" and thus "a defense to patent infringement").

### III. RULE 11 SANCTIONS SHOULD BE AWARDED IN THE FORM OF DISMISSAL OF THIS ACTION WITH PREJUDICE AND MONETARY SANCTIONS.

The nature of the sanctions imposed for a violation of Rule 11(b) is determined with reference to "what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c); Judin, 110 F.3d at 784 ("The purpose of imposing Rule 11 sanctions is to deter the misconduct addressed by the rule.") (citing Cooter, 496 U.S. at 398). On the basis of this motion and Flagstar's motion for summary judgment, Eon-Net's Complaint should be dismissed with prejudice. In addition, monetary sanctions should be imposed on Eon-Net's counsel in an amount to be determined following the dismissal of Eon-Net's baseless Complaint.

A monetary sanction is unquestionably appropriate here. First, in circumstances less egregious than these, the Federal Circuit has "no hesitancy to impose on [plaintiff's counsel] a Rule 11 sanction in the amount of the reasonable expenses incurred because of the filing of the complaint, including a reasonable attorney's fee." <u>Judin</u>, 110 F.3d at 790 ("Defendants have no choice when served with a complaint if they wish to avoid a default. They must undertake a defense, and that necessarily involves costs. Rule 11 prohibits imposing those costs upon a defendant absent a basis, well-grounded in fact, for bringing the suit."). Moreover, Eon-Net's practice of filing patent infringement suits without conducting even a cursory pre-filing inquiry is evident and wide-spread. Only the dismissal of this case <u>and</u> monetary sanctions will deter Eon-Net and its counsel from continuing their improper "Litigation Strategy."

## **CONCLUSION**

For the foregoing reasons, Flagstar respectfully requests that this Court grant its motion for sanctions pursuant to Federal Rule of Civil Procedure 11.

DATED: April 13, 2006

                QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


By: /s/Melissa J. Baily
     Melissa J. Baily

Charles K. Verhoeven
50 California Street, 22nd Floor
San Francisco, California 94111
(415) 875-6600

Jon Steiger
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
(213) 443-3000

Bradley S. Keller
Jofrey M. McWilliam
Byrnes & Keller LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
(206) 622-2000

# PROOF OF SERVICE

I am employed in the County of San Francisco, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 50 California Street, 22nd Floor, San Francisco, California 94111.

On April 13, 2006, I served true copies of the following document(s) described as

**DEFENDANT FLAGSTAR BANCORP'S MOTION FOR SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11**

on the parties in this action as follows:

Jean-Marc Zimmerman
Zimmerman, Levi & Korsinsky, LLP
226 St. Paul Street
Westfield, NJ 07090

Email: jmzimmerman@zlk.com

**BY ELECTRONIC MAIL TRANSMISSION:** By electronic mail transmission from alanarivera@quinnemanuel.com on April 13, 2006, by transmitting a PDF format copy of such document(s) to each such person at the e-mail address listed below their address(es). The document(s) was/were transmitted by electronic transmission and such transmission was reported as complete and without error.

**BY FEDEX:** I deposited such document(s) in a box or other facility regularly maintained by FedEx, or delivered such document(s) to a courier or driver authorized by FedEx to receive documents, in sealed envelope(s) or package(s) designated by FedEx with delivery fees paid or provided for, addressed to the person(s) being served.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on April 13, 2006, at San Francisco, California.

Alana Rivera