1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

EON-NET, L.P.,

               Plaintiff,

     v.

FLAGSTAR BANCORP, INC.,

               Defendant.

CASE NO. C05-2129MJP

**ORDER ON SANCTIONS
PURSUANT TO
FED. R. CIV. P. 11**

## I.  INTRODUCTION

      This matter comes before the Court on a motion for sanctions pursuant to Fed. R. Civ. P. 11 by Defendant Flagstar Bancorp ("Flagstar") (Dkt. No. 42).  The Court has reviewed Flagstar's motion, the opposition by Plaintiff Eon-Net, L.P. ("Eon-Net"), the reply, and the supporting declarations and exhibits submitted by both parties.  In addition, the Court considered the patent at issue, U.S. Patent No. 6,683,697 (the "'697 Patent").  The Court heard oral argument from the parties on September 8, 2006, and being fully informed hereby enters the following order.

## II.  BACKGROUND

      Plaintiff Eon-Net alleges that Flagstar infringes the '697 Patent.  Am. Complaint ¶ 10.  A related corporation, Millennium, L.P. ("Millennium"), assigned the '697 Patent

ORDER – 1

to Eon-Net.  Id. ¶ 8.  The '697 Patent describes and claims an interface between "hard copy" documents and computer applications.[1]  See '697 Patent at 4:13-15.  The specification describes the extraction of information from hard copy documents by scanning the documents, parsing the extracted information, and formatting the information for use.  '697 Patent at 4:25-28, 4:45-49, 4:53-5:56 (Description of Figure 1).  The invention of the '697 Patent permits quick and automatic extraction of information from hard copy documents, such as invoices or receipts.[2]

Flagstar operates banking centers throughout the country.  Declaration of Melissa J. Baily in Support of Flagstar Bancorp's Motion for Summary Judgment ("Baily Decl.") ¶ 2.  Flagstar also operates a website at www.flagstar.com.  Id.  Flagstar's website provides customers with online access and services related to its "e-mortgage" and banking business.  Affidavit of Jason B. Dufner in Support of Flagstar Bancorp's Motion for Summary Judgment ("Dufner Aff.") ¶ 3.  Potential borrowers may submit loan applications and related information and obtain updates on loan approval.  Id.  Users may also obtain information on established loan accounts through Flagstar's website.  Id.  Plaintiff alleges that Flagstar infringes the '697 Patent by:

> [C]ollecting information over the Internet pursuant to a claim of the '697 patent, and deploying for Defendant's own use an application distributed over the Internet in which information is collected and extracted from a customer of Defendant and processed on Defendant's server . . .

Am. Compl. ¶ 10.  Plaintiff's Complaint is virtually identical to two complaints in cases previously before this Court, Eon-Net, L.P. v. CoolAnimalStuff.com, No. C05-1844MJP,

---

[1] The '697 Patent does not provide a definition for a "hard copy" document.  One current dictionary defines "hard copy" as a "printed copy, especially of the output of a computer or word processor," which is consistent with the usage in the patent.  See American Heritage Dictionary of the English Language (4th Ed. 2000).

[2] Eon-Net contends that the '697 Patent claims an invention that extracts information from any electronic document, including web pages and HTML forms, regardless of whether the information is extracted from a "hard copy" document.  As such, Eon-Net contends that most, if not all, HTML form usage on the internet infringes the '697 Patent.

ORDER – 2

and Eon-Net, L.P. v. Drugstore.com inc., No. C05-2114MJP.  The Complaint is also virtually identical to at least thirteen other complaints filed against parties with greatly disparate business operations.[3]  The complaints all allege the defendants infringe by:

> collecting information over the Internet pursuant to a claim of the '697 patent, and deploying for Defendant's own use an application distributed over the Internet in which information is collected and extracted from a customer of Defendant and processed on Defendant's server . . .

See, e.g., Second Baily Decl., Ex. C at ¶ 10 (Black Hound Compl.).  The only difference between the complaints is the name of the defendant.  In recent weeks (during the pendency of this motion), Eon-Net has filed eleven new complaints[4] against various unrelated parties, some of which charge infringement of the '697 Patent with slightly changed language:

> operating a website at [web address] pursuant to a claim of the '697 patent . . . in which information entered by a customer of Defendant into an electronic form document displayed on the customer's computer is extracted and transmitted to an application program operating on Defendant's server . . .

See, e.g., Supplemental Declaration of Melissa J. Baily in Support of Flagstar Bancorp's Motion for Sanctions Pursuant to Fed. R. Civ. P. 11 ("Supp. Baily Decl."), Ex. 2 at ¶ 12 (Hammacher Schlemmer Compl.).

