The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| Eon-Net, L.P., | CASE NO. C 05-2129 RSM |
|---|---|
| Plaintiff, | **DEFENDANT FLAGSTAR BANCORP'S MOTION FOR ATTORNEYS' FEES AND COSTS** |
| v. | |
| Flagstar Bancorp, | **ORAL ARGUMENT REQUESTED** |
| Defendant. | **NOTE ON MOTION CALENDAR: MAY 8, 2009** |

# TABLE OF CONTENTS

**Page**

BACKGROUND ..............................................................................................................................1

    Eon-Net's Complaint and Immediate Settlement Offer..........................................................1

    Flagstar Requests that Eon-Net Withdraw Its Baseless Complaint ......................................2

    Flagstar's Motions for Summary Judgment and Rule 11 Sanctions.....................................2

    The Federal Circuit Opinion ..................................................................................................3

    Eon-Net Amends Its Complaint To Assert Infringement of Two Additional Patents..........................................................................................................................3

    Flagstar Discovers that Eon-Net Purposefully Destroyed Relevant Evidence ....................4

    This Court Rules that the Patents at Issue Relate to Hard Copy Documents ......................5

    Eon-Net's Litigation Scheme..................................................................................................5

ARGUMENT ....................................................................................................................................6

I.     FLAGSTAR SHOULD BE AWARDED ATTORNEYS' FEES PURSUANT TO SECTION 285...................................................................................................................6

    A.     This Case Should Be Declared Exceptional. ............................................................6

        1.     Eon-Net's Lawsuit Was Frivolous and Unjustified....................................7

        2.     Eon-Net Filed This Lawsuit for the Sole Purpose of Collecting a Nuisance Settlement..................................................................................9

        3.     Eon-Net Destroyed Evidence..................................................................10

        4.     Eon-Net Engaged in Other "Offensive Litigation Tactics."......................11

    B.     Flagstar Should Be Awarded Its Attorneys' Fees and Costs. ................................12

II.     RULE 11 SANCTIONS SHOULD BE IMPOSED............................................................12

CONCLUSION...............................................................................................................................13

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Am. Standard, Inc. v. York Int'l Corp.*,
    244 F. Supp. 2d 990 (W.D. Wis. 2002) ..................................................................................10

*Aptix Corp. v. Quickturn Design Sys., Inc.*,
    269 F.3d 1369 (Fed. Cir. 2001) ..............................................................................................11

*Boyd's Bit Serv., Inc. v. Specialty Rental Tools & Supply, Inc.*,
    332 F. Supp. 2d 938 (W.D. La. 2004) ..............................................................................11, 12

*Eltech Sys. Corp. v. PPG Indus., Inc.*,
    903 F.2d 805 (Fed. Cir. 1990) ............................................................................................7, 9

*Hughes v. Nov Am., Inc.*,
    724 F.2d 122 (Fed. Cir. 1984) ..................................................................................................9

*Int'l Indus. & Devs. v. Farbach Chem. Co.*,
    145 F. Supp. 34 (S.D. Ohio 1956) ..........................................................................................10

*Kaehni v. Diffraction Co.*,
    342 F. Supp. 523 (D. Md. 1972) ..................................................................................9, 10, 12

*Kahn v. Dynamics Corp.*,
    508 F.2d 939 (2d Cir. 1974) ...............................................................................................9, 10

*L.E.A. Dynatech, Inc. v. Allina*,
    49 F.3d 1527 (Fed. Cir. 1995) ................................................................................................10

*Mathis v. Spears*,
    857 F.2d 749 (Fed. Cir. 1988) ..................................................................................................6

*Multi-Tech, Inc. v. Components, Inc.*,
    708 F. Supp. 615 (D. Del. 1989) .....................................................................................6, 7, 9

*Realtek Semiconductor Corp. v. Marvell Semiconductor, Inc.*,
    No. C-04-4265, 2005 WL 3634617 (N.D. Cal. Nov. 21, 2005) ...................................6, 11, 12

*Synthon IP, Inc. v. Pfizer Inc.*,
    484 F. Supp. 2d 437 (E.D. Va. 2007) ...................................................................................6, 7

*Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*,
    549 F.3d 1381 (Fed. Cir. 2008) ............................................................................................6, 7

