UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

EON-NET, L.P.,

                Plaintiff,

        v.

FLAGSTAR BANCORP, INC.,

              Defendant.

CASE NO. C05-2129RSM

ORDER ON MOTION FOR FEES AND
COSTS

      This matter is before the Court for consideration of defendant Flagstar Bancorp, Inc.'s ("Flagstar") motion for attorney's fees, filed pursuant to 35 U.S.C. § 285. Dkt. # 172. This statute provides for an award of attorney fees to the prevailing party in a patent case in "exceptional circumstances." Plaintiff has opposed the motion. The Court deems oral argument unnecessary and, for the reasons set forth below, shall grant the motion.

BACKGROUND

      The facts of this matter are well-known to the parties and will be recited only as necessary to the resolution of the present motion. Plaintiff Eon-Net, L.P., ("Eon-Net") is one of three patent-holding companies formed to enforce various continuation or divisional patents arising from an original filing in 1991 by inventors Mitchell Medina, Robert Lech, and Catherine Elias. The patents are all titled "Information Processing Methodology" and all share the same specification. The first patent, Patent No.

ORDER - 1

5,258,855 (" '855 patent") and four subsequent patents were assigned to Millennium L.P. ("Millennium"), a limited partnership organized under the laws of the Cayman Islands. Three subsequent continuation patents, the three at issue in this action, were assigned to another Cayman Island limited partnership, Eon-Net.[1] It appears that a third company, Glory Licensing LLC, a limited liability company formed under the laws of the Island of Nevis, has been formed to enforce two recently-issued continuation or divisional patents, Patent No. 7,570,383, issued August 4, 2009, and Patent No. 7,619,768, issued November 17, 2009. *See, e.g., Glory Licensing LLC v. Toys "R" Us, Inc.*, Cause No. 2:09-CV-4252 (S.D.N.Y.)[2]

According to the electronic dockets of the United States District Courts for the Southern District of New York and the District of New Jersey, Millennium has filed at least forty-one cases in New York against various companies, alleging infringement of one or more of the patents assigned to it.[3] Another

---

[1] More recently-filed documents describe Eon-Net as organized under the laws of the British Virgin Islands, with its principal place of business at Tortola, British Virgin islands. Dkt. # 108.

[2] Electronic dockets of cases filed in district courts around the United States are available to this Court, as well as to the public, through PACER (Public Access to Court Electronic Records).

[3] 1:96-cv-08251-MBM *Millennium, L.P. v. Compaq Computer Corp.*; 1:99-cv-01577-JSM *Millennium, L.P. v. Cardiff Software*; 1:00-cv-5908-RCC *Millennium, L.P. v. Captive Software*; 1:01-cv-03734-JGK *Millennium, L.P. v. Readsoft AB, et al.*; 1:02-cv-10102-LTS-AJP *Millennium, L.P. v. Top Image Systems, et al;* 1:03-cv-01838-RWS *Millennium, L.P. v. Dakota Imaging, Inc.*; 1:03-cv-01839-SHS *Millennium, L.P. v. Recognition Research*; 1:03-cv-01840-JES *Millennium, L.P. v. Datacap Inc.*; 1:03-cv-03899-GBD *Millennium, L.P. v. Anydoc Software*; 1:03-cv-03900-DC *Millennium, L.P. v. Hyland Software*; 1:03-cv-07311-NRB *Millennium, L.P. v. Filenet Corporation;* 1:03-cv-08563-HB *Millennium, L.P. v. Ceresoft, Inc.*; 1:03-cv-08564-DAB *Millennium, L.P. v. Laserfiche Document;* 1:03-cv-08565-RMB *Millennium, L.P. v. Optika Inc.*; 1:04-cv-02860-HB *Millennium, L.P. v. Impression Technology, Inc.*; 1:04-cv-02861-WHP *Millennium, L.P. v. SER Solutions, Inc.*; 1:04-cv-03116-RJH *Millennium, L.P. v. Scansoft, Inc.*; 1:04-cv-03117-RJH *Millennium, L.P. v. Docubase Systems;* 1:04-cv-03142-DAB *Millennium, L.P. v. ISYS Papyrus America, Inc.*; 1:04-cv-06062-GEL *Millennium, L.P. v. Newgen Software Inc.*; 1:04-cv-06104-DC *Millennium, L.P. v. Scan-Optics, Inc.*; 1:05-cv-02282-JGK *Millennium, L.P. v. R2K, Inc.*; 1:05-cv-03094-HB *Millennium, L.P. v. I.R.I.S., Inc.*; 1:05-cv-03330-SAS *Millennium L.P. v. Oyster Software, Inc.*; 1:05-cv-04891-KMW *Millennium, L.P. v. Verity, Inc.*; 1:05-cv-05040-DC *Millennium, L.P. v. Optical Image Technology, Inc.*; 1:05-cv-05436-GEL *Millennium, L.P. v. Comcom Systems, Inc.*; 1:05-cv-05881-RPP *Millennium, L.P. v. Cedartech, Inc.*; 1:05-cv-08339-NRB *Millennium L.P. v. Mindwrap, Inc.*; 1:05-cv-09942-GBD *Millennium, L.P. v. Documentum, Inc.*; 1:06-cv-00522-GEL *Millennium, L.P. v. Hewlett-Packard Company;* 1:06-cv-00964-LMM *Millennium, L.P. v. Captaris, Inc.*; 1:07-cv-04061-RWS *Millennium, L.P. v. Columbiasoft Corporation;* 1:07-cv-04800-BSJ-FM *Millennium, L.P. v. Vignette Corporation;* 1:07-cv-08183-LTS *Millennium, L.P. v. Document Imaging Solutions, Inc.*; 1:08-cv-00384-DLC *Millennium, L.P. v. Charactell, Inc.*; 1:08-cv-02945-WHP *Millennium, L.P. et al v. Pitney Bowes Inc.*; 1:08-cv-10691-GBD *Millennium, L.P. v. Marex Group, Inc;* 1:09-cv-06104-MGC *Millennium, L.P. v. SpringCm;* 1:09-cv-06857-RMB *Millennium, L.P. v. A2iA Corp.*; and 7:05-cv-08049-CM *Millennium, L.P. v. Image Access, Inc.*

thirteen were filed by Millennium in the United States District Court in New Jersey.[4]  According to the

same courts' records, Eon-Net filed twenty-two cases in each court.[5]  Eon-Net has filed four additional

cases in the Eastern District of New York, where Millennium has also filed one.[6]  All cases but the first

