The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| EON-NET L.P.,<br><br>        Plaintiff,<br><br>    v.<br><br>FLAGSTAR BANCORP,<br><br>        Defendant. | **CASE NO. C05-2129 RSM**<br><br>**MOTION PURSUANT TO CR 7(h) FOR RECONSIDERATION OF THE ORDER ON MOTION FOR FEES AND COSTS**<br><br>**NOTE ON MOTION CALENDAR: JANUARY 18, 2010** |

Plaintiff Eon-Net, L.P. files this Motion for Reconsideration of the Court's Order on Motion for Fees and Costs as the Court appears to have misapprehended various facts in this case to arrive at its decision. Specifically, as demonstrated below, this case is not exceptional and therefore does not warrant sanctioning either plaintiff or its counsel. Eon-Net's claim construction is not baseless as to the claim that the patents-in-suit cover processing information not derived from scanned hard copy documents, and plaintiff's purpose in filing this suit was not improper. Further, neither plaintiff nor its counsel destroyed any non-public or otherwise relevant documents in this or any other litigation, nor did they engage in any improper litigation techniques.

1. <u>The Patents-in-Suit and Infringement</u>

The three Eon-Net patents-in-suit cover processing information that does not originate from scanned hard copy documents. The U.S. Patent and Trademark Office ("PTO") recently confirmed this by allowing U.S. Patent Nos. 7,570,383 ("the '383 patent") and 7,619,768 ("the '768 patent") based on the same specification as the Eon-Net patents. These two new patents have claims explicitly directed towards processing information that is not derived from scanned hard copy documents. Dkt. # 187-2 and 3. For example, claim 3 of the '383 and '768 patents recites a method of processing information in a file "wherein said file is not derived from scanning a hard copy document".

After the Court issued its Order on Claim Construction on March 4, 2009 ("Order") and before the '383 patent issued, Eon-Net submitted the Order to the PTO and requested that it be considered before the PTO issue the '383 patent. Reconsideration Declaration of Mitchell Medina ("Medina Reconsideration Decl."), ¶1. The PTO considered the Order and issued the '383 patent anyway. *Id*. The PTO then subsequently issued the '768 patent, Dkt. # 187-3, demonstrating its belief, notwithstanding the Order, that the patent specification common both to the Eon-Net patents and to the '383 and '768 patents supports Eon-Net's claim construction. On January 8, 2010, the PTO

allowed yet another patent application based on the same specification, having claims, e.g., claim 57, also directed towards processing information from documents that do not originate from scanned hard copy documents. Medina Reconsideration Decl., ¶2. Accordingly, Eon-Net's claim construction was and is proper and the Court should therefore vacate its Order on Motion for Fees and Costs.

2. The Purpose of Eon-Net's Suit Was Proper

Since Eon-Net's claim construction was not just reasonable but, as recently confirmed by the PTO, correct, and since, as the Federal Circuit previously found, there is support in the specification for such construction, and its counsel conducted a proper pre-suit investigation, Dkt. # 105, pp. 12-13, Eon-Net's efforts to license the patents-in-suit to Flagstar were proper. The number of third parties to whom Eon-Net and Millennium have licensed their patents, and the amounts for which they have done so, are irrelevant to this case. There is no law that dictates how many entities a patentee may license or what they must charge for a license. Nor, as the Federal Circuit held, are Eon-Net's actions in seeking to license the patent improper simply because Eon-Net's patent is broad in scope. *Id*. at pp. 13-14. Accordingly, as Eon-Net's purpose in litigating this case was proper, the Court should vacate its Order on Motion for Fees and Costs.

