1

The Honorable Ricardo S. Martinez

2

3

4

5

6

7

8

9

10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

11

EON-NET, L.P.,

12

Plaintiff,

**CASE NO. C05-2129 RSM**

13

v.

14

FLAGSTAR BANCORP,

15

Defendant.

16

**DECLARATION OF JEAN-MARC
ZIMMERMAN IN SUPPORT OF
PLAINTIFF EON-NET, L.P.'S
MOTION FOR RECONSIDERATION
OF THE ORDER ON MOTION FOR
FEES AND COSTS**

17

**NOTE ON MOTION CALENDAR:
JANUARY 18, 2010**

18

19

20

I, Jean-Marc Zimmerman, declare as follows:

21

1.     I am an attorney-at-law licensed in the State of New Jersey and am counsel for Eon-

22

Net, L.P. in the above-identified action.

23

2.     My statement during the deposition of Mr. Mitchell that I discarded "the

24

documents" received in the ReadSoft case from Millennium's prior counsel was a reference to

25

having discarded public documents and other non essential documents, e.g., invoices for travel to

26

San Diego, copy service invoices, etc., pertaining to that litigation.

27

28

1

3.      Examination of the deposition transcript immediately preceding the aforementioned quote indicates that Flagstar's counsel was questioning Mr. Medina about the existence of a draft specification that may have existed.  True and correct copies of pages 60-65 from the transcript of the deposition of Mitchell Medina conducted on June 23, 2008 are attached hereto as Exhibit 1.

4.      I never discarded a draft specification or any documents pertaining to the prosecution of the Millennium or Eon-Net patents, since those documents were in the possession of Millennium and Eon-Net's prosecution counsel, and not in my possession.

5.      I asked Eon-Net's prosecution counsel about the existence of the draft specification and other non-public prosecution-related documents and was advised that they did not have any.

6.      I never sought to disclaim responsibility for the error in sending out the incorrect interrogatory response regarding the requisite level of skill in the art in the BCF case.  Rather, I was simply attempting to explain the mechanics of how it happened.


I declare under the laws of the United States that the foregoing is true and correct.


Jean-Marc Zimmerman

Dated:  January 16, 2010
        Westfield, New Jersey

2

EXHIBIT 1

1                          MEDINA

2       language in late fall 1990?

3            A.     We were trying to enable a paperless

4       office and we didn't want to be tied to paper.

5                   So we anticipated that files that were

6       created on a computer would ultimately come to

7       be an object from which data was wanting to be

8       extracted to feed the input process of an

9       application.

10           Q.     Do you remember anything else about

11      why you added that language at that time?  You

12      don't have to, I just want to make sure we have

13      your full recollection of that time.

14           A.     I think that some -- you know, I think

15      it is an adequate statement.

16           Q.     Do you remember discussing that

17      language with Ms. Elias?

18           A.     No, I -- I know for a fact that I did

19      not.

20           Q.     Do you know whether any drafts of

21      Ms. Elias' specification that she completed in

22      1984 still exist?

23           A.     I really don't know.  The situation of

24      Millenium and Eon-Net is as follows:  I have

25      moved around a lot.  And in the process, all of

1                          MEDINA

2        my records of prior years are gone.  I was

3        divorced in -- or separated in 1999.  I lost

4        access to a lot of things at that time.

5                  When I moved to Kenya in the year

6        2000, more things were left behind.  Now I

7        have been locked out of Kenya, so certain

8        things that might be in Kenya are not

9        accessible to me.

10                  And further, to be candid, as

11       Millenium and Eon-Net have evolved into

12       patent enforcement companies which are

13       involved in the business of litigation.  We

14       have adopted a document retention policy

15       which is that we don't retain any documents.

16       So the only documents that exist are in the

17       custody of my attorney.

18                  Early on in the process, we selected

19       some documents, put them in a couple of

20       boxes.  They were originally in the custody

21       of the predecessor counsel to Jean-Marc

22       Zimmerman and then were transferred to him.

23       There may be in that box of documents a copy

24       of the 1984 specification draft.  I'm not

25       sure.  Whatever is there has been produced to

1                        MEDINA

2      you.   There is no more.

