The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| Eon-Net, L.P., | CASE NO. C 05-2129 RSM |
| Plaintiff, | **DEFENDANT FLAGSTAR BANCORP'S MEMORANDUM REGARDING FEES AND COSTS** |
| v. | |
| Flagstar Bancorp, | |
| Defendant. | |

1  Pursuant to this Court's January 4, 2010 Order on Motion for Fees and Costs (Dkt. No. 188), Defendant Flagstar Bank submits this Memorandum regarding the amount of fees and costs that it has incurred in connection with its defense of Plaintiff Eon-Net, L.P.'s baseless and frivolous claims. As described below, Flagstar requests that – pursuant to 35 U.S.C. § 285 and Federal Rule of Civil Procedure 11 – this Court order Eon-Net, L.P. and its counsel Jean-Marc Zimmerman to reimburse Flagstar for its reasonable fees and costs in an amount of $634,160.18.

## BACKGROUND

<u>Eon-Net's Claims Against Flagstar Were Frivolous</u>

The infringement claims that Eon-Net asserted in this case were premised on the notion that the patents at issue are not "limited to a methodology for processing hard copy documents." (Order on Claim Construction (Dkt. No. 162), at 13.) This Court has already found that Eon-Net's position in this respect was baseless, frivolous, and unreasonable.

In connection with granting Flagstar's previous request for Rule 11 sanctions, this Court described Eon-Net's position on claim construction as "unrealistic" and "illogical." (Order on Sanctions Pursuant to Fed. R. Civ. P. 11 (Dkt. No. 79), at 12, 13.) The Court not only found that there was "no support for Eon-Net's argument" regarding the scope of the patents at issue but also determined that an examination of the relevant patent specification "expose[d] the frivolity of Eon-Net's claim construction position." (*Id.*) The Court explained that:

> Eon-Net's claim construction position – which excludes a reference to hard copy documents – ignores the plain language of the disclosure. Most importantly, it ignores what the inventor defined as 'the invention.' To the extent Eon-Net went through the motions of a claim construction exercise, it recklessly defined terms to suit its purposes in spite of the specification's language. The specification unambiguously defines the invention of the '697 Patent as a system for extracting information from hard copy documents. Eon-Net's construction in spite of the evidence is an abuse of the protections afforded by the patent system and is the type of misconduct for which Rule 11 provides sanctions.

(*Id.* at 14-15.) In connection with awarding those sanctions, the Court concluded that, "[h]ad Eon-Net undertaken a reasonable pre-filing investigation of the '697 Patent, it would have known that its proffered construction and infringement positions were unreasonable." (*Id.* at 15.)

1    After Eon-Net appealed this Court's ruling imposing Rule 11 sanctions, this case was
2  remanded in order to provide Eon-Net with a full opportunity to present any evidence it had to
3  support its position on claim construction.  (*See* Order on Motion for Fees and Costs (Dkt. No.
4  188), at 20 (discussing the Federal Circuit's opinion).)  But Eon-Net had no evidence.  Indeed,
5  this Court found that the evidence submitted by Eon-Net was "so paltry and so irrelevant to valid
6  argument on claim construction as to be deemed frivolous."  (*Id.* at 16.)  The Court further found
7  that:

8    The overall effect of Eon-Net's sparse presentation of evidence was that there was no evidence beyond [the inventor's] self-serving opinion . . . to support Eon-Net's
9    overly broad interpretation of the claims.

10  (*Id.*)

11   Accordingly, after Eon-Net had its opportunity to be heard on claim construction issues,
12  this Court found that the overwhelming intrinsic and extrinsic evidence demonstrated that the
13  patents at issue relate only to a methodology for processing hard copy documents.  (Order on
14  Claim Construction (Dkt. No. 162), at 3-16.)  Moreover, the Court found that Eon-Net's
15  proffered interpretation of the claims was "so broad as to appear limitless" and was "not
16  supported by the specification."  (*Id.* at 16.)   And, in connection with finding this case
17  exceptional, the Court reiterated that (1) Eon-Net's (and it's counsel's) contention "that the
18  patents owned by Eon-Net cover virtually all web-based commerce" was "insupportable" and (2)
19  Eon-Net's "lawsuit was objectively baseless, based as it was on Eon-Net's overly broad view of
20  the scope of its patents."  (Order on Motion for Fees and Costs (Dkt. No. 188), at 13-14, 21.)
21  <u>Eon-Net's Claims Were Brought for an Improper Purpose</u>
22   This Court has also already found that Eon-Net brought its baseless claims against
23  Flagstar for "the improper purpose of inducing a cheap settlement to avoid litigation expense."
24  (Order on Motion for Fees and Costs (Dkt. No. 188), at 21.)  Indeed, early in the case, the Court
25  expressed "concern[] with Eon-Net's continuing conduct" related to an "apparent scheme to
26  extort quick settlement from numerous corporations doing business on the internet."  (Order on
27  Sanctions Pursuant to Fed. R. Civ. P. 11 (Dkt. No. 79), at 16; Order Setting Sanctions Pursuant

