UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

EON-NET L.P.,

                  Plaintiff,

      v.

FLAGSTAR BANCORP,

                  Defendant.

CASE NO. C05-2129RSM

SUPPLEMENTAL ORDER ON MOTION FOR FEES AND COSTS

On January 4, 2010, the Court granted defendant Flagstar Bancorp, Inc.'s ("Flagstar's") motion for an award of attorney's fees pursuant to 35 U.S.C. § 285. Dkt. # 188. The Court found, for reasons set forth at length in the Order, that this case meets the requirements of an "exceptional" case under § 285 because plaintiff Eon-Net, LP.'s ("Eon-Net's") claims of infringement were baseless, that the lawsuit was filed for an improper purpose, that Eon-Net acted in bad faith in filing and litigating this case, and that the lawsuit was objectively baseless. *Id*., at p. 21. The Court found that an award of attorney's fees and costs pursuant to § 285 is appropriate, and directed Flagstar to file a statement of fees and expenses incurred since this case was remanded to this Court.[1] Plaintiff was given two weeks thereafter to respond. Both parties were directed to brief the issue as to whether the Rule 11 sanctions imposed previously by this Court should be reinstated. *Id*., p. 22. The matter has been fully briefed and is now ready for consideration.

---

[1] Defendant's fees and expenses prior to the appeal are already a matter of record, as the Court previously awarded fees and expenses as a Rule 11 sanction. Dkt. ## 79, 81, 88.

SUPPLEMENTAL ORDER ON MOTION FOR
FEES AND COSTS - 1

**DISCUSSION**

**I**. **Rule 11 Sanctions**

This Court previously imposed Rule 11 sanctions upon plaintiff's counsel, and awarded defendant $141,984.70 in attorneys' fees and costs, but that award was vacated by the Federal Circuit of Appeals in the earlier appeal in this matter. Dkt. ## 88, 104.  In arguing against reinstatement of the Rule 11 sanctions, plaintiff asserts that "[t]he objective reasonableness and non-frivolousness of Zimmerman's claim construction was recently affirmed by the PTO [Patent and Trademark Office] not once, not twice, but three times, when the PTO issued two patents and allowed a third patent, each based on the same specification as the Eon-Net patents . . . " Plaintiff's Response to Memorandum on Fees and Costs, Dkt. # 194, p. 4.  However, the issuance by the PTO of additional patents based on the same specification—bringing the total to eleven—is irrelevant to the issue of Rule 11 sanctions by the Court.

Next, plaintiff quotes two passages in the Federal Circuit Court of Appeals' ruling to support his assertion that Rule 11 sanctions are inappropriate because the Federal Circuit "held in September 2007 [that] Zimmerman conducted a proper pre-suit investigation prior to filing this action, and the specification supports the claim construction put forth by Zimmerman. . ." *Id*., p. 3.  Specifically, plaintiff argues,

> the Federal Circuit found that:
>
> 1. Eon-Net's counsel conducted a proper pre-suit investigation "by applying the claims of the '697 patent to the accused device (portions of the Flagstar website) and concluding that there was a reasonable basis for a finding of infringement" and that "[t]here is really no dispute that Eon-Net's counsel did examine portions of Flagstar's website and, based on his experience, concluded that it worked in a manner that infringed the '697 patent." *Eon-Net v. Flagstar*, 2007-1132, p. 12; and
>
> 2. "[t]he specification also supports Eon-Net's infringement position because, although it initially describes a system for extracting information from hard copy documents through a scanner, it further provides that the hardware for inputting data can include 'a keyboard, a light pen, a mouse, a touch screen, a laser scanner, a microphone, a tablet, a disk drive, a magnetic tape drive, and a modem.'" *Id*., p. 13.
>
> The Federal Circuit thus found that Zimmerman's claim construction that the Eon-Net patents cover processing information not derived from scanned hard copy documents was reasonable and not frivolous.

*Id*., p. 3 - 4.

SUPPLEMENTAL ORDER ON MOTION FOR
FEES AND COSTS - 2

Based on these quoted passages in the Federal Circuit Court of Appeals' discussion and analysis (which plaintiff incorrectly characterizes as the holding of that court), plaintiff argues that

> [e]ven assuming, arguendo, that this Court's claim construction is correct (which is disputed by Eon-Net and Zimmerman), the non-sanctionable objective reasonableness of Zimmerman and Eon-Net's claim construction is confirmed by the Federal Circuit's express finding that the specification of Eon-Net patents 'supports Eon-Net's infringement position. . . .