In this case, as in its various other infringement actions, Eon-Net followed service of the complaint with a cheap offer of settlement.  See, e.g., Second Baily Decl., Ex. B. Eon-Net offers settlement for a fraction of the cost of litigation, with a settlement

---

[3] Other parties sued by Eon-Net include Black Hound New York, Homecenter.com, BabyAge, Inc., Beach Camera, Inc., ING Bank, Random House, Inc., RedEnvelope, Inc., Sawhorse Enterprises, Inc., SomethingSexyPlanet.com, A18 Corporation, Linens 'N' Things, Inc., Brother International Corporation, Edmunds Optics, Inc., and Sommers Plastic Products, Co. Inc.  See Declaration of Melissa J. Baily in Support of Flagstar Bancorp's Motion for Rule 11 Sanctions ("Second Baily Decl."), Exs. C-Q.

[4] The new parties sued by Eon-Net include JetBlue Airways Corporation, Hammacher Schlemmer & Company, Inc., D'Agostino Supermarkets, Inc., FootLocker, Inc., Sony Corporation of America, Anadigics, Inc., Liz Claiborne, Inc., Sys-Con Media, John Wiley & Sons, Inc., Staples, Inc., and Barnes & Noble, Inc.  See Supp. Baily Decl., Exs. 1-11.

ORDER – 3

schedule based on a defendant's annual sales: $25,000 for sales less than $3,000,000, $50,000 for sales between $3,000,000 and $20,000,000, and $75,000 for sales between $20,000,000 and $100,000,000.  Id.  Flagstar urges that the identical complaints and cheap settlement  offers demonstrate bad faith.  Flagstar's counsel characterizes the litigation as a "bad faith shakedown suit."[5]  See Declaration of Jean-Marc Zimmerman in Support of Eon-Net's Opposition to Motion for Rule 11 Sanctions ("Zimmerman Decl."), Ex. 40.

Flagstar reviewed its web operations in light of the infringement suit to identify products, software, or technologies that might infringe the '697 Patent.  See Declaration of Jason B. Dufner in Support of Flagstar Bancorp's Motion for Rule 11 Sanctions ("Dufner Decl.") ¶ 2.  Flagstar determined that it used potentially related software for document processing, which was sold by Kofax Image Products, Inc. ("Kofax").  Id. ¶¶ 2-3.  Flagstar had purchased Kofax software, including "Ascent Capture" and "Ascent Payables" (the "Kofax software"), which Flagstar used in its e-mortgage business.  See Dufner Aff. ¶¶ 4, 7, Ex. 1 (Software License Agreement).

Flagstar contacted Kofax about the software products it had purchased, and told Kofax of the infringement lawsuit.  Baily Decl. ¶ 6.  Kofax's attorney informed Flagstar that Kofax had a license to the '697 Patent and that its customers were covered by the license.  Baily Decl., Ex. 5 (Settlement & License Agreement between Kofax and Millennium).  The license agreement grants Kofax and its customers a non-exclusive irrevocable license for the '697 Patent for their use of Kofax software, and binds Millennium's assigns and related corporate entities.  Id., Ex. 5 ¶¶ 2.1.1, 8.2.  Flagstar subpoenaed the license agreement from Kofax to determine whether Flagstar was covered by the terms of the license agreement.  Eon-Net instructed Kofax not to comply with the

---

[5] In spite of the many complaints filed by Eon-Net for infringement of the '697 Patent, this Court is unaware of any complaint resolved on the merits.

ORDER – 4

subpoena, claiming it would seek a protective order.  Baily Decl., Ex. 7 (email from Eon-Net to Kofax).  Eon-Net later threatened Kofax with a lawsuit for complying with the subpoena and producing the license agreement.  Id., Ex. 9.

After Eon-Net filed suit, Flagstar attempted to informally assist Eon-Net with its post-filing investigation of its web operations in an attempt to convince Eon-Net that it was not infringing and was licensed.  Flagstar answered questions about software functionality for nearly a year.  E.g., Zimmerman Decl., Ex. 31.  Over a year after filing the Complaint, Eon-Net now agrees that the Kofax software does not infringe.  See Zimmerman Decl., Ex. 39 (April 21, 2006 Zimmerman Letter).  When faced with simultaneous motions for summary judgment and sanctions pursuant to Fed. R. Civ. P. 11, Eon-Net attempted to clarify its infringement position.  Counsel's carefully worded declaration notes that Eon-Net's investigation "to date" has uncovered evidence of infringement through the use of Digital Insight software.  See Second Zimmerman Decl. ¶ 5.  Eon-Net does not claim that it identified the Digital Insight software before bringing suit.