*Telectron, Inc. v. Overhead Door Corp.*,
    116 F.R.D. 107 (S.D. Fla. 1987) ............................................................................................11

*Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc.*,
    231 F.3d 1339 (Fed. Cir. 2000) ................................................................................................7

**Statutes**

35 U.S.C. § 285 .................................................................................................................6

Fed. R. Civ. P. 54(d)(2)(C) ...............................................................................................12

**Other Authorities**

7 Chisum on Patents § 20.3[4][b] (2007) ...........................................................................1

Pursuant to Federal Rule of Civil Procedure 54(d)(2) and 35 U.S.C. § 285, Defendant Flagstar Bank moves for recovery of its attorneys' fees and costs on the basis that this case is "exceptional."  In addition, pursuant to Federal Rule of Civil Procedure 11, Flagstar moves for sanctions to be imposed on Plaintiff Eon-Net, L.P.'s counsel on the grounds that this lawsuit was frivolous, baseless, and brought for an improper purpose.[1]

## **BACKGROUND**

Eon-Net's Complaint and Immediate Settlement Offer

On February 4, 2005, Eon-Net filed a complaint against Flagstar alleging willful[2] infringement of U.S. Patent No. 6,683,697.[3]  (Docket Number ("DN") 24, Part 4, ¶ 13.) Although the '697 Patent "is directed to a system for efficiently processing information originating from hard copy documents" (Baily Decl. ¶ 2, Exh. A, at 1:15-17), Eon-Net alleged that Flagstar was infringing the '697 Patent by "collecting information over the Internet" (DN 24, Part 4, ¶ 10).

Less than a month after filing the complaint, Eon-Net "offer[ed] Flagstar the opportunity to avoid the expense of litigation and quickly settle this matter."  (Baily Decl. ¶ 3, Exh. B.)  Eon-Net presented Flagstar with a choice—(1) pay a nuisance settlement between $25,000 and $75,000 within 30 days or (2) pay many times that amount to defend a protracted lawsuit.  (*Id.*)

At the time Eon-Net filed suit against Flagstar, Eon-Net had filed at least eight other substantially identical complaints alleging willful infringement of the '697 Patent by "collecting information over the Internet."  (*Id.* ¶ 4.)  Eon-Net appears to have offered the same nuisance settlement to each of the eight defendants.  (*E.g.*, *id.* ¶ 5, Exh. C.)  It also appears that each defendant decided to pay the settlement rather than expend resources investigating or litigating

---

[1] Pursuant to Federal Rule of Appellate Procedure 4(a)(4)(B)(i), Eon-Net's Notice of Appeal (DN 168) will become effective after an order resolving this Motion is entered.

[2] "Willfulness" requires a showing that an accused infringer had actual knowledge of plaintiff's patent rights and failed to exercise due care to avoid infringement.  7 Chisum on Patents § 20.3[4][b] (2007).  A finding of willful infringement supports treble damages.  *Id.*

[3] The '697 Patent is the fifth patent claiming priority to application number 07/672,865, filed on March 20, 1991.  (Baily Decl. ¶ 2, Exh. A.)

the merits of Eon-Net's claim.  (*Id.* ¶¶ 4, 6, Exh. D.)

<u>Flagstar Requests that Eon-Net Withdraw Its Baseless Complaint</u>

Rather than pay a nuisance settlement, Flagstar investigated Eon-Net's claim of infringement and found that it used software from Kofax Image Products, Inc. in connection with its website.  (Baily Decl. ¶ 7, Exh. E.)  Flagstar also discovered that its use of that software was already licensed under the '697 Patent.  (*Id.* ¶¶ 7, 8, 10, Exh. G.)

In light of this information, Kofax and Flagstar requested that Eon-Net withdraw its complaint.  (*Id.* ¶¶ 13, 14, Exhs. J, K.)  Flagstar notified Eon-Net that it intended to seek Rule 11 sanctions and that it considered Eon-Net's lawsuit to be a baseless, "bad faith shakedown suit."  (*Id.* ¶¶ 14, 15, Exhs. K, L.)  Nonetheless, Eon-Net continued to prosecute its claims.  (*E.g.*, *id.* ¶ 16, Exh. M.)

By this time, Eon-Net had filed at least sixteen other substantially identical infringement actions.  (*Id.* ¶ 17, Exh. N.)  It appears that none of the sixteen defendants litigated the merits of Eon-Net's infringement claims.  (*Id.* ¶¶ 17-19, Exhs. O, P.)