---

[4]2:03-cv-05141-JCL-MF *Millennium, L.P., v. Fairfax Imaging, Inc; 2:04-cv-01896-JLL-RJH Millennium, L.P., v. Science Applications International Corporation; 05-cv-01063-HAA-GDH Millennium, L.P., v. Abbyy USA; 2:05-cv-01576-WJM-RJH Millennium, L.P., v. Autodata Systems;* 2:05-cv-01706-HAA-GDH *Millennium, L.P., v. 170 Systems, Inc.;* 2:05-cv-02718-KSH-PS *Millennium, L.P., v. Optio Software, Inc.;* 2:05-cv-02926-WJM-RJH *Millennium, L.P., v. Creative ICR, Inc.;* 2:05-cv-04654-WJM-RJH *Millennium, L.P., v. SSI Group, Inc.;* 2:05-cv-05574-WHW-SDW *Millennium, L.P., v. Eastman Kodak Company;* 2:06-cv-00322-JLL-CCC *Millennium, L.P., v. Doculex, Inc.;* 2:09-cv-03159-FSH-PS *Millennium, L.P., v. eCopy, Inc.;* 3:07-cv-04424-JAP-JJH *Millennium, L.P., v. Imaging Business Machines, LLC;* 3:08-cv-06079-FLW-LHG *Millennium, L.P., v. Pegasus Imaging Corporation.*

[5]In the Southern District of New York:  1:04-cv-03665-RWS *Eon-Net, L.P. v. Homecenter.com*; 1:04-cv-03667-TPG *Eon-Net, L.P. v. Black Hound New York;* 1:05-cv-01954-LMM *Eon-Net, L.P. v. Redenvelope, Inc.;* 1:05-cv-02049-LAK *Eon-Net, L.P. v. Ing Bank;* 1:05-cv-08340-JGK *Eon-Net, L.P. v. Sawhorse Enterprises, Inc.;* 1:05-cv-08471-JGK *Eon-Net, L.P. v. Somethingsexyplant.com;* 1:06-cv-00536-TPG *Eon-Net, L.P. v. A18 Corporation*; 1:06-cv-00621-LAK *Eon-Net, L.P. v. Gristedes Foods, Inc.;* 1:06-cv-00929-RMB *Eon-Net, L.P. v. J& R Electronics Inc.;* 1:06-cv-01483-DLC *Eon-Net. L.P. v. The Wine Messenger LLC;* 1:06-cv-05891-SHS *Eon-Net, L.P. v. Sony Corporation of America;* 1:06-cv-05975-LBS *Eon-Net, L.P. v. Foot Locker, Inc.;* 1:06-cv-06045-RCC *Eon-Net, L.P. v. D'Agostino Supermarkets, Inc.;* 1:06-cv-06133-KMK *Eon-Net, L.P. v. Hammacher Schlemmer & Company, Inc.;* 1:06-cv-06271-SHS *Eon-Net, L.P. v. Barnes & Noble, Inc.;* 1:07-cv-02822-NRB *Eon-Net, L.P. v. Walgreen Company;* 1:07-cv-10488-PKC *Eon Net, L.P. v. J.Crew Inc.;* 1:08-cv-03581-RJS *Eon-Net, L.P. v. Diascience Corp.;* 1:08-cv-06954-JGK *Eon-Net, L.P. v. Abazias, Inc.;* 1:09-cv-00043-NRB *Eon-Net, L.P. v. Walgreen Company;* 1:09-cv-00150-TPG *Eon-Net, L.P. v. B&H Foto & Electronics Corp.*; and 7:05-cv-01977-WCC *Eon-Net, L.P. v. Random House, Inc.*

In the District of New Jersey: 1:06-cv-00584-FLW-AMD *Eon-Net, L.P. v. Edmund Optics, Inc.;* 1:07-cv-05578-NLH-AMD *Eon-Net, L.P. v. Burlington Coat Factory Warehouse Corporation;* 2:05-cv-00791-DMC-MF *Eon-Net, L.P. v. Flagstar Bancorp;* 2:05-cv-00845-JCL-MF *Eon-Net, L.P. v. Drugstore.Com, Inc.;* 2:05-cv-00936-DMC-MF *Eon-Net, L.P. v. CoolAnimalStuff;* 2:06-cv-00315-FSH-PS *Eon-Net, L.P. v. Linen 'n Things, Inc.;* 2:06-cv-00826-JAG-MCA *Eon-Net, L.P. v. Sommers Plastic Products Co., Inc.;* 2:06-cv-03670-PGS-RJH *Eon-Net, L.P. v. Liz Claiborne, Inc.;* 2:06-cv-03709-KSH-PS *Eon-Net, L.P. v. Sys-Con Media;* 2:06-cv-03785-FSH-PS *Eon-Net, L.P. v. John Wiley & Sons, Inc.;* 2:06-cv-03899-JAG-MCA *Eon-Net, L.P. v. Staples, Inc.;* 2:07-cv-01633-SDW-MCA *Eon-Net, L.P. v. Jos. A. Bank Clothiers;* 2:08-cv-1427-PGS-ES *Millennium, L.P. and Eon-Net, L.P., v. EMC Corporation;* 2:08-cv-01797-JLL-CCC *Eon-Net, L.P. v. American Airlines, Inc.;* 2:08-cv-03896-WJM-MF *Eon-Net, L.P. v. US Airways, Inc.;* 2:09-cv-00016-WJM-MF *Eon-Net, L.P. v. Sony Corporation of America;* 2:09-cv-00063-JLL-CCC *Eon-Net, L.P. v. Barnes & Noble, Inc.;* 2:09-cv-00843-DMC-MF *Eon-Net, L.P. v. Avis Budget Group, Inc.;* 3:04-cv-03738-MLC-JJH *Eon-Net, L.P. v. BabyAge, Inc.;* 3:04-cv-03778-MLC-JJH *Eon-Net, L.P. v. Beach Camera, Inc.;* 3:06-cv-00376-JAP-JJH *Eon-Net, L.P. v. Brother International Corporation (U.S.A.);* and 3:06-cv-03655-FLW-TJB *Eon-Net, L.P. v. Anadigics, Inc.*

[6]1:06-cv-02463-CPS-SMG *Eon-Net, L.P. v. Jetblue Airways Corporation;* 1:07-cv-01474-ENV-MDG *Eon-Net, L.P. v. Delta Air Lines, Inc.;* 1:08-cv-01555-FB-RLM *Eon-Net, L.P. v. Northwest Airlines, Inc.;* 1:09-cv-00871-ENV-VVP *Eon-Net, L.P. v. United Airlines, Inc.;* 2:02-cv-03049-JS *Millennium, L.P. et al v. Kofax Image Products.*

ORDER - 3

four, filed from 1996 to 2001, appear to have been filed by plaintiff's present counsel, Jean-Marc Zimmerman. All these cases—apart from six cases recently filed by Glory Licensing LLC in the three district courts---are now closed. It appears that to this point, this case is the only one that has been litigated as far as a "*Markman*"[7] hearing; all others settled or were dismissed prior to that stage of the proceedings. In none of the cases has the validity of the patents been tested.