3. Neither Eon-Net Nor its Counsel Destroyed Relevant Documents

Neither Eon-Net nor its undersigned counsel destroyed any relevant documents in this case. The only documents Eon-Net's counsel discarded are publicly available and/or immaterial or irrelevant documents. Dkt. #144, pp. 5-6 and 179, pp. 11-12. The statement by undersigned counsel during Mr. Medina's deposition that he discarded "the documents" received in the ReadSoft case from Millennium's prior counsel was a reference to having discarded public documents and other non essential documents, e.g., invoices for travel to San Diego, copy service invoices, etc., pertaining to that litigation, none of which are relevant to this case. Reconsideration Declaration of Jean-Marc Zimmerman ("Zimmerman Reconsideration Decl."), ¶2. *See also* Dkt. # 144-2, 179-1.

Examination of the deposition transcript immediately preceding the aforementioned quote indicates that Flagstar's counsel was questioning Mr. Medina about the existence of a draft specification that may have existed. Zimmerman Reconsideration Decl., ¶3. The transcript also indicates that undersigned counsel advised Flagstar's counsel that the prosecution files – including any draft specification - were not in his possession but in the possession of Eon-Net's prosecution counsel, Foley & Lardner. *Id.*, ¶4. Further, Mr. Medina testified that he "never deliberately took something and threw it [out]" and that any prosecution-related documents he may have had were inadvertently lost in the course of his moves between the United States, Kenya and Israel. Medina Reconsideration Decl., ¶3.

Accordingly, since neither Eon-Net nor its counsel destroyed any non-public or material or relevant documents in this case, and since Flagstar has failed to identify a single document much less a relevant one that was purportedly destroyed, the Court should vacate its Order on Motion for Fees and Costs.

    4.    Neither Eon-Net Nor its Counsel Has
           <u>Engaged in Improper Litigation Tactics</u>

Neither Eon-Net nor its counsel engaged in any improper litigation techniques. As shown below, the Court misapprehended numerous facts to arrive at is conclusion that they did.

Eon-Net's position that no claim terms had to be construed since such terms have their ordinary and customary meaning was not improper and is often asserted by patentees. In any event, Eon-Net ultimately identified terms to be construed and provided their proposed constructions to Flagstar and the parties proceeded with the claim construction process, i.e., preparing and filing a joint claim chart and submitting their respective briefs. Dkt. # 131, 134, 136 and 141.

Mr. Medina's testimony that Eon-Net had no documents responsive to Flagstar's claim construction-related requests for production referred to the fact that such

documents are in the possession of Eon-Net's counsel rather than in the possession of Eon-Net which has no office or employees. Dkt. #144, pp. 5-7. Eon-Net's counsel produced many non-public documents – letters sent to alleged infringers, claim charts prepared for alleged infringing websites, discovery requests sent to alleged infringers, and responses to discovery requests received from alleged infringers – in response to Flagstar's requests. *Id.*, p. 7. Thus, responsive documents exist and were produced.

There was no systematic destruction of documents by either Eon-Net or its counsel. Dkt. # 144, pp. 5-6 and 179, pp. 11-12.  Nor, as already mentioned, did undersigned counsel discard "all the documents relevant to the earlier patents", or destroy documents evidencing the "inventors' process in filing the continuation patents assigned to Eon-Net".  Rather, undersigned counsel discarded publicly available and other immaterial and irrelevant documents pertaining to prior concluded litigations, as per his firm's practice. Dkt. # 144, p. 5. Undersigned counsel never discarded a draft specification or any documents pertaining to the prosecution of the Millennium or Eon-Net patents, since those documents were in the possession of Eon-Net's prosecution counsel and not in the possession of undersigned counsel. Zimmerman Reconsideration Decl., ¶4. Undersigned counsel queried Eon-Net's prosecution counsel about the existence of the draft specification and other non-public prosecution-related documents and was advised that they did not have any. *Id.*, ¶5. In any event, as the Court noted, the purported destruction of certain unspecified documents did not "hinder" Flagstar in presenting successful arguments in the *Markman* proceedings.