3           Q.    Who was Mr. Zimmerman's predecessor?

4           A.    Jeffrey Schwab of Abelman, Frayne &

5      Schwab.

6           Q.    So in your position or Eon-Net's

7      position --

8           A.    Not a thing --

9           Q.    Sorry, let me finish the question just

10     for the record.

11          A.    OK.

12          Q.    Either in Eon-Net's possession or in

13     your possession, there are no documents related

14     to the actual process of inventing the invention

15     in any of the patents at issue, is that correct?

16          A.    Nothing beyond what's contained in

17     those boxes which should have been and which I

18     trust have been produced to you.  That selection

19     of documents was made in 1996 to the best of my

20     recollection when Millenium started its --

21     initiated its first lawsuit for the

22     infringement, not of these patents, but of

23     patent 1, the '855 patent.

24               MR. ZIMMERMAN:  Can I clarify

25          something here.

1                          MEDINA

2                MS. BAILY:  Can you just let him

3           finish his answer first.

4                MR. ZIMMERMAN:  Sure.

5           A.    Patent 2, the '508 patent, I think

6       those were the only two that were in existence

7       at that time.  I seem to remember that patent 3

8       issued after the lawsuit settled or -- and that

9       the defendant subsequently took a supplementary

10      license under patent 3.  Patent 3 having been --

11      being the '465 patent.

12                At the time of that litigation, the

13      selection of documents was made.  We had more

14      records at that time, but that selection became

15      our selection of what we thought was relevant to

16      the document production requests that were given

17      to us at that time, and nothing else survives.

18                MS. BAILY:  Can I just finish this

19           line of questions and then you can --

20                MR. ZIMMERMAN:  Yeah, sure.

21           Q.    When you say nothing else survives,

22      were the other documents destroyed at that time

23      or was it, as you said you have been moving

24      around and documents were lost?

25           A.    I've been moving around.  I never

1                          MEDINA

2      deliberately took something and threw it in the

3      incinerator.  It just -- but it -- I don't have

4      it anymore and I don't -- it is not buried

5      someplace either.  It just doesn't exist.

6              MR. ZIMMERMAN:  I want to have a

7          clarification.  Jeffrey Schwab was prior

8          litigation counsel, not prosecution counsel.

9          Jeffrey Schwab's firm did not prosecute.

10             THE WITNESS:  That's correct.

11             MR. ZIMMERMAN:  The files, what was

12         transferred to me were documents in

13         connection with the litigation that I

14         assumed and at the end of the litigation, we

15         discarded the documents.  The prosecution

16         files were done by Foley & Lardner.  To the

17         best of my recollection, they have whatever

18         prosecution files they have.

19         A.    I know that Foley & Lardner's document

20     retention process, policy, once a patent issues,

21     they discard everything except, you know, what's

22     in the file history.

23             MS. BAILY:  Well, since you brought it

24         up, did you contact the Foley & Lardner law

25         firm --

```
1                          MEDINA
2               MR. ZIMMERMAN:  I did.  I spoke
3          with -- I did it prior.  But in response to
4          your last thing to double-check, I also
5          spoke with Blumenthal.  David Blumenthal was
6          the original attorney prosecuting the
7          patents, but he is retired and it has
8          subsequently been taken over by Glen Law.
9          Glen Law confirmed for me that there is
10         nothing responsive in the file histories or
11         files that have any claim construction
12         issues.
13         A.    To amplify it further, Schwab quit in
14    the middle of the case, not a first one, but a
15    case that was pending Millenium case.
16              MR. ZIMMERMAN:  In San Diego.
17         A.    Zimmerman & Levi assumed the
18    representation of Millenium in that case.
19    Schwab transferred all the files he had over to
20    Zimmerman & Levi.
21              MR. ZIMMERMAN:  For that case.
22         A.    And that was it.
23         Q.    Now, after Mr. Lech brought up his
24    initial idea to you and you guys had your
25    initial discussion, you testified that you guys
```