2

to Fed. R. Civ. P. 11 (Dkt. No. 88), at 2.) That conduct has continued unabated. (Order on Motion for Fees and Costs (Dkt. No. 188) (listing 99 cases filed by Jean-Marc Zimmerman on behalf of Eon-Net or related entities).)

Fees Incurred as a Result of Eon-Net's Prosecution of Its Frivolous Claims

In connection with its original imposition of Rule 11 sanctions, this Court granted Flagstar's request for attorneys' fees and costs in the amount of $141,984.70. (Order Setting Sanctions Pursuant to Fed. R. Civ. P. 11 (Dkt. No. 88), at 8.) In granting the award, the Court determined that "Flagstar was well-represented [and] prevailed on nearly every motion it filed," that the amount of time spent by Flagstar's counsel was reasonable, and that "Flagstar's counsel's rates are consistent with rates charged by attorneys in similar cases, both in the Western District of Washington and throughout the United States." (*Id.* at 4, 5, 6.) In commenting on the fee award, the Court further noted that:

> Eon-Net itself has benefitted from the high cost of the patent lawyers whose fees it now seeks to deny. The exceedingly high cost of patent litigation provides an infringement defendant facing frivolous, baseless litigation with a strong incentive to settle; such defendants may be willing to pay a small settlement to avoid hundreds of thousands, or millions, in legal fees.

(*Id.* at 7.)

Since this case was remanded, Flagstar has incurred an additional $492,175.48 in fees and costs in connection with defending Eon-Net's baseless claims. (Declaration of Melissa J. Baily in Support of Memorandum Regarding Fees and Costs ("Baily Decl.") at ¶ 15.) This sum includes attorney fees and costs related to: identifying relevant prior art; preparing invalidity contentions; seeking a protective order with respect to discovery unrelated to claim construction; conducting claim construction discovery including depositions; participating in *Markman* proceedings; and preparing applications for fees and sanctions. (*Id.* at Exhs. 1-31.) This sum also includes expert fees and costs related to the identification of relevant prior art and the submission of expert testimony regarding claim construction issues. (*Id.* at Exhs. 32-39.)

# ARGUMENT

## I. FLAGSTAR SHOULD BE AWARDED ITS ATTORNEYS' FEES AND COSTS PURSUANT TO BOTH SECTION 285 AND RULE 11.

This Court has already ruled that an "award of attorney's fees pursuant to § 285 is . . . appropriate" in this case. (Order on Motion for Fees and Costs (Dkt. No. 188, at 22).) In addition, "the Rule 11 sanctions previously imposed by this Court should be reinstated" (*id.*).

The "central purpose of Rule 11 is to deter baseless filings" by imposing a duty on attorneys to certify that they have "conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact, legally tenable, and 'not interposed for any improper purpose.'" *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). "An attorney who signs [a] paper without such a substantiated belief '<u>shall</u>' be penalized by 'an appropriate sanction.'" *Id.* (emphasis added); *see also Refac Int'l, Ltd. v. Hitachi, Ltd.*, 921 F.2d 1247 (Fed. Cir. 1990) (noting that "the imposition of sanctions once a [Rule 11] violation has been found is mandatory").

In the Ninth Circuit, Rule 11 sanctions must be imposed "for making arguments or filing claims that are frivolous, legally unreasonable, without factual foundation, or asserted for an improper purpose." *S. Bravo Sys., Inc. v. Containment Techs. Corp.*, 96 F.3d 1372, 1375 (Fed. Cir. 1996) (citing *Conn v. Borjorquez*, 967 F.2d 1418, 1420 (9th Cir. 1992); *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990)). "The standard for determining the propriety of Rule 11 sanctions is one of objective reasonableness for determinations of frivolousness as well as of improper purpose." *Conn v. CSO Borjorquez*, 967 F.2d 1418, 1421 (Fed. Cir. 1992). Moreover, although "[e]ither the improper purpose or frivolousness ground is sufficient to sustain a sanction," a filing that is sanctionable on both grounds may warrant a greater "amount of damages." *Townsend*, 929 F.2d at 1362.