*Id*. However, plaintiff has taken these passages out of context and misrepresented them as to meaning and significance. Placed in context, with the passages quoted by plaintiff underlined, and the passages which this Court finds most significant **in bold**, the appellate court's Rule 11 sanctions discussion reads in relevant part as follows:

> We agree that the district court erred in granting sanctions to Flagstar without allowing Eon-Net the opportunity to present arguments on claim construction. The district court levied sanctions because it found that Eon-Net and its counsel did not perform a reasonable pre-filing inquiry. *Order on Cross-Motion for Sanctions*, 239 F.R.D. at 614-19. Federal Rule of Civil Procedure 11(b) requires that pleadings be submitted only after "an inquiry reasonable under the circumstances." Applying Ninth Circuit law, the Federal Circuit has concluded that under Rule 11 a party filing a patent infringement claim must first, at minimum, "apply the claims of each and every patent that is being brought into the lawsuit to an accused device and conclude that there is a reasonable basis for a finding of infringement of at least one claim of each patent so asserted." *View Eng'g, Inc. v. Robotic Vision Sys., Inc*., 208 F.3d 981, 986 (Fed.Cir.2000). "The presence of an infringement analysis plays the key role in determining the reasonableness of the pre-filing inquiry made in a patent infringement case under Rule 11." *Id*. However, an attorney may not be sanctioned solely for failing to conduct a reasonable inquiry as long as the complaint is well-founded. *In re Keegan Mgmt. Co. Secs. Litig*., 78 F.3d 431, 434 (9th Cir.1996). Following the language of Rule 11, the Ninth Circuit also allows the imposition of sanctions where the court finds that a pleading is for an improper purpose such as "to harass or to cause unnecessary delay or needless increase in the cost of litigation." *G.C. and K.B. Invs., Inc. v. Wilson*, 326 F.3d 1096, 1109 n. 10 (9th Cir.2003) (quoting Fed.R.Civ.P. 11(b)). The party seeking sanctions bears the burden of demonstrating by clear and convincing evidence that sanctions are justified. *In re Zilog, Inc*., 450 F.3d 996, 1007 (9th Cir.2006).
>
> **The district court granted Flagstar's motion for summary judgment in large part because it believed that the '697 patent simply did not cover an interface between web-based forms and computer applications, but it reached this conclusion without a clear or detailed claim construction or infringement analysis**. Immediately after granting the motion for summary judgment the district court set a hearing on Flagstar's motion for sanctions, during which it advised the parties that they "were not going to be rearguing the summary judgment motion" so that the arguments would be confined to "the Rule 11 issue." The district court's analysis in ruling on the motion for sanctions was confined to examining what kind of pre-filing inquiry Eon-Net's counsel conducted; it did not reevaluate whether the complaint was well-founded since it had already concluded it was not. Compounding this problem was that, because Eon-Net had not had an opportunity

SUPPLEMENTAL ORDER ON MOTION FOR
FEES AND COSTS - 3

to respond to the court's claim construction determinations made as part of its decision on Flagstar's summary judgment motion, Eon-Net's sole opportunity to address these issues was in response to the motion for sanctions.

Although the district court applied the correct standard in addressing Flagstar's motion for sanctions, we conclude that its assessment of the evidence was "clearly erroneous" as to warrant *vacatur*. *Patelco Credit Union*, 262 F.3d at 913 (citation omitted). Ultimately, all of the district court's bases for awarding sanctions are tied to its conclusion that Eon-Net had not established that the '697 patent covered online web applications. First, there is evidence that Eon-Net's counsel did follow the requirements of *View Engineering* <u>by applying the claims of the '697 patent to the accused device (portions of the Flagstar website) and concluding that there was a reasonable basis for a finding of infringement</u>. 208 F.3d at 986. <u>There is really no dispute that Eon-Net's counsel did examine portions of Flagstar's website and, based on his experience, concluded that it worked in a manner that infringed the '697 patent</u>. **The district court's real issue with Eon-Net's counsel's pre-suit investigation is that it was based on the conclusion that the '697 patent covered an embodiment in which information originates from computer files and not scanned hard copy documents. It determined that this conclusion by Eon-Net's counsel was unrealistic**. **While we are not passing judgment on what the appropriate construction of the '697 patent should be, without a full claim construction analysis it is impossible to assess whether Eon-Net's claim construction was unrealistic**.