## II.  ANALYSIS

Flagstar moves for sanctions pursuant to Rule 11, alleging that Eon-Net did not perform an adequate pre-filing investigation and that its claim for infringement is baseless.  Rule 11 imposes a duty on attorneys to certify by their signature that (1) they have read the pleadings or the motions they file, and (2) the pleading or motion is "well-grounded in fact," has a colorable basis in law, and is not filed for an improper purpose.  Fed. R. Civ. P. 11; see also Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393 (1990) ([T]he "central purpose of Rule 11 is to deter baseless filings . . .").

Rule 11 imposes specific requirements in the patent litigation context.  See, e.g., View Eng'g, Inc. v. Robotic Vision Sys., Inc., 208 F.3d 981, 986 (Fed. Cir. 2000).  Prior to filing a complaint for infringement, Rule 11 requires an attorney to (1) apply the claims of each asserted patent to the accused device, and (2) satisfy himself that a proper

ORDER – 5

1  construction of the claims permits an argument that each element of the claims appears in

2  the accused devices.  See id. at 986.  In the Ninth Circuit, an attorney may not be

3  sanctioned under Rule 11 "for a complaint that is not well-founded, so long as she

4  conducted a reasonable inquiry . . . [nor] may she be sanctioned for a complaint which *is*

5  well-founded, solely because she failed to conduct a reasonable inquiry."  In re Keegan

6  Management Co., Sec. Litig., 78 F.3d 431, 434 (9th Cir. 1996) (emphasis in original); see

7  also S. Bravo Sys., Inc. v. Containment Techs. Corp., 96 F.3d 1372, 1375 (Fed. Cir.

8  1996) ("A 'frivolous' argument or claim is one that is 'both baseless and made without a

9  reasonable and competent inquiry.'").

10 **A.     Flagstar's Motion for Sanctions Pursuant to Fed. R. Civ. P. 11**

11         Eon-Net alleges that its pre-filing investigation was reasonable because it

12 examined the Flagstar website, construed the claims of the '697 Patent, compared the

13 asserted claims to the Flagstar website, and prepared a claim chart.  Flagstar contends that

14 Eon-Net failed to investigate or identify allegedly infringing products, and asserted and

15 maintained baseless claims for infringement.

16

17         **1.     Eon-Net Failed to Perform a Reasonable Pre-Filing Inquiry**

18         A reasonable inquiry into an allegation of patent infringement requires a careful

19 evaluation of the patent claims and the accused device.  Speculation as to infringement

20 does not constitute a reasonable inquiry.  E.g., View Eng'g, 208 F.3d at 985; Judin v.

21 United States, 110 F.3d 780, 784 (Fed. Cir. 1997) (mere belief that a device infringes

22 does not constitute a reasonable pre-filing investigation).

23         In View Engineering, the declaratory judgment defendant counterclaimed for

24 patent infringement based on its belief that plaintiff infringed, but without access to

25 plaintiff's products.  208 F.3d at 985.  The defendant did not have access to plaintiff's

26 three-dimensional vision products, but speculated that plaintiff's products likely infringed

27 based on plaintiff's product literature.  The defendant also failed to perform a claim and

28 infringement analysis.  Id.  In affirming the award of sanctions pursuant to Rule 11, the

ORDER – 6

Federal Circuit agreed with the district court's assessment of the pre-filing investigation, noting that "little inquiry, much less a reasonable one, was undertaken by [counsel] in the instant case." Id. at 986.

In Judin, the plaintiff-inventor observed a hand-held optical scanner at a United States Post Office; he was knowledgeable about optical scanner technology and believed the device infringed his patents. 110 F.3d at 781-82. He did not, however, know whether the accused device met two important claim limitations: a "fiber optic source," and an "aspherical and converging" lens. Id. at 782. He assumed, however, that the scanner infringed his patents. His counsel did not question his conclusion. The trial court found that the inventor and his counsel "could have been much better informed," but declined to award sanctions. Id. at 782-83. The trial court believed their unrealistically broad claim construction position was not "uniformly frivolous," and did not sanction counsel for failing to compare every limitation of the claims against the accused device. Id. at 783. The Federal Circuit reversed and directed the trial court to impose sanctions:

> By viewing the accused devices at a distance Judin was able to determine that they had a light source and a rounded tip through which the light passed, and that the light was focused in a pinpoint. That may have been sufficient to put Judin on inquiry about whether the Government was using a device that infringed his patent. But Rule 11 requires more. It requires that the inquiry be undertaken before the suit is filed, not after. Defendants have no choice when served with a complaint if they wish to avoid a default. They must undertake a defense, and that necessarily involves costs. Rule 11 prohibits imposing those costs upon a defendant absent a basis, well-grounded in fact, for bringing the suit.