<u>Flagstar's Motions for Summary Judgment and Rule 11 Sanctions</u>

On May 4, 2006, Flagstar moved for summary judgment and for Rule 11 sanctions.  (DN 39, 42.)  This Court granted Flagstar's motions (DN 73, 79, 88), ruling that Eon-Net had "asserted frivolous claims" (DN 88, at 1).

Specifically, the Court found that Eon-Net had "failed to proffer a reasonable construction for its '697 Patent."  (DN 73, at 1.)  The Court noted that "[a]ny reasonable construction must necessarily include a reference to the hard copy documents contained in every definition in the specification."  (DN 79, at 14.)  The Court found Eon-Net's contrary position that "most, if not all, HTML form usage on the internet infringes the '697 Patent" was "unrealistic" and "illogical," stating:

> "Eon-Net's claim construction position—which excludes a reference to hard copy documents—ignores the plain language of the disclosure.  Most importantly, it ignores what the inventor defined as the invention.  To the extent Eon-Net went through the motions of a claim construction exercise, it recklessly defined terms to suit its purposes in spite of the specification's language.  The specification unambiguously defines the invention of the '697 Patent as a system for extracting

information from hard copy documents.  Eon-Net's construction in spite of the evidence is an abuse of the protections afforded by the patent system and is the type of misconduct for which Rule 11 provides sanctions." (*Id.* at 2 n.2, 12, 13, 14-15.)

The Court also found that "Eon-Net asserted and maintained baseless claims of patent infringement in hopes of quick settlement." (*Id.* at 18.)  Indeed, the Court found "indicia of extortion" based on Eon-Net's practice of filing baseless lawsuits for the purpose of collecting "nuisance settlements." (*Id.* at 17.)

While Flagstar's motions were pending, Eon-Net continued filing baseless infringement complaints.  (Baily Decl. ¶ 20.)  By the time the district court issued its rulings, Eon-Net had filed at least twenty seven other substantively identical lawsuits.  (*Id.*)

The Federal Circuit Opinion

Eon-Net appealed this Court's rulings, and the Federal Circuit issued its opinion affirming in part, vacating in part, and remanding on September 27, 2007.  (DN 105.)

The Federal Circuit stated that the grounds on which summary judgment was granted "may ultimately prove an appropriate basis for granting summary judgment" and that "it may be true that ultimately Eon-Net's suit was for an improper purpose." (*Id.* 8, 13.)  The Federal Circuit found, however, that "the district court should have given Eon-Net an opportunity to fully present its arguments . . . even if the district court ultimately would have reached the same conclusion." (*Id.* 9.)  Accordingly, the Federal Circuit remanded the case so that this Court could consider in full any arguments Eon-Net might present with respect to claim construction.  (*Id.* at 16.)

While the appeal was pending, Eon-Net modified its strategy with respect to its money-making scheme.  Rather than filing baseless suits to force nuisance settlements, Eon-Net began sending form letters to various companies, asserting that each company's website "incorporate[d] the invention claimed in the Patents" and "offering a non-exclusive license to the Patents on a fully paid-up basis for a reasonable, one-time license fee." (Baily Decl. ¶ 21, Exhs. Q-S.)

Eon-Net Amends Its Complaint To Assert Infringement of Two Additional Patents

While Flagstar's motions for summary judgment and sanctions were being considered,

two additional patents claiming priority to application number 07/672,865 were issued to Eon-Net—Patent Nos. 7,075,673 and 7,184,162. (Baily Decl. ¶¶ 22, 23, Exhs. T, U.) Those patents share the same specification as the '697 Patent. (*Id.*)

On December 14, 2007, Eon-Net filed its Second Amended Complaint, which alleged that Flagstar was infringing the '673 Patent and the '162 Patent by "operating the Flagstar Website." (DN 108.) Flagstar maintained that Eon-Net's allegations were "legally and factually baseless." (Baily Decl. ¶ 24, Exh. V.)