Plaintiff originally filed this action in the United States District Court for the District of New Jersey, alleging infringement of Patent No. 6,683,697 (" '697 patent"). The case was transferred to this district upon the motion of defendant Flagstar. Dkt. # 1. Subsequent events are summarized by the Federal Circuit Court of Appeals in its Order remanding the matter to this Court:

> After the case was transferred, Flagstar filed a motion for summary judgment contending that it was not liable for infringing the '697 patent because it used technology from Kofax Image Products, Inc. ("Kofax") to collect, manage, and process all electronic and hard-copy documents collected through its website, and because its use of Kofax technology was covered by a licensing agreement between Kofax and the entity that subsequently assigned the '697 patent to Eon-Net. Flagstar's motion for summary judgment explicitly assumed, for purposes of the motion, that the '697 patent as corrected is valid, the "unidentified" accused device "includes any products or technologies used by Flagstar to manage and process documents received through its website," and that those products or technologies are "within the scope of the claims of the '697 patent." In its memorandum opposing Flagstar's motion, Eon-Net contended that Flagstar did not use Kofax technology to perform online banking services on its website, but instead used technology from Digital Insight Corporation ("Digital Insight"), so that the "accused online banking services" Flagstar offered on its website were not covered by the Kofax license and could not be covered by Flagstar's license defense.

> The district court granted summary judgment of noninfringement in favor of Flagstar, finding that Eon-Net failed to present facts demonstrating infringement, identify products that might infringe the '697 patent, "proffer a reasonable construction" for the '697 patent, or apply its construction to the allegedly infringing products. Order Granting Summary Judgment, slip op. at 1-2. In its order, the district court defined the ' 697 patent as describing and claiming "an interface between 'hard copy' documents and computer applications." *Id*. at 2. The district court noted that the '697 patent specification "describes the extraction of information from hard copy documents by scanning the documents, parsing the extracted information, and formatting the information for use." *Id*. The district court also noted that Eon-Net's complaint is "virtually identical" to thirteen other complaints "filed against parties with greatly disparate business operations." Id. at 3. The district court concluded that the parties agreed that Kofax software is covered by the license agreement between Kofax and Flagstar, and that although Eon-Net had alleged in a conclusory fashion that Flagstar's use of Digital Insight software on its online banking web pages infringed the '697 patent, there was no evidence that the '697 patent covered online banking services. *Id*. at 6-7.

---

[7] *Markman v. Westview Instruments*, 517 U.S. 370 (1996)

ORDER - 4

Eon-Net filed a motion to reconsider raising the same arguments it has raised in the present appeal, that summary judgment was inappropriate because the district court improperly ignored Flagstar's stipulation that the accused products or technologies fell within the scope of the claims of the '697 patent, and improperly limited the claims of the '697 patent to an interface between hard copy documents and computer applications. The district court denied this motion. *Eon-Net, LP v. Flagstar Bancorp*, No. C 05-2129, 2006 WL 2794307, slip op. at 4 (W.D.Wash. Sept. 27, 2006). It rejected Eon-Net's interpretation of Flagstar's motion for summary judgment as seeking summary judgment only on the affirmative license defense, finding instead that Flagstar had sought summary judgment "because the undisputed material facts preclude finding Flagstar liable for patent infringement." *Id*. at 1. The district court explained that because Flagstar met its initial burden to show there was no evidence of infringement, Eon-Net had to demonstrate that there was evidence of infringement, but its identification of "online banking services" and "Digital Insight" software as infringing products was not supported by facts. *Id*. The ruling on the motion to reconsider did not reference Eon-Net's arguments about Flagstar's stipulation or the district court's purported sua sponte limitation of the '697 patent.

At the same time that it filed its motion for summary judgment, Flagstar filed a motion for sanctions pursuant to Federal Rule of Civil Procedure 11 on the basis that Eon-Net had failed to investigate or identify allegedly infringing products prior to filing suit and had asserted baseless infringement claims. The district court granted Flagstar's motion, finding that it "must conclude" that Eon-Net's claims were baseless because Eon-Net had not performed a reasonable pre-filing inquiry as required by Rule 11, identified or investigated an accused product, or reasonably evaluated the '697 patent's claims. Order on Cross-Motions for Sanctions, 239 F.R.D. at 614-19. The district court explained that it was "very concerned with Eon-Net's continuing conduct" in filing numerous identical complaints without sufficient investigation, and explicitly concluded that "indicia of extortion are present in this case." *Id*. at 619. The district court awarded Flagstar attorneys fees and costs, which the court later found to be $141,984.70. Order Setting Sanctions, slip op. at 1.

*Eon-Net, L.P., v. Flagstar Bancorp*, 249 Fed.Appx 189, 191-194, 2007 WL 2818634 (C.A.Fed), found at Dkt. # 105.

At oral argument on the motion for sanctions, the Court tried to determine how Eon-Net analyzed the accused product on Flagstar's website. The following colloquy ensued:

THE COURT: What's the product that you did your analysis on?

MR. ZIMMERMAN: Your Honor, the product is as follows. The product in this case, infringing products are the web pages we identified on the Flagstar.com website that use HTML technology to extract information using content instructions and transmit that extracted information to an application program residing on the Flagstar.com server.

THE COURT: So if I go to the website—

MR. ZIMMERMAN: Yes.

THE COURT: All right? Where am I going to find the product identified?

ORDER - 5

MR. ZIMMERMAN: If you go to a web page the server—you go into your browser and you'll see a web page. If you go to view with source, the source page, you can see the actual code behind the web page. There's a one-to-one correlation between the lines of code that you see and what appears on the web page. So there are HTML document[s]., and in the HTML document there are HTML forms, you enter information, for example, your name, the account information, wire instructions, whatever the case may be.

That information is extracted according to content instruction. The content instructions identify what those particular pieces of information are, your name, account number, that type of stuff.

THE COURT: There's got to be a program that runs that process.

MR. ZIMMERMAN: Well, there's software that is used to create these pages. But all of this software, none of it is—I understand, Your Honor, you said you didn't want to address the summary judgment issue and I'm not going to, but it's important for purposes of the Rule 11 motion because the Rule 11 motion was predicated on the fact that they had a license because of the Kofax software but the Kofax software is admitted by Paul Gail, the attorney for Kofax, none of that is used in connection with the online banking services offered at the Flagstar.com website.

THE COURT: I want to know what you did besides looking at the website. What product did you identify, and did you purchase it and examine it, laying it side by side with your patent?

MR. ZIMMERMAN: You Honor, the product—there's no product per se. It's a system that has—comprised of steps. If those steps are performed, there's an infringement. It's not like there's a toaster per se or some other infringing product. It's a system method. It's a system patent. The claims are system claims comprised of steps, and if those steps are performed there's an infringement.

THE COURT: That leads me to a question of if you are correct—

MR. ZIMMERMAN: Yes.

THE COURT: —and you have patented a system—

MR. ZIMMERMAN: Yes.

THE COURT: —you own the Web.

MR. ZIMMERMAN: I can't speak to the Web as a whole, but, Your Honor, for the websites we have looked at and that we've brought suits against yes, they're infringing. I would mention the priority date of the first patent, to which this patent refers—that is 1991—predates HTML form technology, which didn't appear until later in the nineties.

Reporter's Transcript of Proceedings, September 8, 2006, Dkt. # 77, pp. 7-9.

In the Order awarding sanctions, the Court identified several bases for the sanctions. First, the Court noted that the original complaint in this action was "virtually identical" to at least thirteen other complaints filed to that date against parties engaging in greatly diverse business operations. Order on Rule 11 Sanctions, Dkt. # 79, p. 3. The bare-bones complaint in each case alleged that the defendant

ORDER - 6

infringed by

> collecting information over the Internet pursuant to a claim of the '697 patent, and deploying for Defendant's own use an application distributed over the Internet in which information is collected and extracted from a customer of Defendant and processed on Defendant's server . . .