Eon-Net has never sought to evade a careful analysis of the claim terms through the *Markman* proceeding. Eon-Net put forth proposed constructions for the terms identified in the joint claim construction chart, and submitted briefs in support of its constructions. Dkt. #131, 134, 136 and 141.  The fact that Flagstar submitted over 1700 pages of mostly extrinsic evidence in support of its constructions – many of which were public documents, and claim construction-related documents provided by Eon-Net –

while Eon-Net submitted several pages from *Que's Computer User Dictionary* ("*Que's*") to support its constructions does not demonstrate that Eon-Net's construction was improper and Flagstar's proper.

      Eon-Net provided the dictionary definitions to support its contention that an individual skilled in the art such as a computer scientist with an advanced degree, would understand the terms "document" and "file" as used in the specifications of the patents-in-suit to have their ordinary and customary constructions put forth by Eon-Net. The Court's assertion that Eon-Net intentionally omitted providing a definition from *Que's* for "document" is unfounded. There was no definition for said term in the edition of *Que's* from which Eon-Net submitted a definition for "documentation", which supports Eon-Net's construction of "document". Dkt. # 141-2, Exhibit 2, p. 9. *Que's* was cited by Eon-Net because it was intrinsic evidence, having been cited to the PTO by the inventors in 1991 when the common specification was filed. Medina Reconsideration Decl., ¶4.

      The Court is incorrect in contending that Mr. Medina and Ms. Elias agreed with Flagstar's constructions. Rather, both Mr. Medina and Ms. Elias made clear in their deposition testimony that they believe that the patents-in-suit cover processing information from documents that do not originate from scanned hard copy documents. Dkt. #141-3 and 4. The Court has not and cannot point to any deposition testimony by these individuals supporting Flagstar's constructions.

      Notwithstanding Flagstar's assertion to the contrary, the attorney for Kofax confirmed that licensed Kofax software is not used on the Flagstar website. Dkt. # 179, pp. 6-7.

      Finally, undersigned counsel never sought to disclaim responsibility for the error in sending out the incorrect interrogatory response regarding the requisite level of skill in the art in the BCF case. Rather, he was simply attempting to explain the mechanics of how it happened. Zimmerman Reconsideration Decl., ¶6. In any event, Eon-Net never adopted the position put forth in the BCF response in this case as it retained an expert

1 having the requisite level of skill in the art to analyze the claim terms at issue and prepare
2 the expert report it submitted as part of the *Markman* proceeding.  Dkt. # 141-2, Exhibit
3 2.

### CONCLUSION

Eon-Net's claim construction was reasonable and not baseless, as shown again by the PTO's recent allowance of the '383 and '768 patents and now a third patent, after it considered this Court's Claim Construction Order.  The Court misapprehended many facts regarding the purported destruction of unidentified documents, which destruction never occurred, and the supposedly improper, yet in reality unexceptional, litigation conduct of Eon-Net and its counsel.  The Court's Order on Motion for Fees and Costs appears to be based upon its objection to the broad scope of the patents-in-suit as asserted by Eon-Net, and its dislike of and objection to Eon-Net's business model, which involves filing many suits seeking relatively moderate license fees.  However, these are improper grounds for sanctioning Eon-Net or its counsel.  Given the reasonableness of Eon-Net's claim construction and its conduct, this not an exceptional case and does not warrant the imposition of any kind of sanction.

By:/s/Jean-Marc Zimmerman
Jean-Marc Zimmerman (Pro Hac Vice)
Zimmerman & Levi, LLP
226 St. Paul Street
Westfield, NJ 07090
Tel: (908) 654-8000
Fax: (908) 654-7207

John W. Hathaway
Law Offices John W. Hathaway, PLLC
4600 Bank of America Tower
701 Fifth Avenue
Seattle, WA 98104
Tel: (206) 624-7100
Fax: (206) 624-9292

Attorneys for Plaintiff Eon-Net, L.P

Date: January 16, 2010
     Westfield, New Jersey