Eon-Net's claims in this case were clearly "frivolous" and "legally unreasonable." *S. Bravo*, 96 F.3d at 1375. They were premised on a claim construction position that has already been found to be "frivolous," "unreasonable," and "objectively baseless." (*See supra* pages 1-2.)

1   Indeed, there was "no evidence beyond [the plaintiff's] self-serving opinion" to support Eon-
2   Net's claim construction position.  (Order on Motion for Fees and Costs (Dkt. No. 188), at 16.)
3   Accordingly, Eon-Net's counsel violated Rule 11 by failing to reasonably interpret the claims of
4   the patents at issue prior to initiating this case.  *Judin v. United States*, 110 F.3d 780, 783 (Fed.
5   Cir. 1997) (finding district court had abused its discretion in denying motion for Rule 11
6   sanctions where counsel had failed "to satisfy himself that a proper construction of the claims . . .
7   permits argument that each element of the claims appears in the accused devices" prior to filing a
8   patent infringement suit); *S. Bravo*, 96 F.3d at 1375 (finding that "it would be difficult to avoid
9   the conclusion that sanctions are appropriate" if plaintiff's "attorneys conducted no investigation
10  of the factual and legal merits of [plaintiff's] claims other than to rely on [plaintiff's] lay opinion
11  that [defendant] was infringing"); *see also* Order on Sanctions Pursuant to Fed. R. Civ. P. 11
12  (Dkt. No. 79) (finding that a "reasonable pre-filing investigation . . . requires objective
13  evaluation of the claim terms").

14          In addition, Eon-Net's claims were "asserted for an improper purpose."  *S. Bravo*, 96
15  F.3d at 1375.  That purpose was to extract a "cheap settlement" from Flagstar by otherwise
16  forcing Flagstar to incur the substantial expense associated with litigating baseless patent
17  infringement claims.  (Order on Motion for Fees and Costs (Dkt. No. 188), at 21.)  Eon-Net's
18  counsel violated Rule 11 when he filed Eon-Net's infringement claims for that purpose.  *E.g.*,
19  *Townsend*, 929 F.2d at 1367 (affirming imposition of Rule 11 sanctions on ground that plaintiff's
20  "behavior manifested an improper purpose"); *Colida v. Nokia, Inc.*, No. 2009-1326, 2009 WL
21  3172724 (Fed. Cir. 2009) (non-precedential opinion) (affirming imposition of Rule 11 sanctions
22  where plaintiff's "infringement claims were objectively basis" and where plaintiff's "overall
23  pattern of filing meritless suits, heedless of warnings," further "justifies sanctions").

24          In order to deter Eon-Net's counsel – and others – from engaging in the conduct at issue
25  here, Rule 11 sanctions must be imposed.  *Cooter*, 496 U.S. at 393.

26

27

5

## II. FLAGSTAR SHOULD BE AWARDED THE FEES AND COSTS INCURRED TO DEFEND EON-NET'S BASELESS LAWSUIT.

### A. Fees and Costs Previously Assessed.

In November 2006, Flagstar submitted a request for attorneys' fees and costs in the amount of $141,984.70. (Memorandum Establishing Attorneys' Fees and Costs (Dkt. No. 80); Baily Declaration (Dkt. No. 81); Reply in Support of Memorandum Establishing Attorneys' Fees and Costs (Dkt. No. 85); Baily Declaration (Dkt. No. 86).) This Court found Flagstar's fee request to be reasonable in all respects. (*Supra* page 3.)

### B. Fees and Costs Incurred Since Remand.

Since this case was remanded by the Federal Circuit in October 2007, Flagstar incurred additional fees and costs totaling $492,175.48. (Baily Decl. ¶ 15.) Those fees and costs can be broken out as follows:

- Lead Counsel Fees and Costs: $385,519.18
- Expert Fees and Costs: $102,607.14
- Local Counsel Fees and Costs: $4,049.16

(*Id.* ¶¶ 4, 5, 8, 13.)