Eon-Net argued before the district court that applying the first claim of the '697 patent to the accused portions of Flagstar's website showed a reasonable basis for infringement because that claim is for a processing system for inputting information from a document or file on a computer into at least one application program. **In the absence of a claim construction or other evidence to the contrary, it cannot be said as a matter of law that the claims cannot be construed as Eon-Net claims**. <u>The specification also supports Eon-Net's infringement position because, although it initially describes a system for extracting information from hard copy documents through a scanner, it further provides that the hardware for inputting data can include "a keyboard, a light pen, a mouse, a touch screen, a laser scanner, a microphone, a tablet, a disk drive, a magnetic tape drive, and a modem."</u> **Even if the district court were correct to conclude that Eon-Net's counsel did not conduct a reasonable inquiry prior to filing suit, it was clearly erroneous for it to find that Eon-Net's claim construction was baseless absent more argument or analysis about the proper construction of the '697 patent's claims**.

Flagstar makes much of the district court's finding that Eon-Net's suit had indicia of extortion. Sanctions are appropriate where a filing is made for an improper purpose even if that filing is not frivolous. *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir.1990) (*citing Zaldivar v. City of Los Angeles*, 780 F.2d 823, 832 (9th Cir.1986)). **It may be true that ultimately Eon-Net's suit was for an improper purpose and that Eon-Net's pattern of filing nearly identical complaints against a wide variety of companies and then offering to settle those complaints for a relatively small amount of money is one indicia of that improper purpose**. *Order on Cross-Motions for Sanctions*, 239 F.R.D. at 612-13. **Without full analysis of the merits of Eon-Net's claim construction arguments, however, the mere fact Eon-Net filed identical infringement suits against a variety of companies does not by itself establish an improper purpose**; a company may hold a patent on a widely-used device or process that many different types of companies use, as might be the case here if it is true that

SUPPLEMENTAL ORDER ON MOTION FOR
FEES AND COSTS - 4

> Eon-Net holds a valid patent on a process related to online web applications. **It is also clear that the district court's finding of an improper purpose hinged on its conclusion that the '697 patent did not cover online applications, such that it believed that any suits Eon-Net was filing on this basis could be for no other purpose than to extort settlement amounts from other parties without ultimately having to prove what the district court considered to be baseless claims.**

*Eon-Net LP v. Flagstar Bancorp.,* 249 Fed.Appx. 189, 195-98 (C.A.Fed. 2007).

The Court has quoted the passage in full to demonstrate that plaintiff's assertions regarding what the Federal Circuit Court "held" are incorrect. As noted above, plaintiff claims that the Federal Circuit "held in September 2007 [that] Zimmerman conducted a proper pre-suit investigation prior to filing this action." Plaintiff's Response, Dkt. # 194, p. 3. What the appellate court actually found—and it was part of the analysis, not what the court "held"—was that "there is evidence that Eon-Net's counsel did follow the requirements of *View Engineering* by applying the claims to the accused device . . . " *Eon-Net,* 249 Fed.Appx. at 196. Following that analysis, the appellate court concluded, "Even if the district court were correct to conclude that Eon-Net's counsel did not conduct a reasonable inquiry prior to filing suit, it was clearly erroneous for it to find that Eon-Net's claim construction was baseless absent more argument or analysis about the proper construction of the '697 patent's claims." *Id.,* at 197. In other words, it was premature for the Court to decide on Rule 11 sanctions before hearing argument on claim construction. Now that it has done so, and has issued an Order on claim construction, it is proper to reconsider and reinstate, if appropriate, the Rule 11 sanctions.

Similarly, when the language behind plaintiff's assertion that "the Federal Circuit's express finding that the specification of the Eon-Net patents 'supports Eon-Net's infringement position'" is read in context, it is apparent that this statement was not an "express finding." It was simply a basis for the appellate court's finding, in the sentence previous to the one quoted by plaintiff, that "[i]n the absence of a claim construction or other evidence to the contrary, it cannot be said as a matter of law that the claims cannot be construed as Eon-Net claims." *Id*. Now that the claims have been construed in the *Markman*[2] hearing, it can be said, as a matter of law, that the claims cannot be construed as Eon-Net contends.