Id. at 784. Rule 11 is not about "after-the-fact investigation," and consulting with experts after filing to craft "colorable" arguments does not cure a Rule 11 violation. Id. at 785.

### a.     Eon-Net failed to identify an accused product

Eon-Net's complaint and claim chart are virtually identical to its other complaints in other cases. Nothing in the complaint or purported "claim chart" identify infringement contentions or accused products. The closest Eon-Net came to identifying an infringing product or functionality was its allegation that Defendant deployed an application over

ORDER – 7

the internet which collected and extracted information from a customer pursuant to a claim of the '697 Patent.[6]  See Am. Compl. ¶ 10.  This is insufficient to meet the requirements of Rule 11.  On the facts before the Court, it appears that Eon-Net did even less than the plaintiffs in Judin and View Engineering.  In this case, Eon-Net brought suit without even deciding what products or functionality infringed.

A reasonable pre-filing investigation requires more; it necessarily requires some identification of the allegedly infringing technology.  See, e.g., S. Bravo Sys. v. Containment Techs. Corp., 96 F.3d 1372, 1375 (Fed. Cir. 1996).  Determining infringement requires claim interpretation, and that claims read on the accused device.[7]  Id.  It is implicit that identification of the accused device is a necessary prerequisite to determining infringement.  Without identification of an accused device, the plaintiff cannot determine if the claims read on the device.  In this case, a reasonable pre-filing investigation required more than the mere allegation that Flagstar "collect[s] information over the Internet."  See Am. Compl. ¶ 10.

Eon-Net's claim charts (which purport to identify product function) fall below the requirements of Rule 11.  Although crafted for versatility (fill in the blank for each new case), the claim charts are essentially worthless.  The claim charts generally identify an allegedly infringing function, but give no indication that Eon-Net even reviewed Flagstar's website before filing suit.  Indeed, the claim charts are so general they could be sent to any web-based business (along with a complaint for infringement) merely by changing the names.

---

[6] The '697 Patent has 101 claims.

[7] In the world of computers and the internet, where complex applications run across worldwide networks of connected servers and clients, it is not sufficient to merely identify the "website" as the infringing technology.

ORDER – 8

Eon-Net did not identify infringing technology in its pre-filing investigation.  See Zimmerman Decl. ¶¶ 9-10.  Its pre-filing investigation consisted of an observation of the Flagstar website with consumer accessible web-based forms and a series of "reasonable conclusions" by Flagstar's counsel about how the information was used.  Id. ¶ 10.  The record of communications between counsel indicates that Eon-Net never identified specific products that allegedly infringed, although counsel did ask questions about specific web addresses.  See Zimmerman Decl., Exs. 21-37.  While the record indicates that Eon-Net may have attempted to identify infringing products at a later time, this does not affect the Court's evaluation of the pre-filing investigation.  See Judin, 110 F.3d 785 (Rule 11 is not about after the fact investigations.).

At oral argument, counsel presented the Court with HTML printouts from Flagstar's website, but failed to explain how a random page of code containing the word "form," in places, amounted to infringement.  The Federal Rules require a specific inquiry before the filing of a complaint.  It is not acceptable to identify a general category of conduct (e.g., web-based forms) and file scores of complaints without investigation.  A reasonable pre-filing investigation required Eon-Net to identify the products it was accusing of infringement.  It failed to do so.

### b.    Eon-Net failed to investigate the accused product

Eon-Net's investigation of Flagstar's products was similarly deficient.  A plaintiff in a patent infringement suit has an obligation to fully investigate accused products before filing suit.  See, e.g., Refac Int'l, Ltd. v. Hitachi, Ltd., 141 F.R.D. 281, 286-88  (C.D. Cal. 1991) (imposing Rule 11 sanctions on patent infringement plaintiff that failed to reverse engineer or examine accused products prior to filing complaint).  In Judin, the Federal Circuit found inexcusable the failure to obtain a sample of the accused device for inspection prior to filing suit.  Judin, 110 F.3d at 784.  Eon-Net makes no excuse for its failure to obtain or inspect copies of the software at issue, although it appears that Eon-

ORDER – 9

Net never even identified the software.  It would have been impossible to inspect or obtain what had not been identified.