<u>Flagstar Discovers that Eon-Net Purposefully Destroyed Relevant Evidence</u>

Prior to submitting briefs on claim construction with respect to the three patents at issue, the parties engaged in limited discovery. On June 23, 2008, Flagstar took the Rule 30(b)(6) deposition of Eon-Net's corporate designee Mitchell Medina. (Baily Decl. ¶ 25, Exh. W, at 11:5-10.) During that deposition, Dr. Medina confirmed that Eon-Net, and the related entity Millennium, existed solely for the purpose of bringing infringement lawsuits involving certain patents, including the three at issue in this case. (*Id.* at 33:3-7, 36:23-37:4, 61:10-13.)

Dr. Medina also testified that Eon-Net had instituted a "document retention policy" that explicitly provided that <u>no</u> documents would be retained for any length of time. (*Id.* at 61:10-15, 62:6-23, 63:17, 214:24-215:16.) Dr. Medina explained that the policy was specifically instituted in anticipation of Eon-Net bringing infringement suits like this one:

> "[A]s Millenium and Eon-Net have evolved into patent enforcement companies which are involved in the business of litigation, we have adopted a document retention policy which is that we don't retain any documents." (*Id.* at 61:10-15.)

In part on the basis of Dr. Medina's admissions, Flagstar brought a Motion for Sanctions Related to Eon-Net's Destruction of Documents. (DN 138.) In its briefing on that Motion, Flagstar demonstrated that, as a result of Eon-Net's so-called "document retention policy," Flagstar had been denied access to various categories of documents and things that had once existed and that would have been highly relevant to the issues of claim construction, non-infringement, invalidity, and unenforceability. (*Id.* at 3; DN 145, at 2-3.) Flagstar requested that the Court sanction Eon-Net for its willful litigation misconduct by dismissing its claims against

Flagstar.  (DN 138, at 8.)

This Court heard oral argument on Flagstar's Motion for Sanctions on October 27, 2008. The Court noted "concerns about Eon-Net's good faith" but proceeded with the *Markman* hearing and heard Eon-Net's arguments on claim construction.  (DN 149, at 5, 9.)  In its Order on Claim Construction, the Court noted that the "motion for sanctions . . . remains pending and will be addressed by the Court at a later time."  (DN 162, at 1 n.2.)

<u>This Court Rules that the Patents at Issue Relate to Hard Copy Documents</u>

This Court issued its Order on Claim Construction on March 4, 2009.  (DN 162.)  In that Order, the Court described "the crux" of the dispute on claim construction to be "whether the '697 Patent and its continuation patents are limited to a methodology for processing hard copy documents."  (*Id.* at 13.)  The Court ruled that the patents were so limited, finding "that the '697 and successive patents describe an invention for 'information processing methodology' directed to information derived from hard copy documents."  (*Id.* at 13, 16.)  The Court also noted that Eon-Net had asserted claim construction positions that would make the scope of the patents at issue "so broad as to appear limitless."  (*Id.* at 16.)

In light of the Order on Claim Construction, the parties stipulated that Flagstar did not infringe the patents in suit (DN 165), and judgment was entered for Flagstar (DN 167).

<u>Eon-Net's Litigation Scheme</u>

To date, Eon-Net has filed more than 45 lawsuits alleging infringement of the patents at issue in this case. (Baily Decl. ¶¶ 4, 17, 20, 26, Exhs. N, X.)  Eon-Net has also sent form letters—alleging infringement and requiring payment of a minimal fee to avoid a lawsuit—to an unknown number of companies.[4]  (*Id.* ¶ 27, Exh. Y.)  Countless of Eon-Net's targets chose to pay the fee to avoid the expense and distraction of defending a patent infringement lawsuit. (*E.g.*, *id.* ¶¶ 4, 6, 17, 19, 28, Exhs. D, P, Z, AA.)

Flagstar has now incurred the time (more than 4 years) and expense (hundreds of

---

[4]  The number is likely large.  Flagstar is aware of one day on which Eon-Net sent at least fourteen such letters.  (Baily Decl. ¶ 27, Exh. Y.)

thousands of dollars) to litigate the issues relating to the scope of Eon-Net's patents.  As a result, it has now become feasible for other companies faced with Eon-Net's threats of baseless but expensive litigation to defend Eon-Net's claims.  (*E.g.*, *id.* ¶ 29, Exh. BB.)