*Id.*, p. 3.   The complaints made no mention of HTML form technology and wholly failed to provide adequate notice of the claims allegedly infringed.   In each case, Eon-Net followed service of the complaint with a quick offer of settlement on a sliding scale ranging from $25,000 to $75,000, depending on annual sales of the defendant.  *Id.*, p. 4.

In the weeks during which Flagstar's motion for sanctions was pending, Eon-Net filed eleven more lawsuits, each with a complaint accusing the defendant of infringing by

> operating a website at [web address] pursuant to a claim of the '697 patent . . . in which information entered by a customer of Defendant into an electronic form document displayed on the customer's computer is extracted and transmitted to an application program operating on Defendant's server . . .

*Id.*, p. 3.  The Court found "indicia of extortion" from the fact that "[d]ozens of parties (regardless of their actual business) have received the same complaint, claim chart, and settlement letter."  *Id.*, p. 17. The Court noted that, given the high cost of patent litigation, "even the finest patent attorney would need to think carefully before advising a client to spend hundreds of thousands of dollars in litigation when a $25,000, $50,000, or $75,000 settlement was on the table."  *Id.*

In addition to the "indicia of extortion," the Court found grounds for Rule 11 sanctions in counsel's failure to perform a reasonable pre-filing inquiry, failure to identify an accused product, and failure to reasonably evaluate the reach of the '697 patent's claims.  *Id.*, pp. 6-12.   The Court found no basis for Eon-Net's argument that the scope of the '697 patent covers far more than the invention described in the specification: an invention which "provides an integrated and comprehensive system for handling information from a hard copy document, thus permitting a paperless office."  *Id.*, p. 12.

On appeal, the Federal Circuit Court of Appeals vacated and remanded both the summary judgment ruling and the associated grant of sanctions.  The appellate court found that the district court improperly granted summary judgment *sua sponte*, "without affording Eon-Net notice and the opportunity to present argument on infringement and the appropriate construction of the '687 patent." *Eon-Net v. Flagstar Corp.* 289 Fed. Appx. at 198.   Upon remand, the district judge who originally

handled the case recused, and the case was assigned to the undersigned district judge. At a status conference held December 12, 2007, plaintiff moved for leave to file an amended complaint, and defendant did not object. The Second Amended Complaint includes claims of infringement of two continuation patents which issued during the time that this matter was pending in this Court and on appeal.[8] Second Amended Complaint, Dkt. # 108.

The Court set dates for a *Markman* hearing and associated briefing. Dkt. # 114. The Court also ruled that discovery would be limited to claim construction issues until after the *Markman* hearing. Dkt. # 124. During this pre-*Markman* discovery period, Flagstar filed a motion for sanctions, asserting that sanctions were warranted for Eon-Net's destruction of documents, as well as for Eon-Net's failure to participate in the claims construction process in good faith. Dkt. # 139. This second contention arose from counsel's written statement, on the day that the parties were to exchange proposed claim construction terms, that

> it is Eon-Net's position that there are no claim terms in the patents-in-suit that need to be construed by the Court since the claim terms have their ordinary and customary meaning that such terms would have to a person of ordinary skill in the art in question at the time of the invention.

Exhibit 4 to Motion for Sanctions, Dkt. # 139-3, p. 9. Flagstar objected to this refusal to comply with the claim construction procedure. *Id*., p. 12-13. Eon-Net then agreed to provide, within the week, Eon-Net's proposed construction of terms identified by Flagstar as requiring construction. *Id.,* p. 15.

The basis for Flagstar's contention that Eon-Net destroyed documents relevant to the litigation was the discovery, during deposition of Dr. Medina, that Eon-Net had no documents responsive to the requests for production. When asked whether he recalled searching for any of the documents called for in Flagstar's First Set of Requests for Production, Dr. Medina responded, "I don't save anything so I don't have to look." Deposition of Mitchell Medina, Dkt # 139-2, p. 215. When asked whether he had requested that anyone else search for documents, Dr. Medina answered, "There is nobody else to ask and no place else to look." *Id*.

---

[8]Patent No. 7,075,673 (" '673 patent"), a continuation of the '697 patent, issued on July 11, 2006. Patent No. 7,184,162 ("'162 patent'), a continuation of the '673 patent, issued on February 27, 2007.

Early on in the deposition, Dr. Medina stated,

> And further, to be candid, as Millennium and Eon-Net have evolved into patent enforcement companies which are involved in the business of litigation, **we have adopted a document retention policy which is that we don't retain any documents**. So the only documents that exist are in the custody of my attorney.
>
> Early on in the process, we selected some documents, put them in a couple of boxes. They were originally in the custody of the predecessor counsel to Jean-Marc Zimmerman and then were transferred to him. There may be in that box of documents a copy of the 1984 specification draft. I'm not sure. Whatever is there has been produced to you. There is no more.

*Id.*, p. 63 (emphasis added). Dr. Medina explained that during the first patent infringement suit initiated by Millennium, in 1996, the "couple of boxes" relevant to the first patent obtained by Dr. Medina and his partners, the '855 patent, together with the first continuation patent, the '508 patent[9], were turned over to Millennium's prior litigation counsel.[10] *Id.*, p. 62-63. He stated, "At the time of that litigation, the selection of documents was made. We had more records at that time, but that selection became our selection of what we thought was relevant to the document production requests that were given to us at that time, and nothing else survives." *Id.,* p. 63.

Counsel for Eon-Net, Mr. Zimmerman, and Dr. Medina then explained to Ms Baily, counsel for Flagstar, more about the fate of the documents.

> MR. ZIMMERMAN: I want to have a clarification. Jeffrey Schwab was prior litigation counsel, not prosecution counsel. Jeffrey Schwab's firm did not prosecute.
>
> THE WITNESS: That's correct.
>
> MR. ZIMMERMAN: The files, what was transferred to me were documents in connection with the litigation that I assumed and **at the end of the litigation, we discarded the documents**. The prosecution files were done by Foley & Lardner, to the best of my recollection, they have whatever prosecution files they have.
>
> THE WITNESS: I know that Foley & Lardner's document retention process, policy, once a patent issues, they discard everything except, you know, what's in the file history.

---

[9]Patent No. 5,369,508, which issued November 29, 1994.

[10] Prior counsel Jeffrey Schwab, who filed the 1996 lawsuit on behalf of Millennium (*Millennium, L.P. v. Compaq Computer Corp*, Case No. 1:96-cv-8251-MBM), and three subsequent suits, withdrew from representation after the fourth lawsuit was transferred to the Southern District of California. *See*, *Millennium, L.P. v. Readsoft AB, et al.,* Case. No. 1:01-cv-03734-JGK (S.D.N.Y.). Mr. Zimmerman appeared in the California action, and, as noted above, has represented Millennium and Eon-Net in all cases filed after 2001.