Attorneys' fees were incurred primarily in connection with the following work related to Flagstar's defense:

- Analyzing two additional patents cited in the Second Amended Complaint;
- Responding to Eon-Net's Second Amended Complaint;
- Analyzing prior art and preparing invalidity contentions[1];
- Analyzing Eon-Net's infringement contentions;
- Moving for a Protective Order to stay discovery on all issues not related to claim construction;
- Propounding written discovery on issues related to claim construction;

---

[1] Flagstar served its invalidity contentions – addressing the 92 patent claims asserted by Eon-Net – on April 2, 2009. The contentions included 391 pages of charts comparing each element of each claim to specific portions of 28 relevant prior art references. (Baily Decl. ¶ 16.)

6

- Responding to written discovery on issues related to claim construction;
- Deposing named inventors regarding claim construction issues;
- Identifying intrinsic and extrinsic evidence relevant to claim construction;
- Briefing claim construction issues and preparing for *Markman* hearing;
- Moving for sanctions related to destruction of documents and other discovery abuses;
- Moving to have this case declared exceptional;
- Preparing memorandum regarding fees and costs.

(*Id.* Exhs. 1-31.)

Experts' fees were incurred primarily in connection with the following work related to Flagstar's defense:

- Searching for and analyzing prior art;
- Preparing invalidity contentions;
- Analyzing Eon-Net's infringement contentions;
- Preparing testimony on claim construction issues.

(*Id.* Exhs. 32-39.)

Costs were incurred primarily in connection with:

- Traveling for status conference and *Markman* hearing;
- Traveling for depositions of named inventors:
- Use of process servers;
- Use of stenographer and videographer services;
- Obtaining patent prosecution histories and relevant prior art;
- Preparing documents for production; and
- Use of electronic legal research (Westlaw).

(*Id.* Exhs. 1-39.)

Flagstar substantially mitigated the fees and costs incurred since remand. For example, to the extent possible, Flagstar worked to share costs with other defendants sued by Eon-Net.

(*E.g.*, Baily Decl. Exhs. 1, 2, 6, 7.)  Of course, such arrangements necessarily ended as other defendants opted to settle with Eon-Net.  As another example, Flagstar significantly reduced the expenses associated with discovery for both parties by prevailing on its motion to stay discovery on issues not related to claim construction.[2]

### C. Flagstar Should Be Reimbursed for the Full Amount of Its Fees and Costs.

Both the Ninth Circuit and the Federal Circuit have recognized the substantial expense associated with defending against patent infringement claims.  *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000) (finding that "[a] patent suit can be an expensive proposition" and "[d]efending against baseless claims of infringement subjects the alleged infringer to undue costs – precisely the scenario Rule 11 contemplates"); *Judin*, 110 F.3d at 784 ("Defendants have no choice when served with a complaint if they wish to avoid a default.  They must undertake a defense, and that necessarily involves costs.").  Indeed, as this Court has previously noted, it is the "exceedingly high cost of patent litigation" that has allowed Eon-Net to extract innumerable "small settlements" from defendants seeking to avoid "hundreds of thousands, or millions, in legal fees."  (Order Setting Sanctions Pursuant to Fed. R. Civ. P. 11 (Dkt. No. 88), at 7.)

Flagstar obtained the dismissal of Eon-Net's baseless claims as efficiently and as expeditiously as possible.  The fees and costs that Flagstar incurred in this case – which total $634,160.18 – are substantially less than the average fees and costs incurred in patent infringement litigation, which can range from $967,000 to $6,250,000, depending on the amount at issue.  (Baily Decl. Exh. 40.)

In light of the conduct addressed in this Court's Order on Motion for Fees and Costs (Dkt. No. 188) and the additional considerations discussed above, Flagstar should be reimbursed the full amount of its reasonable attorneys' fees and costs.

### CONCLUSION

For the foregoing reasons, Flagstar respectfully requests that the Court grant its request

---

[2]  Eon-Net opposed Flagstar's motion.  (Dkt. No. 118.)

for reimbursement of the $634,160.18 in fees and costs expended defending Eon-Net's frivolous lawsuit.

DATED: February 1, 2010

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By: /s/Melissa J. Baily
    Melissa J. Baily

Charles K. Verhoeven
50 California Street, 22nd Floor
San Francisco, California 94111
(415) 875-6600

Jon Steiger
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
(213) 443-3000

Bradley S. Keller
Jofrey M. McWilliam
Byrnes & Keller LLP
1000 Second Avenue, 38th Floor
Seattle, Washington 98104
(206) 622-2000

*Attorneys for Defendant Flagstar Bancorp*