---

[2] *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996)

SUPPLEMENTAL ORDER ON MOTION FOR
FEES AND COSTS - 5

1    As to the adequacy of counsel's pre-filing inquiry, the Court asked counsel to address this at the
2 September 8, 2006 hearing on the Rule 11 sanctions.  The ensuing colloquy was fully set forth in the
3 Court's earlier Order on Defendant's Motion for Fees and Costs, Dkt. # 188, but will be repeated in
4 relevant part here.

> THE COURT: What's the product that you did your analysis on?
>
> MR. ZIMMERMAN: Your Honor, the product is as follows.  The product in this case, infringing products are the web pages we identified on the Flagstar.com website that use HTML technology to extract information using content instructions and transmit that extracted information to an application program residing on the Flagstar.com server.
>
> THE COURT: So if I go to the website—
>
> MR. ZIMMERMAN: Yes.
>
> THE COURT: All right?  Where am I going to find the product identified?
>
> MR. ZIMMERMAN: If you go to a web page the server—you go into your browser and you'll see a web page.  If you go to view with source, the source page, you can see the actual code behind the web page.  There's a one-to-one correlation between the lines of code that you see and what appears on the web page.  So there are HTML document[s]., and in the HTML document there are HTML forms, you enter information, for example, your name, the account information, wire instructions, whatever the case may be.
>
> That information is extracted according to content instruction.  The content instructions identify what those particular pieces of information are, your name, account number, that type of stuff.
>
> THE COURT: There's got to be a program that runs that process.
>
> MR. ZIMMERMAN: Well, there's software that is used to create these pages.  But all of this software, none of it is—I understand, Your Honor, you said you didn't want to address the summary judgment issue and I'm not going to, but it's important for purposes of the Rule 11 motion because the Rule 11 motion was predicated on the fact that they had a license because of the Kofax software but the Kofax software is admitted by Paul Gail, the attorney for Kofax, none of that is used in connection with the online banking services offered at the Flagstar.com website.
>
> THE COURT: I want to know what you did besides looking at the website.  What product did you identify, and did you purchase it and examine it, laying it side by side with your patent?
>
> MR. ZIMMERMAN: You Honor, the product—there's no product per se.  It's a system that has—comprised of steps.  If those steps are performed, there's an infringement.  It's not like there's a toaster per se or some other infringing product.  It's a system method.  It's a system patent.  The claims are system claims comprised of steps, and if those steps are performed

SUPPLEMENTAL ORDER ON MOTION FOR
FEES AND COSTS - 6

1   there's an infringement.[3]

2   THE COURT: That leads me to a question of if you are correct—

3   MR. ZIMMERMAN: Yes.

4   THE COURT: —and you have patented a system—

5   MR. ZIMMERMAN: Yes.

6   THE COURT: —you own the Web.

7   MR. ZIMMERMAN: I can't speak to the Web as a whole, but, Your Honor, for the websites we have looked at and that we've brought suits against yes, they're infringing. I would mention the priority date of the first patent, to which this patent refers—that is 1991—predates HTML form technology, which didn't appear until later in the nineties.

Reporter's Transcript of Proceedings, September 8, 2006, Dkt. # 77, pp. 7-9.

Based on these statements by counsel at the hearing, together with statements made by his client at deposition, this Court earlier noted that Eon-Net made the unsupportable contention that "the patents owned by Eon-Net cover virtually all web-based commerce." Order on Attorney Fees and Costs, Dkt. # 188, p. 14. In opposing reinstatement of the Rule 11 sanctions, counsel asserts that

> contrary to Flagstar's contention, Zimmerman never claimed that Eon-Net patents "cover virtually all web-based commerce." Rather, Zimmerman indicated that they "cover many online web applications." Also, at the Rule 11 hearing before Judge Pechman, Zimmerman made clear that it was not "the Web as a whole" but only "websites [he] looked at" and brought suit against that he believed were infringing.

Plaintiff's Response, Dkt. # 194, p. 6.[4] Counsel's bald statement that he "never claimed" that the patents "cover virtually all web-based commerce" is disingenuous. As he explained to the Court at the Rule 11 hearing, as set forth above, **any** website using HTML technology would, in Eon-Net's view, infringe Eon-Net's patents. His client went even further, claiming in his deposition that it was "99 and 44/100's percent true" that **any** website using e-commerce would infringe Eon-Net's patents. The client,

---

[3] It is counsel's reference to "steps," "method," "system," and "claims comprised of steps," in the absence of any "product," that lead to the conclusion that the Eon-Net patents may be invalid under *In re Bilski*, 545 F.3d 943, 88 U.S.P.Q.2d 1385 (Fed. Cir. 2008) (*en banc*). Defendant has asserted invalidity of the patents throughout this litigation, but the parties settled after the *Markman* hearing, so the validity of the patents has never been tested.