Eon-Net makes no excuse for its failure to obtain for review the commercially available software packages from Kofax and Digital Insight.  Instead of attempting to acquire samples or investigate functionality, Eon-Net's counsel merely observed the website. Zimmerman Decl. ¶ 10.  Eon-Net's counsel admits that it knew little about the function of Flagstar's website, and there is no evidence that Eon-Net's counsel understood the technical details underlying Flagstar's web-based operations.  Counsel had no idea what formats or protocols were used.  Id.  He didn't know whether the server invoked a program, although he concluded that it must.  Id.  He didn't know how information was transmitted or used.  Id.  He didn't have any information regarding the source code that was used to drive the allegedly infringing web pages, although he provided random HTML printouts at oral argument.  Id.  Plaintiff's counsel compensated for his lack of knowledge with a series of "reasonable" deductions from his observation of the website; he based Plaintiff's infringement contentions on at least twenty web pages that allow a customer to enter information.  Id. ¶ 11.  Counsel never identified software that was allegedly infringing, even though he now acknowledges that the software used on the web pages was identifiable.  Id. ¶ 14.  As Flagstar pointed out at oral argument, because Eon-Net only reviewed the HTML pages with form elements, Eon-Net has no knowledge or understanding of what Flagstar does with information entered into its web page.  The information might be processed by hand, or it might be processed by a server.  It might be parsed or it might not.  Eon-Net simply does not know, and its investigation was insufficient to inform it of the relevant facts surrounding Flagstar's operations.

Eon-Net's counsel never identified where each step was performed in the allegedly infringing software, and completely failed to establish even the slightest question of infringement.  Although counsel claims to have visited the Digital Insight website, Eon-Net provides no evidence regarding functionality and infringement of Digital Insight

ORDER – 10

products.  In addition, Eon-Net's counsel admitted at oral argument that he substantially relied on his client's viewpoint regarding infringement without obtaining any outside expert opinion as to infringement.  Although expert opinion in a pre-filing investigation is certainly not required, consulting with an expert regarding software functionality might help counsel avoid the many suspect deductions and conclusions present here.  See Judin, 110 F.3d at 782-83 (sanctions imposed, in part, because counsel did not check inventor's conclusions as to infringement).

Eon-Net's argument that "there is no 'product' to obtain" or evaluate is not well taken.  The product is the software that Eon-Net has identified in its most recent filings.  Eon-Net makes no argument that it could not have obtained or otherwise investigated the software function, and does not excuse its failure to investigate.  If Eon-Net believes multiple software packages infringe the '697 Patent by performing a series of steps, it must make an effort to identify the infringing functionality.  A reasonable pre-filing investigation requires Eon-Net to investigate the products it accuses of infringement.  It failed to do so.

It appears, based on the facts before this Court, that Eon-Net has made the failure to investigate or identify infringing technology the hallmark of its litigation plan.  Possible repercussions for failure to investigate are balanced against an economy of scale effected by filing numerous lawsuits which will cheaply settle.  Here, it appears that Eon-Net began its investigation of Flagstar only after it realized that Flagstar would not pay the "inexpensive" settlement.  Such litigation conduct is unacceptable.

c.  <b>Eon-Net failed to reasonably evaluate the '697 Patent's claims</b>

A reasonable pre-filing investigation also requires objective evaluation of the claim terms.  S. Bravo, 96 F.3d at 1375 (holding that pre-filing investigation requires that the claims be interpreted).  Implicit is a requirement that claim construction in a pre-filing investigation be reasonable.  Eon-Net's counsel submitted a declaration stating that "[a]s part of [the] pre-suit investigation," counsel construed the claims of the '697 Patent

ORDER – 11

"according to the canons of claim construction that includes the specification and file history." Zimmerman Decl. ¶ 12.  The declaration states that counsel prepared a claim chart.  The declaration does not mention that the claims in the claim chart are not the correct claims,[8] or that the claim chart was generic across all of Eon-Net's many other cases.  The declaration also does not mention when the claim chart was prepared.

Eon-Net does not bother to discuss its claim construction.  It does not tell the Court which terms it construed.  More importantly, it does not explain how it concluded that the '697 Patent could be construed to cover web-based forms.  Eon-Net's claim construction position is detailed in its filings and correspondence.  Eon-Net contends that unlike its five predecessors,[9] the '697 Patent claims do not relate to hard copy documents.

> The Millenium patent claims are primarily directed to information extracted from scanned hard copy documents, while the '697 Patent additionally covers extracting information from electronic files and documents that do not originate from a scanned hard copy document.