# ARGUMENT

## I. FLAGSTAR SHOULD BE AWARDED ATTORNEYS' FEES PURSUANT TO SECTION 285.

Section 285 provides that "courts in exceptional cases may award reasonable attorney fees to the prevailing party."  35 U.S.C. § 285.  "The purpose of Section 285 is to reimburse a party injured when forced to undergo an 'exceptional' case."  *Mathis v. Spears*, 857 F.2d 749, 753 (Fed. Cir. 1988).  By providing for reimbursement of attorneys' fees, Section 285 serves to "prevent[] gross injustice where a party has demonstrated bad faith and misconduct during litigation," *Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*, 549 F.3d 1381, 1388 (Fed. Cir. 2008), and to deter the "improper bringing of clearly unwarranted suits," *Mathis*, 857 F.2d at 754, 758.  *Multi-Tech, Inc. v. Components, Inc.*, 708 F. Supp. 615, 620 (D. Del. 1989).

"[D]etermining whether attorney's fees should be awarded under § 285 is a two-step process."  *E.g.*, *Synthon IP, Inc. v. Pfizer Inc.*, 484 F. Supp. 2d 437, 441 (E.D. Va. 2007).  First, "the district court must make a factual determination as to whether the prevailing party has established by clear and convincing evidence that the case is exceptional."  *Id.*  Then, "the district court must exercise its discretion in determining whether an award of attorney's fees is appropriate in the circumstances."  *Id.*  As described below, Eon-Net's frivolous lawsuit against Flagstar is clearly "exceptional" and Flagstar's request for attorneys' fees should be granted.

### A. This Case Should Be Declared Exceptional.

"A case may be deemed exceptional when there has been some material inappropriate conduct related to the matter in litigation."  *Realtek Semiconductor Corp. v. Marvell Semiconductor, Inc.*, No. C-04-4265, 2005 WL 3634617, *3 (N.D. Cal. Nov. 21, 2005); *Synthon*, 484 F. Supp. 2d at 441.  The Federal Circuit has recognized "many varieties" of such inappropriate conduct, including vexatious or unjustified litigation, misconduct during litigation,

conduct that violates Federal Rule of Civil Procedure 11, "offensive litigation tactics," and frivolous filings. *Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc.*, 231 F.3d 1339, 1346-47 (Fed. Cir. 2000); *Synthon*, 484 F. Supp. 2d at 441; *Takeda*, 549 F.3d at 1387; *see also Multi-Tech*, 708 F. Supp. at 620. "In assessing whether a case qualifies as exceptional, the district court must look at the totality of the circumstances." *Yamanouchi*, 231 F.3d at 1347; *Eltech Sys. Corp. v. PPG Indus., Inc.*, 903 F.2d 805, 811 (Fed. Cir. 1990).

This case should be declared exceptional on at least four independent grounds:  (1) Eon-Net's lawsuit was frivolous and unjustified, (2) Eon-Net's lawsuit was filed for an improper purpose, (3) Eon-Net purposefully destroyed relevant evidence, and (4) Eon-Net engaged in other litigation misconduct.  Taken together—and in light of Eon-Net's general contempt for the judicial system that it has repeatedly sought to exploit[5]—an exceptional case finding is clearly warranted here.

### 1. Eon-Net's Lawsuit Was Frivolous and Unjustified.

Eon-Net's claim of patent infringement in this case depended entirely on the notion that the patents in suit could be interpreted to encompass any "collection of information over the Internet" (DN 24, Part 4, ¶ 13) and any electronic commerce (Baily Decl. ¶ 25, Exh. W, at 131:24-132:5). Such a position was "manifestly unreasonable," and Eon-Net's pursuit of infringement claims based on that position makes this case exceptional. *Eltech*, 903 F.2d at 811; *Multi-Tech*, 708 F. Supp. at 620, 622, 623 (finding case exceptional where infringement claims were based on unreasonably broad view of patent scope).