ORDER - 9

MS. BAILY: Well, since you brought it up, did you contact the Foley & Lardner law firm—

MR. ZIMMERMAN: I did. I spoke with—I did it prior. But in response to your last thing to double-check, I also spoke with Blumenthal. David Blumenthal was the original attorney prosecuting the patents, but he is retired and it has subsequently been taken over by Glen Law. Glen Law confirmed for me that there is nothing responsive in the file histories or files that have any claim construction issues.

THE WITNESS: To amplify it further, Schwab quit in the middle of the case, not a first one, but a case that was [a] pending Millennium case.

MR. ZIMMERMAN: In San Diego.

THE WITNESS: Zimmerman & Levi assumed the representation of Millennium in that case. Schwab transferred all the files he had over to Zimmerman & Levi.

MR. ZIMMERMAN: For that case.

THE WITNESS: And that was it.

*Id.*, pp. 64-65.

According to Dr. Medina's testimony, documents relevant to the first two patents, the '855 patent, and the '508 patent, were selected for retention and given to his attorney at the time, Jeffrey Schwab, in relation to the case filed in 1996. After that, Dr. Medina, acting for both Millennium L.P. and Eon-Net, discarded all documents, including all documents relating to the '697 patent at issue in this action, under the new document retention policy. Mr. Zimmerman then discarded all the documents relating to the '855 and '508 patents that he received from Mr. Schwab at the conclusion of the case in San Diego.[11] That was in 2003. *Millennium L.P. v. Readsoft AB, et al.,* Cause No. 3:02-cv-00152-K-JFS, United States District Court for the Southern District of California. According to Flagstar's first motion for sanctions, this systematic destruction of documents relevant to the stream of litigation constitutes sanctionable conduct. Motion for Sanctions, Dkt. # 139. Flagstar argued that dismissal of the complaint was an appropriate sanction, but if the Court declined to dismiss, Eon-Net should be foreclosed from offering evidence on issues related to the discarded documents, including all issues related to claim construction. *Id.*, p. 11.

---

[11]Mr. Zimmerman's admission that he discarded all documents relevant to the earlier patents—the only documents still in existence regarding the patents—at the conclusion of this one case is striking, in view of the fact that Millennium had at that time several other cases pending in the New York district court.

ORDER - 10

In responding to the motion for sanctions, Eon-Net argued that sanctions were not warranted as no documents had been destroyed in anticipation of, or during, this litigation. Mr. Zimmerman filed a declaration stating that the only documents he discarded from Millennium's and Eon-Net's files were documents that are "publicly available, obsolete or no longer of value to Eon-Net or Millennium." Declaration of Jean-Marc Zimmerman, Dkt. # 144-3. Dr. Medina filed a declaration stating that Eon-Net has no employees, office, or customers, and therefore has no interoffice memos or correspondence to produce. Declaration of Mitchell Medina, Dkt. # 144-2. Further, while documents relating to patent prosecution history were discarded by Eon-Net's agents, those documents are publically available. *Id*. He also pointed to his deposition testimony in which he explained that many of his records from prior years were lost due to his divorce or separation, and his move to Kenya in 2000, after which he was "locked out of Kenya" due to the political situation. *Id*.

The motion for sanctions was not fully briefed until days before the *Markman* hearing, which was set for October 27, 2008. The Court heard oral argument on the motion for sanctions before proceeding with the hearing, and reserved ruling on the motion. Dkt. # 146. Three days after the *Markman* hearing, on October 30, 2008, the Federal Circuit Court of Appeals issued a decision regarding "method" patents, holding invalid a patent which described a method for managing risk in commodity trading by performing a series of steps. *In re Bilski*, 545 F. 3d 943 (2008). Concerned over Mr. Zimmerman's statement in prior proceedings that "the claims are system claims comprised of steps," the Court directed the parties to present supplemental briefing on any impact the *In re Bilski* decision might have on claim construction issues.[12] Dkt. # 148.

The Court issued its ruling on claim construction on March 4, 2009. Dkt. # 162. The Court construed the terms offered by the parties for construction, and also necessarily resolved what had become the central issue of Eon-Net's infringement claims, namely whether the '697 patent and its continuation patents are limited to a methodology for processing information originating from hard-copy documents. Dkt. # 162, p. 13. Noting that "the claims cannot be of broader scope than the invention

---

[12] The validity of the '697 and continuation patents was not before the Court at the *Markman* stage. As this case settled after the Court issued its ruling on claim construction, the '697 and other patents held by Eon-Net have never been subjected to a validity challenge under *Bilski*.

that is set forth in the specification," the Court found that the "very character of the invention" requires that it be limited to hard copy documents. *Id.*, *quoting On Demand Machine v. Ingram Industries, Inc.*, 442 F. 3d 1331, 1340 (Fed.Cir. 2006) (citing *Phillips v. AWH Corp.*, 415 F. 3d 1303, 1313 (Fed.Cir. 2005)) and *Alloc, Inc., v. International Trade Commission*, 342 F. 3d 1361, 1370 (Fed. Cir. 2003). The Court did not address the document destruction issues in the claim construction Order, as the missing documents did not appear to hinder Flagstar in presenting successful arguments in the *Markman* proceedings. The motion for sanctions was left for a later date. Dkt. # 162, n. 2

Less than a month after the Court issued the Order on claim construction, the parties filed a stipulation to entry of judgment of non-infringement, together with dismissal without prejudice of Flagstar's counterclaims and defenses regarding patent invalidity. Dkt. # 165. The Court signed the stipulation on April 6, 2009, making it the Order of the Court. Dkt. # 166.

Flagstar now moves for attorney fees pursuant to 35 U.S.C. § 285, which provides in patent suits that "[t]he court in exceptional circumstances may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. Eon-Net has opposed the motion. The matter is now fully briefed and ready for consideration.

ANALYSIS AND DISCUSSION

A determination whether to award attorney fees under 35 U.S.C. § 285 involves a two-step process. First, the district court must determine whether the prevailing party has proved by clear and convincing evidence that the case is "exceptional." 35 U.S.C. § 285 (2000); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 669 (Fed. Cir.2000); *Cybor Corp. v. FAS Technologies, Inc.,* 138 F.3d 1448, 1460 (Fed. Cir.1998) (en banc). If the court finds that it is an exceptional case, it must then determine whether to award an attorney fee---a decision that lies primarily within the district court's discretion. *See Forest Labs., Inc. v. Abbott Labs.*, 339 F.3d 1324, 1329 (Fed. Cir.2003).

The Federal Circuit Court of Appeals has identified as "exceptional" those cases involving "inequitable conduct before the [Patent Office]; litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit or willful infringement." *Brasseler, U.S.A. I, L.P., v. Stryker Sales Corporation* , 267 F.3d 1370, 1380 (Fed. Cir. 2001) (citation omitted); *Hoffmann-La*

ORDER - 12

*Roche Inc. v. Invamed Inc*., 213 F.3d 1359, 1365 (Fed. Cir.2000). However, "[i]n the context of fee awards to prevailing accused infringers, . . . § 285 is limited to circumstances in which it is necessary to prevent 'a gross injustice' to the accused infringer. . . ." *Forest Labs., Inc. v. Abbott Labs*., 339 F.3d at 1329. A finding of exceptionality to prevent such injustice will be upheld "only when the patentee has procured its patent in bad faith . . . or has litigated its claim of infringement in bad faith." *Id*.