[4] Counsel incorrectly attributes this language to Flagstar, when in fact it originates from the Court's previous Order, quoted above. Dkt. # 188, p. 14, line 21-22.

SUPPLEMENTAL ORDER ON MOTION FOR
FEES AND COSTS - 7

Dr. Mitchell Medina, inventor of the patents and principal of Eon-Net, L.P., confirmed at his deposition the cursory nature of the pre-filing investigation with respect to any website conducting e-commerce:

> Q. How did you arrive at that conclusion?
>
> A. We believe broadly that websites implementing e-commerce more than likely infringe our patents. Therefore, if Café Press is conducting electronic commerce, then they are, in all likelihood, infringers of our patents.
>
> This is a belief that I hold. If my attorney says that we, meaning he and I, believe that the website incorporates the invention in the patents, and the website, in fact, is implementing electronic commerce of some kind, then what my attorney is stating, we believe is, in fact something that I subscribe to.
>
> Q. So you don't have to analyze any particular website as long as you have information that the website is conducting electronic commerce in order to determine whether it infringes your patent, is that right?
>
> A. That's 99 and 44/100's percent true.

Deposition of Mitchell Medina, Dkt. # 173, Exhibit W, pp. 18-19.

      The Court finds that plaintiff's arguments as to what the Federal Circuit "held" regarding the pre-filing investigation, and the appellate court's "express finding" that the patent specification "supports Eon-Net's infringement position" are wholly without merit. The Court further finds objectively unreasonable plaintiff's and counsel's position that little pre-filing investigation is necessary because virtually all web-based commerce, and particularly all websites using HTML technology, infringes the Eon-Net patents. As plaintiff has made no meritorious argument against reinstatement of the Rule 11 sanctions, they shall, for the reasons set forth in the Court's earlier Order, Dkt. # 79, be reinstated in full.

**II. Section 285 Attorneys' Fees and Costs**

      The Court has found this an exceptional case under 35 U.S.C. § 285, and has determined that it would be "a gross injustice" to require defendant Flagstar to bear the expense of defending against a baseless, bad faith lawsuit. Dkt. # 188, p. 22. In compliance with this Court's directive to file a statement of fees and expenses incurred since this case was remanded to this Court, Flagstar has filed a

SUPPLEMENTAL ORDER ON MOTION FOR
FEES AND COSTS - 8

request for $386,543.34 in attorneys' fees and costs[5], and $102,607.14 in fees and costs paid to two expert witnesses, for a total of $489,150.48, Declaration of Melissa Baily, Dkt. # 192.  Plaintiff asserts that this amount should be reduced substantially because some of the requested fees and costs were incurred in matters unrelated to claim construction, Flagstar failed to mitigate its fees, the attorneys billed an excessive amount of time, and the hourly rates billed by the attorneys are excessively high. Plaintiff's Response, Dkt. # 194, p. 7.

In support of its opposition to the amount requested by Flagstar, Eon-Net plaintiff has presented a single supporting declaration, which states, in its entirety,

> I, Jean-Marc Zimmerman, declare as follows:
>
> 1. I am attorney-at-law licensed in the State of New Jersey and am counsel for Eon-Net, L.P. in the above-identified action.
>
> 2. On February 15, 2010, I was advised by the Staples located at 13240 Aurora Avenue, Seattle WA 98133 that they charge 8 [cents] per black and white copy.
>
> I declare under the laws of the United States that the foregoing is true and correct.

Declaration of Jean-Marc Zimmerman, Dkt. # 194-2.  This unsworn declaration fails to meet the requirements of 28 U.S.C. § 1746 and will be disregarded by the Court.  *DeMars v. O'Flynn*, 287 F.Supp.2d 230, 242-243 (W.D.N.Y. 2003).  Further, a rate charged by a Seattle copy shop is totally irrelevant to the document reproduction fees charged by the California law firm representing defendant in this matter.

As to plaintiff's challenge to the billing rates of Flagstar's attorneys, plaintiff addresses only lead counsel Melissa Baily, and simply asserts that a rate of $605 per hour is too high for a 2001 law school graduate.  This assertion is incorrect as to the amounts billed for her work in this case, and wholly fails to address the quality of her work in this litigation.  According to the website of her law firm, Ms. Baily "is a partner in the San Francisco Office of Quinn Emanuel Urquhart & Sullivan, LLP.  Her practice focuses on intellectual property litigation and other high-stakes complex commercial litigation."