Pls. Opp. to S.J. at 1 n.1.  In explaining its construction position, Eon-Net urges that the '697 Patent "covers the extraction of information from *any* type of form . . ."  Pl.'s Opp. to S.J. at 10 (emphasis added).

Eon-Net's argument that the '697 Patent covers far more than the specification's definition of "the invention" borders on the illogical.  There is no support for Eon-Net's argument.  The specification describes "the invention" as including the "hardware and software necessary to extract, retrieve, and process information from [a] hard copy

---

[8] The claim chart purports to analyze the claims of the '697 Patent, but ignores the important certificate of correction.  It is unclear whether Eon-Net's counsel ever prepared a corrected claim chart in this case or any other.

[9] The '697 Patent is a continuation of application 09/044,159 (U.S. Pat. No. 6,094,505), which is a continuation of application 08/487,150 (U.S. Pat. No. 5,768,416), which is a divisional 08/348,224 (U.S. Pat. No. 5,625,465), which is a continuation of 08/143,135 (U.S. Pat. No. 5,369,508), which is a continuation of 07/672,865, filed Mar. 20, 1991 (now U. S. Pat. No. 5,258,855).

ORDER – 12

document." '697 Patent at 4:25-29.  The specification also describes the invention as

follows:

> The invention provides an application program interface which inputs a diversity
> of hard copy documents using an automatic digitizing unit and which stores
> information from the hard copy documents in a memory as stored document
> information.

Id. at 2:48-53.  *The invention* is repeatedly described as being "directed to a system for

efficiently processing information *originating from* hard copy documents."  '697 Patent at

1:15-17 (emphasis added).  "[T]he instant invention provides an integrated and

comprehensive system for handling information from a hard copy document, thus

permitting a paperless office."  Id. at 14:64-66.  "The instant invention also provides for

parsing information extracted from the hard copy document."  Id. at 4:45-49.

   The disclosure of the '697 Patent contains nothing that supports Eon-Net's

unrealistic scope for the '697 claims.  Eon-Net ignores the patent specification and

purpose.

> The whole purpose of a patent specification is to disclose one's invention to
> the public.  It is the quid pro quo for the grant of the period of exclusivity.
> The need to tell the public what the invention is, in addition to how to make
> and use it, is self-evident.  One should not be able to obtain a patent on
> what one has not disclosed to the public.

Lizardtech, Inc. v. Earth Resource Mapping, Inc., 433 F.3d 1373, 1375 (Fed. Cir. 2006)

(en banc) (Lourie, Michel, & Newman, concurring).

   Eon-Net argues against defining claim terms with any reference to "hard copy

documents."  Eon-Net urges that the "hard copy" limitation improperly imports

limitations from the specification into the claims.  See, e.g., E. I. Du Pont de Nemours &

Co. v. Phillips Petroleum Co., 849 F.2d 1430, 1433 (Fed. Cir. 1988).  Its true goal,

however, is to avoid the specification and its damaging definitions altogether.  The

specification exposes the frivolity of Eon-Net's claim construction position.

   It is fundamental that claim construction must take place in light of the

specification.  Phillips v. AWH Corp., 415 F.3d 1303, 1315 (Fed. Cir. 2005) (en banc).

ORDER – 13

"Although claims need not be limited to the preferred embodiment when the invention is more broadly described, 'neither do the claims enlarge what is patented beyond what the inventor has described as *the invention*.'" Id. (quoting Netword, LLC v. Centraal Corp., 242 F.3d 1347, 1352 (Fed. Cir. 2001)) (emphasis added).

Discerning the meaning of a claim term in the context of the invention and field of art does not "import" a limitation from the specification.  See, e.g., Curtiss-Wright Flow Control Corp. v. Velan, Inc., 438 F.3d 1374, 1379-80 (Fed. Cir. 2006) (construing claim term "adjustable" in light of the context and guidance of the specification, which required adjustability without disassembly); see also Interactive Gift Exp., Inc. v. Compuserve Inc., 256 F.3d 1323, 1337 (Fed. Cir. 2001) (en banc) (construing claim term "material object" in light of what was "envision[ed] and disclos[ed]" by the specification); SciMed Life Systems, Inc. v. Advanced Cardiovascular Systems, Inc., 242 F.3d 1337, 1344-45 (Fed. Cir. 2001) (construing claim term "separate" to exclude lumens arrangements that were not disclosed in the specification).  In this case, the claim terms "document" or "file" are present in every claim, and must be construed in light of the specification.  Any reasonable construction must necessarily include a reference to the hard copy documents contained in every definition in the specification.  In this case, "the specification makes plain what the [inventor] did and did not invent."  In re Fout, 675 F.2d 297, 300 (C.C.P.A. 1982); accord Phillips, 415 F.3d at 1315.