Eon-Net's patents relate only to "processing information originating from hard copy documents." (Baily Decl. ¶ 2, Exh. A, at 1:15-17.)  As noted in Flagstar's briefing on claim construction, the shared specification of the patents in suit repeatedly and consistently defined

---

[5]  For example, Eon-Net viewed its deposition as "an inconvenience and a bother," testified that it was "sick of . . . haggling over stupidities and trivialities which is the name of the game in litigation," and maintained that Flagstar should not defend this lawsuit "when Flagstar is a money-losing bank that spent a multiple of our license fees on this litigation which, A, it is not going to win and, B, is quixotic at best." (Baily Decl. ¶ 25, Exh. W, at 134:20-135:6, 166:5-9, 146:11-17; *see also id.* at 11:21-22, 13:6-9, 24:23-25:28, 57:8-10.)

the purported invention to involve the processing of hard copy documents. This Court agreed that "the specification read as a whole suggests that the very character of the invention requires the limitation to hard copy documents to be a part of every embodiment." (DN 162, at 13; *see also* DN 79, at 13 ("*The invention* is repeatedly described as being 'directed to a system for efficiently processing information *originating from* hard copy documents.'").)

Despite overwhelming intrinsic evidence, however, Eon-Net took a near limitless view of the activities encompassed by its patents. Eon-Net asserted, for example, that its patents covered all "websites implementing e-commerce." (Baily Decl. ¶ 25, Exh. W, at 131:24-132:5; *see also id.* at 161:18-23 (asserting that Eon-Net's patents also apply to bar-coding); *id.* at 92:16-17 (testifying that "the entire world has exploded in implementations of the Eon-Net invention").) Such a view was objectively baseless. (*E.g.*, DN 162, at 16 (noting that "the scope for which plaintiff argues is so broad as to appear limitless" and noting previous observation that Eon-Net's interpretation of its patents would imply that it "own[s] the web"); *see also* DN 79, at 13 ("The disclosure of the '697 Patent contains nothing that supports Eon-Net's unrealistic scope for the '697 claims."); *id.* at 12 ("Eon-Net's argument that the '697 Patent covers far more than the specification's definition of 'the invention' borders on the illogical. There is no support for Eon-Net's argument.").)

Moreover, Eon-Net admitted at deposition that it simply ignored the relevant law governing claim construction in urging its position regarding the breadth of its patents. For example, to arrive at Eon-Net's construction of the claim term "file," Mitchell Medina "c[a]me up with a reasonably concise statement of what was in [his] mind when [he] wrote 'file,'" without reference to any intrinsic evidence. (Baily Decl. ¶ 25, Exh. W, at 14:3-15:8 ("I was not studying the patent when I came up with that definition."); *see also id.* at 129:4-6 (testifying that there was no support in the specification for Eon-Net's proposed construction of "file").) Of course, what was in Mitchell Medina's mind in 1999, when he wrote the claims of the '697 Patent, has <u>nothing</u> to do with the proper construction of those claims. The relevant question is only how one of ordinary skill in the art of the patents in 1991, the relevant priority date, would construe the term "file" in light of the intrinsic evidence. Eon-Net's wholesale disregard of hornbook law

regarding claim construction is clear evidence of Eon-Net's bad faith. (*See* DN 79, at 15 ("Eon-Net ignored . . . the basic canons of claim construction in evaluating the '697 Patent.").)

Eon-Net's pursuit of this case despite all of the intrinsic evidence, which "indicates unequivocally" that the patents at issue are limited to methods of processing hard copy documents, "is evidence that the plaintiff's actions were taken at the very least with gross negligence." *Multi-Tech*, 708 F. Supp. at 622 ("We find that continuing to advance this case in light of the well-documented prosecution history, which indicates unequivocally that thermoplastic materials were excluded from the scope of the patent, is evidence that the plaintiff's actions were taken at the very least with gross negligence. This factor makes this case exceptional."); *Eltech*, 903 F.2d at 811 ("Where, as here, the patentee is manifestly unreasonable in assessing infringement, while continuing to assert infringement in court, an inference is proper of bad faith, whether grounded in or denominated wrongful intent, recklessness, or gross negligence."). Eon-Net's allegation of infringement, predicated on its unreasonable interpretation of its patents, was frivolous, was asserted without sufficient justification, and was prosecuted in bad faith. On this basis alone, this case should be declared exceptional. *Multi-Tech*, 708 F. Supp. at 622; *Eltech*, 903 F.2d at 811; *see also Kaehni v. Diffraction Co.*, 342 F. Supp. 523, 533, 537 (D. Md. 1972) (finding case exceptional where "plaintiffs' allegations are completely groundless" in light of the "narrowness of the claims granted"); *Kahn v. Dynamics Corp.*, 508 F.2d 939, 944 (2d Cir. 1974) (affirming finding that case was exceptional where plaintiff "failed to use reasonable and responsible care in assessing his claims prior to and during suit and that suit was commenced and prosecuted in bad faith on the part of plaintiff"); *Hughes v. Nov Am., Inc.*, 724 F.2d 122, 125 (Fed. Cir. 1984) (affirming finding that case was exceptional where "even a cursory reading of the [patent] claim makes obvious the fact of noninfringement").