To support an award of attorneys fees for a patent holder's pursuit of a baseless claim of infringement, the accused infringers must demonstrate "both (1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless." *Brooks Furniture Mfg., Inc. v. Dutailier International*, 393 F.3d 1378, 1381 (Fed.Cir.2005). Although a lawsuit pursued in bad faith is a sufficient basis for imposing attorney fees under § 285, such bad faith requires vexatious, unjustified, or frivolous litigation. *See, e.g., Aptix Corp. v. Quickturn Design Systems, Inc.*, 269 F.3d 1369, 1375 (Fed. Cir.2001) (affirming an award of attorney fees under § 285 for the "extreme litigation misconduct" of falsifying evidence); *Eltech Systems Corp. v. PPG Industries, Inc*., 903 F.2d 805, 810-11 (Fed. Cir.1990) (affirming an award of attorney fees under § 285 for pursuing a baseless claim of infringement). "A frivolous infringement suit is one which the patentee knew or, on reasonable investigation, should have known, was baseless." *See Haynes Int'l Inc. v. Jessop Steel Co.*, 8 F.3d 1573, 1579 (Fed.Cir.1993), *rehearing granted on other grounds*, 15 F.3d 1076 (1994).

In moving for attorney fees under § 285, Flagstar asserts four bases for a finding that this case is exceptional: the lawsuit was frivolous and unjustified; it was filed for the improper purpose of inducing a nuisance settlement; Eon-Net improperly destroyed evidence; and Eon-Net engaged in offensive litigation tactics. These shall be addressed in turn.

I. <u>Pursuit of Baseless Claims of Infringement</u>

Flagstar first contends that the lawsuit was frivolous and unjustified, as the claims of infringement were based upon Eon-Net's unreasonable interpretation of the scope of the '697 patent. As set forth above, the district judge previously assigned to this case pointed out at the hearing on sanctions that if Eon-Net's position on the scope of the patent is correct, then Eon-Net "owns the Web," and can sue for infringement virtually any business engaged in internet commerce. Mr. Zimmerman, in his response to that comment (also set forth above), did not deny the possibility, but instead responded that any website

using HTML form technology automatically infringes Eon-Net's patents.

Dr. Medina also advanced this view of the scope of the patents at his deposition, as follows:

Q. Do you see in the next sentence, "we believe that the website incorporates the invention claimed in the patents."

You have to give an audible answer.

A. Yes.

Q. And do you agree with that conclusion?

A. Yes.

Q. How did you arrive at that conclusion?

A. We believe broadly that websites implementing e-commerce more than likely infringe our patents. Therefore, if Café Press is conducting electronic commerce, then they are, in all likelihood, infringers of our patents.

This is a belief that I hold. If my attorney says that we, meaning he and I, believe that the website incorporates the invention in the patents, and the website, in fact, is implementing electronic commerce of some kind, then what my attorney is stating, we believe is, in fact something that I subscribe to.

Q. So you don't have to analyze any particular website as long as you have information that the website is conducting electronic commerce in order to determine whether it infringes your patent, is that right?

A. That's 99 and 44/100's percent true. There was one instance in which we sued somebody and in the end, they represented to us that the information that was being extracted from client computers according to content instructions and being formatted into I think an e-mail format and transmitted to a server at the web—configured like that. There might be some other noninfringing kind of e-commerce that's being carried on, although perhaps less so in the light of what we call patent "8" where we are talking about enabling a transaction between a buyer and a seller.

Deposition of Mitchell Medina, Dkt. # 173, Exhibit W, p 18-19. Dr. Medina thus joined his attorney, Mr. Zimmerman, in contending that the patents owned by Eon-Net cover virtually all web-based commerce—a contention that this Court finds insupportable.

Flagstar offers further evidence of the frivolousness of this lawsuit in the *Markman* proceedings. After winning its appeal on the basis that the Court improperly granted summary judgment without affording Eon-Net notice and an opportunity to argue its position on the scope of the patent claims, Eon-Net then attempted to evade a careful analysis of the claim terms through the *Markman* process. During the claim construction proceedings, Eon-Net first asserted that there were no claim terms in the patents-

in-suit that needed to be construed, and declined to offer any proposed terms for construction. *See*, Declaration of Melissa Baily, Dkt. # 139-3, Exhibit 4. Eon-Net asserted that the claim terms "have their ordinary and customary meaning that such terms would have to a person of ordinary skill in the art in question at the time of the invention." *Id*. Flagstar objected that Eon-Net's position was untenable and not in compliance with the Court's scheduling order on pre-*Markman* procedures. *Id*., Exhibit 5. The parties then stipulated to an extension of time to file their joint claim construction chart. Dkt. ## 129, 130. The joint claim construction chart, when filed, offered the following claim terms for construction: "document or file," "document," "file," "extract," "template," "content instructions," "customizable transmission format instructions," "electronic document template," "image of the electronic document," "template document," and "electronic document template file." Dkt. # 134.

The parties' opening claim construction briefs were filed on September 23, 2008. Flagstar attached a supporting declaration with over 1700 pages of documents, including copies of the patents-in-suit and related (continuation or preceding) patents, documents from cases filed in other districts by Eon-Net or Millennium that contained evidence relevant to claim construction, documents from the prosecution histories of the '697 patent and five related patents, and excerpts from the depositions of Dr. Medina and his co-inventor, Catherine Elias. Dkt. # 137, Exhibits A through Y. Flagstar's portion of the claim construction chart cited at length to these supporting documents. Joint Claim Construction Chart, Dkt. # 134-2.

Eon-Net, in contrast, attached to its opening claim construction brief a single exhibit, comprising four pages copied from Que's Computer User Dictionary, Second Edition, to support its proposed construction of the claim terms "document" and "file." Dkt. # 136, Exhibit A. Notably, the definitions on the copied pages begin with "document comparison utility," omitting the previous page which bears the definition of "document." The copied pages extend through the definition of "file name." *Id*. Without seeing the definition of "document," the Court cannot determine whether the omission of the actual definition for "document" was simply careless or intentional, as it would find if the dictionary definition were contrary to Eon-Net's proposed construction. However, the omission appears intentional, as Eon-Net argued that the dictionary definition for "documentation" supported its construction of the claim term "document." Joint Claim Construction Chart, Dkt. # 134, p. 4. The Court rejected this

substituted definition as irrelevant. Order on Claim Construction, Dkt. # 162, p. 17. In viewing the proffered claim construction documentation now, in the context of litigation bad faith analysis, the Court finds these four pages from a dictionary, standing alone in support of the opening claim construction brief, so paltry and so irrelevant to valid argument on claim construction as to be deemed frivolous.