---

[5] This amount does not include the $3025 in fees for January 2010, as this amount has not been invoiced and therefore is unsupported by evidence in the record.  Declaration of Melissa Baily, Dkt. # 192, ¶ 5.

SUPPLEMENTAL ORDER ON MOTION FOR
FEES AND COSTS - 9

http://www.quinnemanuel.com/attorneys/baily-melissa-j.aspx, accessed May 14, 2010.  Moreover, her time was billed at $370 per hour in October through December 2007 when she was an associate; increased to $575 per hour in January 2008 when she became a partner;  and did not reach $605 until September 2008.  Declaration of Melissa Baily, Dkt. # 194, Exhibits 2-12.

Most notably, nowhere has plaintiff offered any evidence, by declaration or otherwise, as to the prevailing rate for patent attorneys in the relevant market area.  Nor has plaintiff stated what its own attorney's billing rates are.  In light of plaintiff's complete failure to present any evidence regarding reasonable fees for highly competent and experienced patent litigation attorneys, the Court finds, as it did previously, that the billing rates for Flagstar's attorneys are reasonable.  As the Court noted previously, "Patent litigation is expensive, and usually a time-consuming affair.  . . . [T]his was an infringement action with implication on a national scale.  Flagstar was justified in choosing a trial firm based on skill, reputation, and experience."  Order Setting Sanctions, Dkt. # 88, p. 5, 7.  The Court accordingly declines to reduce the rates to be awarded to Flagstar's attorneys.

Plaintiff next argues that Flagstar is not entitled to attorneys' fees or costs for any work not related to claim construction.  Plaintiff bases this argument on the fact that the Court limited discovery before the *Markman* hearing to claim construction issues.  However, that Order did not in any way limit a party's ability to research and prepare a defense in other areas.  Flagstar asserted non-infringement as well as the invalidity of Eon-Net's patents at the outset of this case, assertions which have a reasonable basis in law.  *See*, Note 3, *supra*.  It was prudent for Flagstar to prepare to defend on these bases even during the claim construction process, including the hiring of an expert witness, Dr. James Fogarty.  Declaration of Melissa Baily, Dkt. # 192, ¶ 9.  Flagstar's thorough preparation in these areas represents due regard for the seriousness and complexity of this litigation—a regard which the Court has found notably absent from plaintiff's cursory filings.[6]  The Court accordingly finds the amount of time expended and billed reasonable, and declines to reduce the amount awarded to defendant.

Finally, plaintiff contends that Flagstar has failed to mitigate its fees and costs in this case, but

---

[6] The deficiencies in plaintiff's supporting evidence submitted on this fee issue, as well as on claim construction, have been noted in the Court's Orders, and need not be repeated.

SUPPLEMENTAL ORDER ON MOTION FOR
FEES AND COSTS - 10

1  makes no argument other than what was asserted previously in the earlier Rule 11 sanction proceedings.
2  The Court rejects this argument for the reasons set forth previously. Order Setting Sanctions, Dkt. # 88,
3  pp. 4-5.

## CONCLUSION

For the reasons set forth, the Court hereby REINSTATES the Rule 11 sanctions awarded previously, in the amount of $141,984.70. The Court also awards defendant attorneys' fees and costs in the amount of $489,150.48 for expenses of litigating this case following remand, pursuant to 35 U.S.C. § 285.

The Clerk is directed to enter judgment in favor of defendant in the amount of $631,135.18.[7]

DATED this 17 day of May 2010.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

---

[7] This amount represents but a small portion of the total sum plaintiff Eon-Net and its companion patent-holding company Millennium L.P. have gained through their patent infringement suits. The Court in its earlier order listed 103 such suits the two companies have filed in various district courts. Even if each of the 102 other defendants only settled for the minimum amount demanded by plaintiffs in their settlement letters, as described in the Court's original Order on Motion for Sanctions, Dkt. # 79 at pp. 3-4, Eon-Net and Millennium will have reaped at least $25,000 X 102, or $2,550,000 from what Flagstar has characterized as their "bad faith shakedown suits." *Id.*$489,150.48

SUPPLEMENTAL ORDER ON MOTION FOR
FEES AND COSTS - 11