Eon-Net's claim construction position – which excludes a reference to hard copy documents – ignores the plain language of the disclosure.  Most importantly, it ignores what the inventor defined as "the invention."  To the extent Eon-Net went through the motions of a claim construction exercise, it recklessly defined terms to suit its purposes in spite of the specification's language.  The specification unambiguously defines the invention of the '697 Patent as a system for extracting information from hard copy documents.  Eon-Net's construction in spite of the evidence is an abuse of the protections afforded by the patent system and is the type of misconduct for which Rule 11 provides

ORDER – 14

sanctions.  Eon-Net's counsel failed to objectively evaluate the merits of its infringement claim.  Rule 11 requires a reasonable pre-filing investigation of the claims and accused product, which Eon-Net failed to perform.  Claim construction must take place in light of the specification, not in spite of the specification.

### 2.     Eon-Net's Claims of Patent Infringement are Baseless

Had Eon-Net undertaken a reasonable pre-filing investigation of the '697 Patent, it would have known that its proffered construction and infringement positions were unreasonable.  There is no basis for Eon-Net's position in this litigation.  Eon-Net ignored the specification and disclosure and the basic canons of claim construction in evaluating the '697 Patent and accused products.  The Court must also conclude that Eon-Net's claims for infringement are baseless because Eon-Net has failed to identify any infringing product or functionality.  Eon-Net's general identification of a web site and its HTML forms is insufficient to constitute the identification of infringing technology as it relates to the '697 Patent.  For these reasons and the reasons set forth in the previous section, the Court concludes that Eon-Net's claims of patent infringement are baseless.

The Court GRANTS Flagstar's motion for Rule 11 sanctions.

### B.     Eon-Net's Motion for Sanctions Pursuant to Fed. R. Civ. P. 11 and 28 U.S.C. § 1927

In its opposition, Eon-Net asks the Court to impose sanctions pursuant to Fed. R. Civ. P. 11 and 28 U.S.C. § 1927.  This request is frivolous and without merit.  Rule 11(c)(1)(A) allows a 21-day "safe harbor."  Eon-Net neglected to comply with this provision of the Rule.  Accordingly, the Court must DENY Eon-Net's motion for Rule 11 sanctions.  Barber v. Miller, 146 F.3d 707, 710 (9th Cir. 1998).[10]  Eon-Net also asks the

---

[10] The Court observes that Eon-Net's request for sanctions pursuant to Rule 11 may itself constitute a separate violation of the Rules.  It is well established in the Ninth Circuit that Rule 11 sanctions are not available without compliance with the 21-day "safe harbor" provision.  The failure to comply with the requirements of Rule 11 is both (1) a legal contention not warranted by existing law; and (2) a representation to the court interposed for an improper purpose.

ORDER – 15

1    Court for sanctions pursuant to 28 U.S.C. § 1927, which allows sanctions for

2    unreasonable and vexatious litigation conduct.

3         Eon-Net misapprehends the gravity of conduct that is required for the imposition

4    of sanctions under § 1927.  In characterizing Flagstar's conduct in this litigation, this

5    Court can identify no conduct which is unreasonable or vexatious.  Eon-Net's motion for

6    sanctions is therefore DENIED.

7                              **III.  SANCTIONS**

8         Rule 11 requires the Court to impose an appropriate sanction for a pleading filed

9    in violation of the Rule, either upon the person who signed it, a represented party, or

10   both.  Judin, 110 F.3d at 785.  Rule 11 requires a good faith basis in law and fact before

11   imposing on a defendant the costs of litigation.  Eon-Net's pleadings allege infringement

12   without a reasonable pre-filing investigation.  The allegations are completely devoid of

13   merit.

14

15        The Court is also very concerned with Eon-Net's continuing conduct.  The Court

16   was shocked to learn at oral argument that during the pendency of Flagstar's motion for

17   Rule 11 sanctions, Eon-Net has filed eleven new identical Complaints.  See Supp. Baily

18   Decl., Exs. 1-11.  Plaintiff's conduct recalls Molski v. Mandarin Touch Restaurant, 359

19   F. Supp. 2d 924 (C.D. Cal. 2005).  A serial plaintiff under the Americans with

20   Disabilities Act ("ADA") between 1998 and 2005, Mr. Molski filed more than 400

21   lawsuits under the ADA.  In the great majority of his complaints, Mr. Molski alleged

22   similar bodily injury on curbs, landscaping, stairs, and bathroom stalls.  The court found

23   his allegations to be "contrived."  Mr. Molski's counsel sent letters to the (usually)

24   unrepresented defendants advising them to quickly settle and avoid the high cost of

25   litigation.  Of 400 lawsuits, only one proceeded to trial and the jury unanimously found

26   no violations of the ADA.  The court found that the unusual number of settlements were

27   indicative of an extortion scheme.  Id. at 934 (citing Reed v. Great Lakes Cos., 330 F.3d

28

ORDER – 16

931, 936 (7th Cir. 2003)).  The court also found Mr. Molski was using the federal courts to leverage his frivolous lawsuits against less powerful litigants.