### 2. Eon-Net Filed This Lawsuit for the Sole Purpose of Collecting a Nuisance Settlement.

Immediately after it filed the complaint in this case, Eon-Net offered to settle its claims for between $25,000 and $75,000. (Baily Decl. ¶ 3, Exh. B.) As this Court noted previously,

"given the extraordinary cost of patent litigation, even the finest patent attorney would need to think carefully before advising a client to spend hundreds of thousands of dollars in litigation when a $25,000, $50,000, or $75,000 settlement was on the table." (DN 79, at 17.) Indeed, Flagstar immediately understood the action to be a "bad-faith shakedown" and conveyed as much to Eon-Net. (Baily Decl. ¶ 15, Exh. L.)

What is more, Eon-Net has extracted nuisance settlements and minimal "license fees" from countless companies by threatening protracted and expensive litigation. (*Id.* ¶¶ 4-6, 17-21, 27, 28, Exhs. C, D, O, P, Y-AA.) Especially in light of Eon-Net's objectively unreasonable position with respect to the scope of its patents, it is clear that the true purpose of Eon-Net's litigation scheme was to profit from asserting—or threatening to assert—baseless claims of infringement. Such conduct makes this case exceptional. *Kaehni*, 342 F. Supp. at 537 (declaring case exceptional where, in light of "the narrowness of the [patent] claims granted," it was clear that the "true purpose" of the lawsuit was "harassment"); *Kahn*, 508 F.2d at 944 (affirming declaration of exceptional case where "the trial court inferred that Kahn's purpose in commencing this litigation was to force [defendant] to obtain a non-exclusive license under the '503 patent by threatening [defendant] with a suit, the defense of which would entail considerable expenses"); *Am. Standard, Inc. v. York Int'l Corp.*, 244 F. Supp. 2d 990, 997 (W.D. Wis. 2002) (finding "plaintiffs' litigation tactics were in bad faith to force defendants into settlement and away from their legitimate defenses" and declaring case exceptional); *see also L.E.A. Dynatech, Inc. v. Allina*, 49 F.3d 1527 (Fed. Cir. 1995) (affirming finding of exceptional case where plaintiff "used litigation to impose expenses on a competitor"); *Int'l Indus. & Devs. v. Farbach Chem. Co.*, 145 F. Supp. 34, 35-37 (S.D. Ohio 1956) (finding case exceptional where plaintiff mailed 8,000 letters containing baseless infringement allegations).

### 3. Eon-Net Destroyed Evidence

As detailed above and in Flagstar's Motion for Sanctions (DN 138), Eon-Net deliberately destroyed all evidence regarding the patents in suit when it decided to embark on its litigation plan. By discarding documents for the explicit purpose of making them unavailable for

discovery in suits like this one, Eon-Net "consciously [sought] to undermine the very foundations of [the] discovery process." *Telectron, Inc. v. Overhead Door Corp.*, 116 F.R.D. 107, 128 (S.D. Fla. 1987).  Eon-Net's bad faith in this regard supports a finding that this case is exceptional.  *Aptix Corp. v. Quickturn Design Sys., Inc.*, 269 F.3d 1369, 1375 (Fed. Cir. 2001) (affirming finding that case was exceptional because of discovery misconduct); *Realtek*, 2005 WL 3634617, at *6-*7 (finding case exceptional where plaintiff failed to comply with discovery obligations in connection with interrogatory responses and deposition scheduling); *Boyd's Bit Serv., Inc. v. Specialty Rental Tools & Supply, Inc.*, 332 F. Supp. 2d 938 (W.D. La. 2004) (finding case exceptional in part because plaintiff "failed to adhere to discovery deadlines").