The only other evidence offered by Eon-Net to support its proposed construction of the claim terms was filed with the responsive brief. This evidence included Eon-Net's rebuttal expert report, together with declarations by Catherine Elias and Mitchell Medina, each essentially disclaiming their deposition excerpts which were offered by Flagstar in support of its claim construction. Dkt. # 141, Exhibits 1, 2, 3. Dr. Medina stated, "Defendant has cited to my deposition testimony 42 times in the Joint Claim Chart "in support" of their proposed claim construction, when I agree with none of them and never testified in favor of any of them." *Id*., Exhibit 2, ¶ 12. Catherine Elias stated, "I do not agree with, and never testified in favor of any of Flagstar's proposed claim constructions, and any attempt by Flagstar to argue otherwise is incorrect." *Id.* Exhibit 3*, ¶* 4. These attempts to re-characterize, deny, or comment upon their sworn deposition testimony are unavailing. The Court, in construing the claim terms as a matter of law, read for itself the sworn deposition testimony and determined what weight to give it. The overall effect of Eon-Net's sparse presentation of evidence was that there was no evidence beyond Dr. Medina's self-serving opinion, stated above, to support Eon-Net's overly broad interpretation of the claims.

II.  <u>Purpose of the Lawsuit</u>

Next, Flagstar contends that the lawsuit was filed in bad faith and for an improper purpose—one the Court earlier characterized as having indicia of extortion. As noted in the Court's earlier ruling on sanctions, Eon-Net has a history of filing nearly identical patent infringement complaints against a plethora of diverse defendants. The facts regarding this history of patent infringement actions, set forth in detail above, support Flagstar's assertion. In each case, according to Flagstar, the complaint has been followed with a demand for quick settlement at a price far lower than the cost of litigation, a demand to which most defendants apparently have agreed.

Flagstar, however, investigated the claim of infringement and determined that it used software from Kofax Image Products, Inc., in connection with its website operations, and that this software was

already licensed under the '697 patent. Flagstar therefore requested that Eon-Net withdraw the suit, and notified Eon-Net as well that it intended to seek sanctions under Rule 11 if the request was refused. Eon-Net declined to withdraw the lawsuit. Firm in the belief that Eon-Net's claim of infringement was baseless, and that the lawsuit was filed for the improper purpose of collecting a nuisance settlement, Flagstar alone chose to litigate rather than settle. In so doing, Flagstar has incurred significant expense for the four years of litigation, far beyond what it would have paid to settle. Motion for Attorney Fees, Dkt. # 172, p. 6, 9-10. Flagstar's refusal to agree to the settlement demand for what it legitimately believed was a bad faith claim of infringement further supports a finding that this case is "exceptional."

III. <u>Destruction of Evidence</u>

Flagstar also contends that Eon-Net's destruction of documents relevant to discovery indicates bad faith and renders this an exceptional case. The facts regarding this destruction of documents are set forth above, along with counsel's remarkable admission that he discarded the few documents that had been saved from the '855 and '508 patents at the conclusion of the *Readsoft AB* case in San Diego in 2003. Flagstar earlier moved for Rule 11 sanctions on the basis of this destruction of documents, but the Court did not reach the issue as the parties settled before the Court ruled on the motion. The Court now finds that it cannot hold the document destruction sanctionable conduct under Rule 11 in this case, as it occurred prior to the filing of this case, at a time when Dr. Medina and counsel were filing lawsuits under the name of Millennium, not Eon-Net. However, the Court does find, in the destruction of these documents, and in Dr. Medina's description of the Eon-Net's "document retention policy," evidence of bad faith in litigation, and a further basis for finding this an exceptional case.

This destruction of documents is particularly serious in that, according to Dr. Medina, no evidence remains to document the inventors' process in filing the continuation patents assigned to Eon-Net, the '697 and subsequent patents. Dr. Medina stated at his deposition that patents assigned to Millennium were directed to "scanned hard copy documents," while patents assigned to Eon-Net "refer to a system that extracts information from electronic files." Deposition of Mitchell Medina, Dkt. # 139, Exhibit 1, p. 25. Yet no documents remain from the inventors' records that would aid a court in distinguishing the claims in the '855 patent, and others assigned to Millennium, from the '697 patent and others assigned to Eon-Net. This distinction regarding limitation to hard copy documents was a crucial

issue in this case, and Flagstar was deprived of discovery into that process by the earlier destruction of documents. By destroying the inventors' notes and all other documents that could possibly have been found relevant to the patent claims or prosecution history, apart from what remains in the public record, Eon-Net and Mr. Zimmerman have clearly demonstrated their disinclination to participate in good faith in litigating any of the lawsuits they have filed. Viewed in the larger context of the total number of cases filed, this document destruction represents the type of discovery abuse that supports a finding that this is an exceptional case under § 285.

IV. <u>Eon-Net's Litigation Tactics</u>

Finally, Flagstar asserts that Eon-Net's offensive litigation tactics support a finding that this is an exceptional case. The destruction of evidence is one such tactic, and has been discussed above. Flagstar also points to Eon-Net's attempt, early in the litigation, to prevent Flagstar from obtaining information from Kofax regarding the license agreement between Eon-Net and Kofax, information that was essential to Flagstar's defense of non-infringement. Further, Flagstar points to Eon-Net's failure to comply with the claim construction procedure by asserting, as set forth above, that there are no claim terms in the patents-in-suit that need to be construed by the Court. Finally, Flagstar asserts that Eon-Net has displayed a "general contempt for the judicial system that it has repeatedly sought to exploit." Motion for Attorney's Fees, Dkt. # 172, p. 11. The Court agrees.

At his deposition, Dr. Medina amply demonstrated his lack of regard for the judicial system in the very litigation which he instigated. When asked what he had thought about in preparation for the deposition, he responded "How much of an inconvenience and a bother this is." Deposition of Mitchell Medina, Dkt. # 139, Exhibit 1, p. 5. He complained about the fact that Flagstar chose to litigate, stating

> I'd like to speak to someone at Flagstar. About why really are we going around the rosy with this lawsuit when Flagstar is a money-losing bank that spent a multiple of our license fees on this litigation which, A, it is not going to win and, B, is quixotic at best.

> I would dearly like to talk to a principal at Flagstar with decision-making authority, but I don't know who such a person is. Perhaps at some point, you will see fit to supply me with the name of such a person.

Deposition of Mitchell Medina, Dkt. # 173, Exhibit W, p. 22. Then, near the end of his deposition, he fumed,

> But you know, it has been a labor of love that has turned into a labor of profound indifference.

ORDER - 18

> I tell you I am so sick of this stuff by now. I am so sick of this stuff, especially this haggling over stupidities and trivialities which is the name of the game in litigation.

Deposition of Mitchell Medina, Dkt. # 139, Exhibit1, p. 34. Such "trivialities" apparently include, in Dr. Medina's view, claim construction, an essential part of the patent litigation process.