This Court finds that indicia of extortion are present in this case.  Dozens of parties (regardless of their actual business) have received the same complaint, claim chart, and settlement letter.  From SomethingSexyPlanet.com to CoolAnimalStuff.com, no website is safe from an Eon-Net suit for patent infringement.  Like <u>Molski</u>, Eon-Net offers a nuisance settlement at the outset to avoid a hard look at the merits of its infringement claims.  Given the extraordinary cost of patent litigation, even the finest patent attorney would need to think carefully before advising a client to spend hundreds of thousands of dollars in litigation when a $25,000, $50,000, or $75,000 settlement was on the table.  Indeed, in the two other Eon-Net cases before this Court, and dozens before other courts, the plaintiffs have opted for the "cheap" standard offer of settlement.  An appropriate sanction is required to deter future bad conduct.  Accordingly, the Court imposes the following sanctions:

1.     **Attorneys' Fees and Costs.**  Flagstar is entitled to its reasonable attorneys' fees and costs expended to date in this litigation against Eon-Net's counsel Jean-Marc Zimmerman and his firm.  Counsel for Flagstar shall, no later than 10 days from entry of this Order, serve and file a memorandum, supported by a declaration of counsel, establishing the attorneys' fees and costs incurred in this matter.  The memorandum shall provide a reasonable itemization and description of the work performed, the identity of the attorney or staff member performing the work, the customary fees for such work, as well as the experience, reputation and ability of the attorney performing the work.  The declaration shall authenticate the information contained in the memorandum, provide a statement that the bill has been reviewed and edited, and a statement that the fees and costs charged are reasonable.  Privileged information may be redacted so long as the redactions do not unreasonably obscure the nature and necessity of the task and the identity of the person performing the task.  Eon-Net's counsel shall have 10 days from

ORDER – 17

service of the memorandum of costs and attorneys' fees in which to file a responsive memorandum addressing the reasonableness of the costs and fees sought, as well as any equitable considerations deemed appropriate for the Court to consider in determining the amount of costs and fees to be awarded.  Counsel for Flagstar shall have 5 days from service of the responsive memorandum in which to file a reply.

**2.    Notice to Parties.**  Within 5 days of this Order, Eon-Net shall provide a copy of this Order to every defendant charged with infringement of the '697 Patent for "collecting information over the internet" or "operating a website . . . pursuant to a claim of the '697 patent" and to the court in which the action was filed.  This Court does not seek to intrude on the freedom of other district courts to consider the merits of Eon-Net's claims for infringement of the '697 Patent.  However, those defending infringement claims, and the courts in which those actions are filed, are entitled to be made aware of this Court's review of Eon-Net's litigation tactics and misconduct.  Regardless of the merits of Eon-Net's claims, Eon-Net has chosen filing over investigation, and nuisance settlements to avoid the merits.  Eon-Net's conduct violates the rules and other Defendants should be made aware.

Counsel and his client shall file an Affidavit of Service showing the date of service, location of the suit by the court's location, and docket number, within 15 days of this Order.  This shall apply to all suits filed whether settled or currently in progress.

## IV.  CONCLUSION

The Court GRANTS Defendant Flagstar's motion for sanctions pursuant to Fed. R. Civ. P. 11.  Eon-Net and its counsel failed to undertake a reasonable pre-filing investigation of Flagstar's allegedly infringing software.  Eon-Net and its counsel asserted claims which are wholly without merit.  Eon-Net failed to identify an infringing product or functionality and failed to compare any product or functionality against the claims of the '697 Patent.  Eon-Net asserted and maintained baseless claims of patent infringement in hopes of a quick settlement.  Accordingly, the Court awards Flagstar its reasonable

ORDER – 18

attorneys' fees and costs and orders Mr. Zimmerman to serve a copy of this Order on the
defendants and courts, as set forth in this Order.

Dated this 4th day of October, 2006.

s/Marsha J. Pechman
MARSHA J. PECHMAN
United States District Judge

ORDER – 19