### 4.  Eon-Net Engaged in Other "Offensive Litigation Tactics."

Beyond destroying evidence, Eon-Net engaged in other litigation misconduct.  For example, Eon-Net attempted to prevent Flagstar from obtaining the license agreement that covered Flagstar's use of Kofax software, the only activity that could conceivably be related to the subject matter of the patents in dispute.  (Baily Decl. ¶¶ 9, 11, 12, Exhs. F, H, I; *see* DN 79, at 4-5 (noting that "Eon-Net instructed Kofax not to comply with the subpoena" seeking the license agreement and "later threatened Kofax with a lawsuit for complying with the subpoena").)

As another example, Eon-Net refused to comply with this Court's claim construction procedures.  On the date on which the parties had agreed to identify claim terms to be construed, Eon-Net asserted that no terms needed construction "since the claim terms have their ordinary and customary meaning that the terms would have to a person of ordinary skill in the art in question at the time of the invention."  (Baily Decl. ¶ 30, Exh. CC.)  When requested to "describe the level of ordinary skill in the art that Eon-Net contends is applicable for purposes of claim construction," however, Eon-Net responded:

> "Eon-Net answers that the skill in the art required is that sufficient to converse meaningfully with Mitchell Medina."  (*Id.* ¶ 31, Exh. DD.)

Such a response is, of course, meaningless and improper.  Even on the date that the parties had agreed to exchange proposed claim constructions, Eon-Net refused "to send over" any proposed

1   constructions.  (*Id.* ¶¶ 32, 33, Exhs. EE, FF.)

2   Such delay tactics and gamesmanship support a finding that this is an exceptional case.
*Boyd's*, 332 F. Supp. 2d at 943 (considering the "conduct of counsel" and "tactics of the parties" "relevant in the determination of whether exceptional circumstances are present"); *Realtek*, 2005 WL 3634617, at *7 (same).

### B. Flagstar Should Be Awarded Its Attorneys' Fees and Costs.

If a court deems a case exceptional, it may exercise its discretion to award attorneys' fees and costs.  *E.g.*, *Kaehni*, 342 F. Supp. at 536.  This Court should exercise its discretion to award Flagstar its attorneys' fees and costs in this case.[6]  Flagstar did "everything in its power to end the litigation and avoid its enormous cost, and, in light of plaintiff's wholly unjustified conduct, it would be unconscionable and grossly unjust to now require [Flagstar] to bear the burden of that cost." *Id.*

## II. RULE 11 SANCTIONS SHOULD BE IMPOSED.

Attached as Exhibit 1 hereto is Flagstar's Motion for Sanctions, which was initially filed on May 4, 2006.  (DN 42.)  Flagstar requests that its Motion for Sanctions be reconsidered and granted on the bases described in this Court's October 4, 2006 Order on Sanctions and December 19, 2006 Order Setting Sanctions—namely, that Eon-Net's counsel failed to objectively evaluate the scope of the '697 Patent and that the complaint was filed "to extort quick settlement" rather than for any proper purpose.  (DN 79, at 11-15, 16-17; DN 88, at 2.)  Eon-Net has now had "an opportunity to fully present its arguments" (DN 105, at 9); Eon-Net has offered nothing but confirmation that sanctions are appropriate in this case.[7]

---

[6] Should this Court grant this Motion, Flagstar requests leave to submit briefing regarding the amount of attorneys' fees and costs to be reimbursed.  *See* Fed. R. Civ. P. 54(d)(2)(C) ("The court may decide issues of liability for fees before receiving submissions on the value of services.").

[7] If this Court finds both (1) that Eon-Net should be required to reimburse Flagstar for its attorneys' fees and costs pursuant to 35 U.S.C. § 285 and (2) that Eon-Net's counsel should be sanctioned pursuant to Federal Rule of Civil Procedure 11, Flagstar requests that Eon-Net and Eon-Net's counsel be held jointly and severally liable for payment of any fees and costs awarded.

## **CONCLUSION**

For the foregoing reasons, Flagstar respectfully requests that the Court grant its Motion for Attorneys' Fees and Costs.

DATED: April 22, 2009

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By: /s/Melissa J. Baily
    Melissa J. Baily

Charles K. Verhoeven
50 California Street, 22nd Floor
San Francisco, California 94111
(415) 875-6600

Jon Steiger
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
(213) 443-3000

Bradley S. Keller
Jofrey M. McWilliam
Byrnes & Keller LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
(206) 622-2000

*Attorneys for Defendant Flagstar Bancorp*