Perhaps the most egregious example of the cavalier attitude taken by Eon-Net and its principal Dr. Medina toward the patent litigation process as a whole may be found in Eon-Net's interrogatory responses in a separate lawsuit against Burlington Coat Factory Warehouse, in the District of New Jersey. *Eon-Net L.P. v. Burlington Coat Factory Warehouse Corp.*, Case No. 1:07-cv-05578-NLH-AMD. The interrogatory responses are dated June 4, 2008, shortly before the June 23, 2008 deposition of Dr. Medina in this case. Interrogatory No. 2 asked that Eon-Net

> [s]pecifically describe the level of ordinary skill in the art that Eon-Net contends is applicable for purposes of claims construction for each of the Patents-In-Suit, including an identification of all evidence that Eon-Net contends supports such level of ordinary skill in the art.

Declaration of Melissa Baily, Dkt. # 172, Exhibit DD, p. 3. Eon-Net responded that "the skill in the art required is that sufficient to converse meaningfully with Mitchell Medina." *Id.*

Interrogatory No. 3 asked that Eon-Net

> [i]dentify each witness, including expert and non-experts, upon whom Eon-Net intends to rely by submitting supporting statements or testimony in connection with each proposed claim construction or level of skill in the art, including an identification of the specific areas of anticipated statements or testimony.

*Id.* Eon-Net responded that it would rely solely upon Mitchell Medina, "who will be made available at a deposition to testify regarding claim construction and the level of skill in the art." *Id.*, p. 4. Flagstar contends that these answers were meaningless and improper, and indicative of Eon-Net's attitude toward any defendant who chose to litigate rather than quickly settle.

In opposing the motion for attorney fees, Mr. Zimmerman asserts that arguments based on the *Burlington Coat Factory* interrogatories are improper because the responses were provided in a different case, "something that it appears defendant deliberately failed to make clear in its pleading." Eon-Net's Response, Dkt. # 179, p. 13. That is not the case; counsel's declaration clearly identifies the interrogatory as coming from a case in the New Jersey District Court, and the exhibit itself is clearly

ORDER - 19

captioned as such.  Declaration of Melissa Baily, Dkt. # 173, ¶ 31; Exhibit DD, p. 1.

Mr. Zimmerman then attempts to repudiate the interrogatory responses, dismissing them as an un-edited draft that was mistakenly prepared by his legal assistant:

> The response sent to BCF was a non-final draft that included objections to BCF's interrogatories and un-edited responses received from plaintiff's principal Mr. Mitchell Medina, which draft was typed by plaintiff's counsel's assistant Naomi McElynn. Thereafter, plaintiff's counsel revised such responses, including revising Mr. Medina's responses.  On the day that the responses were sent to BCF, it appears that Ms. McElynn inadvertently prepared the non-final version with Mr. Medina's un-edited comments as the final formal version for posting to BCF which plaintiff's counsel sent out.

Eon-Net's Response, Dkt. # 179, p. 13 (internal citations to the record omitted).  Attached to this response is a declaration by the legal assistant, stating that she "inadvertently" prepared the "non-final" version for Mr. Zimmerman to post to BCF.  Declaration of Naomi McElynn, Dkt. # 179-3.

In light of the fact that Mr. Zimmerman's signature appears on the offensive interrogatory responses, this attempt to place blame on his legal assistant is not well-taken.  Had this document been a pleading or motion filed with the Court, rather than in interrogatory response sent to the opposing party, counsel could have been found subject to Rule 11 sanctions for his conduct.

The Court finds the balance of plaintiff's opposition to the motion for attorney fees unpersuasive.  Plaintiff has cited at length to various portions of the Federal Circuit Court of Appeals' remand order, asserting that the appellate court's language demonstrates that it did not find the infringement claims baseless nor the lawsuit to be filed for an improper purpose.  However, those questions were not before the appellate court, and the language cannot be read as plaintiff contends it should.  The Federal Circuit Court's ruling was that this Court's summary judgment and sanctions decisions were premature, made without affording plaintiff an opportunity to present argument on infringement and the proper construction of the '697 patent.  In so ruling, the appellate court viewed Eon-Net's arguments and assertions from the point most favorable to it, considering what Eon-Net might be able to prove if given the opportunity.  However, the appellate court concluded its analysis by observing,

> It may be true that ultimately Eon-Net's suit was for an improper purpose and that Eon-Net's pattern of filing nearly identical complaints against a wide variety of companies and then offering to settle those complaints for a relatively small amount of money is one indicia of that improper purpose.  Without full analysis of the merits of Eon-Net's claim construction argument, however, the mere fact that Eon-Net filed identical infringement suits against a

variety of companies does not by itself establish an improper purpose. . . .

Judgment and Opinion of the Federal Circuit Court of Appeals, Dkt. # 105, p. 15.

Having now analyzed Eon-Net's claim construction arguments and issued a ruling, the Court now finds, for the reasons set forth above, that this case meets the requirements for an "exceptional" case under § 285. The Court also finds that Eon-Net's unnoted motion for sanctions pursuant to 28 U.S.C. § 1927 is without merit, as it was Eon-Net, not defendant, who "unreasonably and vexatiously" multiplied these proceedings by filing a baseless lawsuit in the first instance, and by presenting multiple frivolous arguments to the Court, such as the one set forth above regarding the interrogatory responses. Eon-Net's motion for sanctions is accordingly DENIED.

CONCLUSION

In choosing to litigate this case rather than submit to the settlement demand, Flagstar not only maintained a well-founded belief that its website did not infringe Eon-Net's patents, but also challenged the validity of those patents. While an assertion that the patent-in-suit is invalid is commonly raised in infringement actions, in this instance there appears to be a reasonable basis for the challenge. The Court never reached the question of the patents' validity, as the parties stipulated to dismissal after the Court issued its Order on claim construction. However, counsel's statements, set forth above, that "It's a system method. It's a system patent" and "[t]he claims are system claims comprised of steps," raises obvious and serious questions about the validity of the patents. By offering cheap settlements to each of the many alleged infringers they have sued, Millennium and Eon-Net have avoided any challenge to these patents' actual validity.

The Court finds that this case meets the requirements of an "exceptional" case. Flagstar, the accused infringer, has prevailed in demonstrating through clear and convincing evidence that Eon-Net's claims of infringement were baseless, and that the suit was filed for the improper purpose of inducing a cheap settlement to avoid litigation expense. Flagstar has also demonstrated, with clear and convincing evidence, that Eon-Net acted in bad faith in filing and in litigating this case. The Court further finds that the lawsuit was objectively baseless, based as it was on Eon-Net's overly broad view of the scope of its patents.

ORDER - 21

It would be a gross injustice to Flagstar to require it to bear the expense of defending against the baseless lawsuit, one that was filed in bad faith for the sole purpose of inducing defendant to settle without questioning the patent itself or its validity.  An award of attorney's fees pursuant to § 285 is therefore  appropriate.  *Forest Labs., Inc. v. Abbott Labs.*, 339 F.3d at 1329.  Flagstar's motion is accordingly GRANTED.

Flagstar shall file, on or before February 1, 2010, a statement of fees and expenses incurred since this case was remanded to this Court, together with a supporting memorandum.   Eon-Net shall have two weeks following the filing of the fee statement to file a response.  Both parties shall present argument in their accompanying memoranda as to whether the Rule 11 sanctions previously imposed by this Court should be reinstated.

DATED this 4 day of January, 2010.


RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE